# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| MARCO ANTONIO BRIONES-COROY, | ) | 10-40900-SBB |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| RICHARD A. WIELAND, United States | ) | |
| Trustee Region 19, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 11-01311-SBB |
| EMMANUEL M. ASSAF, d/b/a | ) | |
| Emmanuel Assaf Debt Relief Agency, | ) | |
| | ) | |
| Defendant. | ) | |

**Appearances:**

Alison Goldenberg, Esq.
Trial Attorney for the United States Trustee
999 18th Street, Suite 1551
Denver, CO 80202
COUNSEL FOR THE PLAINTIFF

Gregory Garvin, Esq.
Assistant United States Trustee
999 18th Street, Suite 1551
Denver, CO 80202
COUNSEL FOR THE PLAINTIFF

Emmanuel M. Assaf
1450 South Havana Street
Suite 710
Aurora, CO 80012
DEFENDANT, *PRO SE*

# TABLE OF CONTENTS

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        A.    A Summary of this Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.    The Enactment of 11 U.S.C. § 110 in the Reform Act of 1994 . . . . . . . . 3
        C.    The 2005 Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        D.    The Unintended Consequences of 11 U.S.C. § 110 . . . . . . . . . . . . . . . . 6

III.    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.     Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        A.    The Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B.    The Plaintiff's Motion for Partial Summary Judgment and Motion for
              Judgment on the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        C.    The Remaining Claims - The Third and Fourth Claims for Relief . . . . . 10

VI.     Factual Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        A.    Facts Established by the Plaintiff's Motion for Partial Summary
              Judgment, Motion for Judgment on the Pleadings, and the Joint
              Pretrial Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        B.    Defendant's History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
              1.    Prior Colorado Misconduct . . . . . . . . . . . . . . . . . . . . . . . . 11
              2.    The California Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 12
              3.    The Marco Antonio Briones-Coroy Bankruptcy Case . . 13
              4.    Recent Matters Before this Court Involving Defendant . 14
        C.    Facts Established During the Course of this Case and at Trial . . . . . . . . 14
              1.    Defendant's Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
              2.    Defendant's Customers/Debtors . . . . . . . . . . . . . . . . . . . 15
              3.    Defendant's Advertising . . . . . . . . . . . . . . . . . . . . . . . . . 15
              4.    Defendant's Employees . . . . . . . . . . . . . . . . . . . . . . . . . . 16
              5.    Defendant's Books, Records and Accounting . . . . . . . . . 17
              6.    Defendant's Fees and Services . . . . . . . . . . . . . . . . . . . . 17
              7.    Defendant's Fee Receipt . . . . . . . . . . . . . . . . . . . . . . . . . 19
              8.    Statement of Financial Affairs Question No. 9 . . . . . . . . 21
              9.    Disclosure of Compensation Forms . . . . . . . . . . . . . . . . . 21
              10.   Credit Counseling Course . . . . . . . . . . . . . . . . . . . . . . . . 21
              11.   Exhibit D – Individual Debtor's Statement of Compliance
                    with Credit Counseling Requirement Forms . . . . . . . . . 22
              12.   Abacus Credit Counseling . . . . . . . . . . . . . . . . . . . . . . . . 23
              13.   Debtor Education Financial Management Course . . . . . . 28

14. "Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management" Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VII. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   A. Plaintiff's First Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
      1. Violation of 11 U.S.C. § 110(h)(2) . . . . . . . . . . . . . . 30
      2. Violation Under 11 U.S.C. § 110(b) . . . . . . . . . . . . . . 32
      3. Violation Under 11 U.S.C. § 110(c) . . . . . . . . . . . . . . 33
      4. Forfeiture of All Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
   B. Plaintiff's Second Claim for Relief - Fine for Failure to Disclose Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      1. Applicable Fines Under 11 U.S.C. § 110(l) . . . . . . . . . 34
      2. The Discretion of this Court . . . . . . . . . . . . . . . . . . . . . . 36
   C. Plaintiff's Third Claim For Relief - Collecting Court Filing Fees . . . . . . . 37
      1. 11 U.S.C. § 110(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
      2. Testimony of Nicole Zollars . . . . . . . . . . . . . . . . . . . . . 38
      3. Testimony of Rocio Reza-Ortega . . . . . . . . . . . . . . . . . 40
      4. Testimony from Debtors . . . . . . . . . . . . . . . . . . . . . . . . . 41
   D. Plaintiff's Fourth Claim for Relief - Legal Advice . . . . . . . . . . . . . . . . . 42
      1. 11 U.S.C. § 110(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
      2. Defendant's History of Providing Legal Advice . . . . . . . 43
      3. An Overview of Defendant's Conduct with Respect to his Preparation of Cases at Issue, as Demonstrated at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
      4. Category One:  Specific Instances of Legal Advice - Pre-Filled Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
         a. Testimony of Rocio Reza-Ortega . . . . . . . 46
         b. Debtors' Testimony - A Summary . . . . . . 49
         c. A Survey of the Specific Testimony of Eleven Debtors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
         d. Defendant's Failure to Refute the Evidence of Pre-Filled Forms . . . . . . . . . . . . . . . . . . 52
      5. Category 2:  Specific Instances of Legal Advice - Schedule C - Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
         a. Testimony of Rocio Reza-Ortega with respect to Schedule C - Exemptions . . . . . 53
         b. Debtors' Testimony with respect to Schedule C - Exemptions . . . . . . . . . . . . . . . . . . . . . . 53
         c. Defendant's Admissions Regarding Schedule C . . . . . . . . . . . . . . . . . . . . . . . . 54
      6. Category 3:  Specific Instances of Legal Advice - Applications for Waiver of Chapter 7 Filing Fees . . . . . . 55
         a. Testimony of Nicole Zollars About Applications for Waiver of Filing Fees . . 55

b.   *Testimony of Rocio Reza-Ortega About
Applications for Waiver of Filing Fees* . . 56
c.   *Debtors' Testimony About Applications for
Waiver of Filing Fees* . . . . . . . . . . . . . . . 56
7.   Category 4: Specific Instances of Legal Advice -
Defendant's Legal Advice Regarding United States Trustee
Questionnaires . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
a.   *Testimony of Nicole Zollars About United
States Trustee Questionnaires* . . . . . . . . 57
b.   *Testimony of Debtors About United States
Trustee Questionnaires* . . . . . . . . . . . . . . 59
8.   Category 5: Specific Instances of Legal Advice -
Defendant's Legal Advice Regarding Chapter 7 Trustee
Information Sheets and Declaration Under Penalty of
Perjury for Debtors Without an Attorney Forms . . . . . . . 60
a.   *Testimony of Rocio Reza-Ortega About
Trustee Information Sheets and
Declarations Under Penalty of Perjury
Forms for Debtors Without an Attorney* . 60
b.   *Debtors' Testimony About Trustee
Information Sheets and Declaration Under
Penalty of Perjury Form for Debtors
without an Attorney* . . . . . . . . . . . . . . . . . 61
9.   Debtors' Testimony About Additional Legal Advice They
Received From Defendant Showing Defendant's Pattern
and Practice of Providing Legal Advice . . . . . . . . . . . . . 61
10.  Conclusions of Law With Respect to Defendant's Conduct
and Violations Under 11 U.S.C. § 110(e) . . . . . . . . . . . 63
a.   *Legal Advice* 63
E.   Plaintiff's Fifth Claim for Relief - Injunctive Relief for a Willful Pattern
of Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
1.   Findings and Conclusions with Respect to Plaintiff's
Requested Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . 68
2.   Injunctive Relief Under Section 110(j) – Colorado . . . . 71
3.   Injunctive Relief Under Section 110(j) - Nationally . . . . 72
F.   Plaintiff's Sixth Claim for Relief - Damages Pursuant to 11 U.S.C. §
110(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

VIII.  Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court for a three-day trial on June 4-6, 2012 ("Trial" herein), regarding consideration of the (a) Motion for Partial Summary Judgment filed on February 24, 2012, by Richard A. Wieland, United States Trustee for Region 19 ("Plaintiff" or "United States Trustee" herein),[1] (b) Motion for Judgment on the Pleadings filed on May 24, 2012, by Plaintiff,[2] and (c) Plaintiff's Complaint. The Court, having reviewed the pleadings and the within case file, and having conducted a Trial, enters the following findings of fact, conclusions of law, and Order.[3]

## I.    <u>Introduction</u>

As will becomes obvious to the reader of this decision, this Court is presenting a rather detailed, complete and lengthy decision to reach a fairly simple conclusion. That simple conclusion is that "bankruptcy petition preparers" can only provide typing, data entry and photocopying services to persons[4] who have already decided to file bankruptcy. "Bankruptcy petition preparers" are not some sort of legal/paralegal hybrid authorized under the Bankruptcy Code.

This decision is admittedly longer and more encompassing than most. Unfortunately, however, the Defendant herein requires this scrutiny and detail as he has a history of evasiveness, noncompliance and staying one step ahead of the enforcers of the law in this and other districts.

---

[1]    Docket #81.

[2]    Docket #117.

[3]    Reference herein is made to various proceedings wherein evidentiary hearings or trials were conducted related to Mr. Assaf. Specifically, in addition to the Trial conducted June 4 through June 6, 2012, in the underlying bankruptcy case, *In re Antonio Briones-Coroy*, Case No. 10-40900-SBB, this Court conducted a final evidentiary hearing on May 24 and May 26, 2012, regarding the Chapter 7 Trustee's Motion for Order Reconsidering Order Waiving Court Filing Fees filed February 9, 2011 (Docket #19), and consideration of disgorgement of fees paid to petition preparer and assessment of sanctions against petition preparer as requested in the motion, along with timely-filed objections thereto, including Objection of Emmanuel Assaf filed March 25, 2011 (Docket #22). The Minutes of the Proceeding are docketed at Docket #35 and #36 in the underlying case file.

Also, this Court conducted a final evidentiary hearing on September 6, 2012 in a separate case involving the same parties herein, in *In re Antonio Valle-Rodriguez*, Case No. 11-33249-SBB (Docket #39 therein). The Court will specify the cases which it is referring to as applicable throughout this decision.

[4]    The term "person" or "persons" is not defined in the Bankruptcy Code, but for the purposes of this decision "person(s)" means "human beings." "Person" does not include corporations, partnerships, other unincorporated organization, or any other "entities." *See* 11 U.S.C. § 101(15). In this District, no corporation, partnership, or other unincorporated organization may file bankruptcy without representation by an attorney. *See* Local Bankruptcy Rule 9010-1(e).

The opinion is written for several audiences:

(1)     The Parties Herein and Any Appellate Court:  The sections entitled
        "Background," "Factual Findings," and "Discussion" each consist of detailed
        findings and conclusions with respect to 241 similar cases before this Court.
        These cases are similar in that they were all prepared by the "bankruptcy petition
        preparer," Mr. Emmanuel M. Assaf d/b/a Emmanuel Assaf Debt Relief Agency
        ("Defendant" or "Mr. Assaf" herein).  The Court has taken pains to ensure that
        the record is fully explained for the parties as well as an appellate court and others
        so that the reader can ascertain how and why the Court reached its conclusions
        and where in the record those findings can be found.

(2)     Existing and Potential "Bankruptcy Petition Preparers": Based on this Court's
        experience with "bankruptcy petition preparers," it seems that many find seeming
        nuances and supposed loopholes in 11 U.S.C. § 110.  This opinion is designed to
        be unambiguous with respect to the conduct of a "bankruptcy petition preparer."

(3)     Debtors, Creditors, Other Participants in the Bankruptcy System and Other
        Courts: With the advent of the Bankruptcy Abuse Prevention and Consumer
        Protection Act of 2005 ("BAPCPA"), it seems that along with the increased fees
        charged by attorneys to address the Congressionally instituted hurdles created by
        BAPCPA, the need for a less expensive alternative was fostered.  Thus sprang
        forth the increased number of "bankruptcy petition preparers" in this District and
        across the nation.  While bankruptcy courts—this Court included—have
        recognized the need for an inexpensive alternative to lawyers in preparing
        individual, or consumer, bankruptcy petitions and have perhaps given some
        lenience to "bankruptcy petition preparers," the hybridized legal/paralegal
        practice that has ensued is snaring both innocent debtors and the "bankruptcy
        petition prepares" themselves.  Unfortunately, however well-intended, the
        "bankruptcy petition preparer" that offers anything more than a typing, data entry,
        or photocopying service is in violation of 11 U.S.C. § 110.  This opinion is a
        message to debtors, creditors, participants in the bankruptcy system and other
        courts, of this Court's particular view of this subject.

The Court's opinion also contains three separate, but unified, components.  The first
component contains this introduction and the summary that follows.  In light of the length of this
opinion, much of the fundamental conclusions are contained in these two sections.  The second
component relates to a discussion specific to this adversary proceeding and the 241 cases it
involves.  The third component relates to this Court's conclusions and is intended to allow other
courts and jurisdictions with the tool to stop future actions of this "bankruptcy petition preparer,"
the Defendant herein, and perhaps other potential "bankruptcy petition preparers" who undertake
similar conduct.

## II.    Summary

### A.    A Summary of this Opinion

The United States Trustee used this case as a vehicle to (1) stop a bankruptcy petition preparer, Mr. Assaf, from continuing to provide bankruptcy petition preparer services, and (2) assess upon Mr. Assaf appropriate sanctions and penalties under 11 U.S.C. § 110 for alleged wrongdoing.  The United States Trustee assembled extensive data from 241 cases filed by Debtors under the auspices of and with assistance from Mr. Assaf and his staff.  The data was intended to demonstrate a continuing, knowing and deliberate pattern of violating the Bankruptcy Code over years and in multiple jurisdictions.

The evidence produced by the United States Trustee accomplished that goal.  This opinion exhaustively describes the misconduct of Mr. Assaf as a bankruptcy petition preparer and results in the imposition of a ten-year injunction prohibiting Mr. Assaf from acting as a bankruptcy petition preparer either directly or indirectly, personally or through others, in the District of Colorado as well as all other districts throughout the United States.

After the case was submitted to the Court and taken under advisement, the Court held a trial in another case involving this Defendant.  The case was *In re Antonio Valle-Rodriguez*, Case No. 11-33249-SBB.  The case involved the United States Trustee and this Defendant also.  In the presence of both the United States Trustee and Mr. Assaf, the Court inquired as to the propriety and justification of the amounts sought by the United States Trustee under 11 U.S.C. § 110(l) and whether trebling damages into hundreds of thousands or even millions of dollars was appropriate.  The Court's inquiry was triggered by its reading of *White v. General Motors Corporation*.[5]  After the Court's inquiry, the United States Trustee withdrew his claims under subsection 110(l).  Subsection (l) is the principal tool in the Bankruptcy Code for imposing monetary sanctions against a miscreant bankruptcy petition preparer.  With the request for subsection (l) sanctions withdrawn by the United States Trustee, this case focuses on the remaining request for injunctive relief, request for damages, and request for forfeiture or refund of fees paid by Debtors under subsections (h) and (i) of section 110.

The results achieved by this case are injunctive relief and an award of damages plus forfeiture of fees paid.

### B.    The Enactment of 11 U.S.C. § 110 in the Reform Act of 1994

In 1994, Congress added 11 U.S.C. § 110 to the Bankruptcy Code to provide restrictions on "a person, other than an attorney or an employee of an attorney, who prepares for

---

[5]    *See infra* 36 n.158.

compensation a document for filing."[6]  Congress declared that such a person would be called a
"bankruptcy petition preparer" ("bankruptcy petition preparer" or "BPP" herein).[7]  The section
was added to create standards and penalties related to the conduct of bankruptcy petition
preparers.[8]  In effect, the provision was Congress's attempt to recognize that bankruptcy petition
preparer services were *limited to typing and very little else.*[9]  The House Report explained the
rationale behind 11 U.S.C. § 110 as follows:

> Bankruptcy petition preparers not employed or supervised by any
> attorney have proliferated across the country.  *While it is*

---

[6]     Contemporaneous with the enactment of 11 U.S.C. § 110, Congress also added 18 U.S.C. § 156 to
define the term "bankruptcy petition preparer" and to also impose certain criminal ramifications for any "knowing
attempt by a bankruptcy petition preparer in any manner to disregard the requirements of [the Bankruptcy Code]."
Specifically, 18 U.S.C. § 156 provides:

**Knowing disregard of bankruptcy law or rule**

(a)     Definitions - In this section-

    (1)     The term "bankruptcy petition preparer" means a person, other
than the debtor's attorney or an employee of such an attorney,
who prepares for compensation a document for filing; and

    (2)     the term "document for filing" means a petition or any other
document prepared for filing by a debtor in a United States
bankruptcy court or a United States district court in connection
with a case under title 11.

(b)     Offense - If a bankruptcy case or related proceeding is dismissed
because of a knowing attempt by a bankruptcy petition preparer in any
manner to disregard the requirements of title 11, United States Code, or
the Federal Rules of Bankruptcy Procedure, the bankruptcy petition
preparer shall be fined under this title, imprisoned not more than 1 year,
or both.

[7]     This section of the Bankruptcy Code was added by section 308 of the Bankruptcy Reform Act of
1994, Pub. L. 103–394 (Oct. 22, 1994).  In 2005, this provision was amended as follows:

a person, other than an attorney ~~or an employee of an attorney~~, *for the debtor or
an employee of such attorney under the direct supervision of such attorney,* who
prepares for compensation a document for filing"

(Strike out utilized herein to note the portions of this provision that were removed and italics are utilized to note
additions to this Bankruptcy Code provision as amended in 2005.

Unless otherwise noted, all statutory references are those codified within Title 11 of the United States Code.

[8]     H.R. Rep. 103-834, 103rd Cong., 2d Sess 40-41 (October 4, 1994); 140 Cong. Rec. H10770 (Oct.
4, 1994).

[9]     *Id.*

4

> *permissible for a petition preparer to provide services solely
> limited to typing, far too many of them also attempt to provide
> legal advice and legal services to debtors.* These preparers often
> lack the necessary legal training and ethics regulation to provide
> such services in an adequate and appropriate manner. These
> services may take unfair advantage of persons who are ignorant of
> their rights both inside and outside the bankruptcy system.[10]

The matter before the Court in this Adversary Proceeding exemplifies the conduct
Congress was trying to regulate or prohibit with the Reform Act of 1994 and by subsequent
amendment in 2005. That is, Congress intended to regulate the conduct of bankruptcy petition
preparers, and penalize the misconduct of petition preparers who prey on others in financial
distress and in need of bankruptcy protection, but do not understand the bankruptcy system and,
more specific to this particular case and to most of the 240 additional cases examined herein,
those who do not speak English.[11] As the Congressional Record Statements reflect:

> The Justice Department reports that typing mills were responsible
> for 30 percent of all bankruptcy filings in the central district
> [California], *many by individuals who were unfairly preyed upon
> because they do not speak English or understand the bankruptcy
> system.* Section 308 of the bill creates a new set of civil standards
> and penalties pertaining to these typing services. Under this
> section, if a bankruptcy petition is dismissed as a result of fraud or
> incompetence by the preparer, the debtor will be entitled to actual
> as well as statutory damages.[12]

### C.     The 2005 Amendments

With BAPCPA, Congress attempted, among other things, to "clarif[y] that the definition
of a bankruptcy petition preparer does not include an attorney for a debtor or an employee of an
attorney under the direct supervision of an attorney."[13] BAPCPA further defined those services a
bankruptcy petition preparer is *prohibited* from providing, including but not necessarily limited
to giving legal advice with respect to: (a) filing a petition, (b) commencing a case under a
particular chapter, (c) whether a discharge would be granted, (d) whether a debtor could retain
property, (e) whether a bankruptcy case would result in tax consequences, (f) whether a debtor

---

[10]     *Id.* (emphasis added).

[11]     *Id.*

[12]     140 Cong. Rec. H10772 (Oct.4, 1994)(statement of Rep. Berman) (emphasis added).

[13]     H.R. Rep. No. 31, 109th Cong., 1st Sess 221 (2005).

should reaffirm a debt, (g) characterization of a debtor's interest in property or the type of debt (i.e., unsecured, secured, etc.), and (h) concerning any bankruptcy procedures or rights.[14]

### D.    The Unintended Consequences of 11 U.S.C. § 110

While Congress likely intended to further clamp-down on bankruptcy petition preparers, the promulgation of such an expansive section in the Bankruptcy Code seems to, unfortunately, actually authorize or otherwise validate bankruptcy petition preparers as some sort of hybridized typing and legal service provider.   Consequently, this Court has actually seen an increase in the number of bankruptcy petition preparers located in Colorado, elsewhere in the United States and, now with the advent and expansion of internet commerce, from overseas.[15]

Congress, by its recognition of bankruptcy petition preparers, has, it would seem, created an entire industry of bankruptcy petition preparers who appear to offer a cheap alternative to lawyers.  While this may appear to be a legitimate and laudable alternative for those unable to afford an attorney, the use of these bankruptcy petition preparers too often results in greater expense to debtors, documentary and filing mistakes, and more damage from the consequences of ill-advised assistance.  While crafting a system for competent and inexpensive services to facilitate consumer bankruptcy filing is a worthwhile and laudable goal, it places both debtors and the bankruptcy petition preparers themselves in a problematic spot.

On the one hand, with respect to bankruptcy petition preparers, in order to provide a competent and complete service in preparing bankruptcy forms and schedules, the bankruptcy petition preparers *are almost always, inevitably and necessarily, directly or indirectly, practicing law*.  Thus, as they are not by definition attorneys, they are all too often practicing law without a license.  The law prohibits that without qualification or limitation.  Stated another way, **bankruptcy petition preparers cannot do anything other than typing, data input, or photocopying, *period*.**  Debtors must come prepared to the bankruptcy petition preparer's office and then the  bankruptcy petition preparer can only insert data into the forms to be filed.  This provision in 11 U.S.C. § 110 is an almost certain snare for anyone who dares call himself or herself a bankruptcy petition preparer.

On the other hand, debtors, who are already financially strapped, cannot find (or believe they cannot find) an inexpensive alternative to a lawyer.  This places an already impecunious and often desperate debtor into the hands of a bankruptcy petition preparer, a portion of whom this Court has found to be unscrupulous.  Where, as here, the bankruptcy petition preparer is routinely violating the Bankruptcy Code, the debtors are subject to being disserved, defrauded, deceived, abused, or otherwise harmed.

---

[14]        *See* 11 U.S.C. § 110(e)(2).

[15]        *See* United States Courts, *Increased Use of Bankruptcy Petition Preparers Raises Concerns* (June 18, 2012), http://news.uscourts.gov/increased-use-of-bankruptcy-petition-preparers-raises-concerns (last visited October 22, 2012).

This case presents the very quandary that this statute has created.  Here, there are 241 cases involving mostly non-English speaking customers who are uneducated in the law and each has their own story of financial hardship and desperation.  The bankruptcy petition preparer herein runs what appears to be a flourishing "practice."  He is fluent in English and Spanish and from all appearances seems well-educated and extremely successful.  *But, alas, he is not a lawyer.*

This case—these 241 cases—exemplify(ies) the innumerable problems created by the approval by Congress of the validity of the statutory creature called a bankruptcy petition preparer.  This case also exposes the plight of the impecunious debtor to obtain an inexpensive alternative to a bankruptcy lawyer.  As this Court will explore in the discussion below, it must consider whether or not the Defendant has violated the provisions of 11 U.S.C. § 110 and, if so, has Defendant done so intentionally, knowingly and continuously over years and in different jurisdictions, as alleged by the United States Trustee.

## III.   **Jurisdiction**

This Court has jurisdiction over this matter pursuant to and consistent with 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## IV.   **Issues**

The central  issue before the Court is whether the Defendant, an acknowledged bankruptcy petition preparer, has violated the provisions of 11 U.S.C. § 110.   If the answer is yes, then the Court must specifically determine,

(1)     Has Defendant violated 11 U.S.C. § 110(h)(2) for his failure to accurately disclose his entire fee on his "Disclosure of Compensation of Bankruptcy Petition Preparer?"  (Plaintiff's First Claim for Relief)

(2)     Has Defendant violated 11 U.S.C. § 110(g) for collecting Court filing fees? (Plaintiff's Third Claim for Relief)

(3)     Has Defendant violated 11 U.S.C. § 110(e)(1), (2)(A)-(B) for executing legal documents for Debtors and providing legal advice to Debtors?  (Plaintiff's Fourth Claim for Relief)

(4)     Should this Court enjoin Defendant from offering bankruptcy petition preparer services?  (Plaintiff's Fifth Claim for Relief).

The Court, as discussed below, answers each in the affirmative.  Specifically, this Court concludes that the Defendant has intentionally, knowingly and continuously violated the provisions of 11 U.S.C. § 110.

V.    **Background**

A.    **The Plaintiff's Complaint**

On May 13, 2011, the Plaintiff filed a Complaint against Defendant. The parties agree that the Defendant has operated and currently operates as a bankruptcy petition preparer in Colorado. From March 1, 2006 to May 12, 2011, the Defendant was responsible for filing *at least* 241 bankruptcy cases in the District of Colorado.[16]

The within adversary proceeding is an assemblage of these 241 cases. In his Complaint, the Plaintiff asserts six claims for relief. Specifically:

(A)    First Claim for Relief - Violations of 11 U.S.C. § 110(h)(2) mandating a refund and disgorgement in each case of all fees paid to Defendant by the Debtor(s).

(B)    Second Claim for Relief - Fines for failure to disclose compensation, as required by 11 U.S.C. § 110(h)(2), and as provided for by 11 U.S.C. § 110(l).[17]

(C)    Third Claim for Relief - Sanction for collecting Court filing fees in violation of 11 U.S.C. § 110(g), as provided for by 11 U.S.C. § 110(l).[18]

(D)    Fourth Claim for Relief - Sanction for providing legal advice to debtors in violation of 11 U.S.C. § 110(e)(2)(A) and (B), as provided for by 11 U.S.C. § 110(l).[19]

(E)    Fifth Claim for Relief - Permanent injunction for providing a willful pattern of conduct in violating 11 U.S.C. § 110.

(F)    Sixth Claim for Relief - Damages for Debtor(s) in each case, due to Defendant's continuing violations of 11 U.S.C. § 110, including fraud and unfair and deceptive practices.

---

[16]    *See* Exhibit A attached to this Order

[17]    The Plaintiff withdrew the request for relief under 11 U.S.C. § 110(1) on September 14, 2012 (Docket #138). In another matter before this Court, *In re Antonio Valle-Rodriguez*, Case No. 11-33249-SBB, the Court questioned the propriety of an award of statutory penalties, which were discretionary in a range of $0-$500.00, but where the statute required the trebling of such damages. Here, such amount, if awarded to the full extent, would add up to millions of dollars in fines. The Plaintiff concluded that: "These unique circumstances and other factors considered include, but are not limited to, the financial remedies already imposed against Mr. Assaf, the existence of other pending matters against Mr. Assaf, and the totality of other remedies remaining available under § 110 (other than § 110(l)) in this action and in other actions still pending against Mr. Assaf."

[18]    The 11 U.S.C. § 110(l) claim has been withdrawn. *See supra* note 17.

[19]    The 11 U.S.C. § 110(l) claim has been withdrawn. *See supra* note 17.

The Defendant generally denied the allegations in the Complaint in his Answer filed on June 9, 2011, and throughout this proceeding has denied most of the allegations leading to the Plaintiff's Claims for Relief.[20]

### B. The Plaintiff's Motion for Partial Summary Judgment and Motion for Judgment on the Pleadings

On February 24, 2012, the Plaintiff filed a Motion for Partial Summary Judgment on the Plaintiff's First, Second, Fifth and Sixth Claims for Relief.[21]  The Defendant has *never* responded to the Motion for Partial Summary Judgment.

On May 24, 2012, the Plaintiff filed a Motion for Judgment on the Pleadings Without Trial.[22]  The Court, prior to the trial, reviewed the same together with Fed.R.Civ. 12(d) and concluded that the Plaintiff's Motion for Judgment on the Pleadings Without Trial should be treated as a supplemental Motion for Partial Summary Judgment.

On June 4, 2012, the Court granted summary judgment on the First, Second, Fifth, and Sixth Claims for Relief.  The Court, in ruling on the Motion for Partial Summary Judgment, acknowledged that certain facts were established.  As the Court has previously noted, and notes again herein, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]  Generally, the Court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.[24]  Once the moving party—here the Plaintiff—has demonstrated the absence of material facts in dispute, then the burden shifts to the opposing party—the Defendant—to demonstrate material facts controverting the claims asserted.  The standard for both parties with respect to the Motion for Partial Summary Judgment was preponderance of evidence.  The Court concluded—and herein concludes—that the Plaintiff established that there were no material facts in dispute with respect to the Plaintiff's First, Second, Fifth and Sixth Claims for Relief.  The Defendant neither refuted the facts, nor did he establish any defense as to the relief requested, as a matter of law.

The Court incorporates herein its oral findings and conclusions made on the record in open Court.  *Nevertheless, this opinion recites herein those facts already held to not be in*

---

[20]    The Court does note, however, that in his Answer, Defendant did not provide responses to paragraphs 1, 3, 4, 5, 11, 13, 16, 17, 18,  22, 23, 24, 33, 38, 41, 42, 43, 44, 46, 47, 48, 49, 50, 52, and 54.  *By failing to specifically answer, these paragraphs have been admitted as noted in Docket #14 in this Adversary Proceeding.*

[21]    Docket # 81.

[22]    Docket #117.

[23]    FED.R.CIV.P. 56(a), made applicable to adversary proceedings by FED.R.BANKR.P. 7056.

[24]    *Thournir v. Meyer,* 909 F.2d 408, 409 (10th Cir. 1990).

*dispute and includes further findings and conclusions to give more complete context to this decision. This decision should give notice to all existing and potential bankruptcy petition preparers who intend to "prepare for compensation a document for filing" in this District of the practices which this Court concludes are prohibited by 11 U.S.C. § 110.*

### C.    The Remaining Claims - The Third and Fourth Claims for Relief

After making its oral ruling on June 4, 2012, the Court held an evidentiary hearing on the Plaintiff's Third and Fourth Claims for Relief.[25]   The Court conducted a hearing on the Third and Fourth Claims for Relief because the Court concluded that the Plaintiff, on a request for summary judgment alone, had *not* demonstrated sufficient information with respect to damages and, thus, a trial was required with respect to the Third and Fourth Claims for Relief and on the issue of damages.

## VI.    Factual Findings

### A.    Facts Established by the Plaintiff's Motion for Partial Summary Judgment, Motion for Judgment on the Pleadings, and the Joint Pretrial Statement

The Defendant did not respond to the factual allegations contained in Plaintiff's Motion for Partial Summary Judgment.  Consequently, this Court deemed those facts as identified in the section of the Motion for Partial Summary Judgment as "Uncontested Material Facts" to be, indeed, established facts in this case.[26]   Further, this Court concluded that because there had been no objection to the exhibits attached to the Plaintiff's Motion for Partial Summary Judgment, the Court deemed those admitted for the purpose of consideration of the Motion for Partial Summary Judgment.

Moreover, the Defendant did not participate in preparation of the Pretrial Statement filed on April 23, 2012,[27] nor did he attend the Court's Pretrial Conference and this Court, thus, deemed the facts contained in the Pretrial Statement as established facts in this case.[28]  Finally, the Plaintiff also lists established facts in the Motion for Judgment on the Pleadings.  Although,

---

[25]        Docket #119 and #120.

[26]        The facts established are set forth in paragraphs 1-55 on pages 5-22 of the Motion for Partial Summary Judgment.

[27]         Docket #104.

[28]        *See* Minutes of Proceeding dated May 22, 2012 (Docket #116).  Specifically, the facts as contained in paragraphs 1-87 on pages 4-12 of the Pretrial Statement were deemed established in this case.

most of these facts overlap those already established by way of the Motion for Partial Summary Judgment and the Pretrial Statement, the Court adopted same as established facts.[29]

The Court synthesizes in this decision the facts as established in the Motion for Partial Summary Judgment, the Pretrial Statement, and the Motion for Judgment on the Pleadings. Moreover, in this Opinion the Court identifies from the record at trial, such supplemental, additional, or other necessary facts to reach the conclusions herein.

### B.    Defendant's History

This Court sets forth herein a history of this Defendant and the conduct of his business affairs and the entities he has managed, owned or otherwise operated as a bankruptcy petition preparer.  This history establishes that the conduct of which the Plaintiff complains is not a mere fluke or accident, but rather is an intentional, knowing and continuous practice dating back to, *at least*, 2006.

### 1.    Prior Colorado Misconduct

On April 24, 2006, the Defendant and the Unauthorized Practice of Law Committee entered into an Agreement Pursuant to COLO. R. CIV. P. 232.5(d)(3) to Refrain from Unauthorized Practice of Law whereby the Defendant specifically agreed to refrain from any further actions constituting the unauthorized practice of law in Colorado.[30]  Pursuant to the agreement, the Defendant was to cease immediately using the business name "The Paralegal Offices of Emmanuel M. Assaf."[31]  The Defendant, however, continued to use the business name utilizing business cards that referred to his offices as "The Paralegal Offices of Emmanuel M. Assaf" and listed four locations in California and two locations in Colorado.[32]

On April 3, 2009, the Office of Attorney Regulation Counsel filed a Petition for Injunction with the Colorado Supreme Court, which remanded the matter to the Office of the

---

[29]    Specifically, the facts included within the Motion for Judgment on the Pleadings are :

(A) paragraphs 12-23 on pages 6-7.
(B) paragraphs 29-34, on page 9.
(C) paragraphs 40-45, on pages 11-12.
(D) paragraphs 50-60, on pages 13-15, and
(E) paragraphs 64-80, on pages 17-19.

[30]    Motion for Partial Summary Judgment, Ex. 3, p. 2.

[31]    Motion for Partial Summary Judgment, Ex. 3, p. 2.

[32]    Motion for Partial Summary Judgment, Ex. 3, p. 3.

Presiding Disciplinary Judge ("PDJ.").[33]   On September 23, 2009, the PDJ recommended that the Supreme Court enjoin the Defendant from the unauthorized practice of law.[34]  Upon consideration of the Petition for Injunction, on September 29, 2009, the Colorado Supreme Court enjoined the Defendant from engaging in the unauthorized practice of law in Colorado.[35]

2.     The California Proceedings

The Defendant also operated[36] as a bankruptcy petition preparer in California.

On January 29, 2008, the United States Bankruptcy Court for the Central District of California (Los Angeles Division) entered an order against the Defendant in the *Albert Murillo Espinoza* case, Case No. LA 07-18881 BB, concluding that he violated section 110(d), (f), (g) and (h).[37]  In the order, the bankruptcy court found, among other things, that Mr. Assaf: (1) intentionally misrepresented the amount of fees he received or were owing on the disclosure of compensation form he signed, and (2) engaged in the unauthorized practice of law.[38]

The United States Bankruptcy Court for the Central District of California ordered: (1) disgorgement of Mr. Assaf's fee of $1,201.00; (2) payment of $3,000.00 in liquidated damages pursuant to section 110(i)(1)(B); and (3) payment of a $2,000.00 fine to the United States Trustee in California.[39]  The Defendant thereafter failed to comply with this order.  The California court subsequently enjoined Mr. Assaf from acting as a bankruptcy petition preparer in the Central District of California.[40]

On May 21, 2008, the State Bar of California retrieved customer files from the Defendant's Huntington Park, California office.[41]  On August 29, 2008, based on the retrieved customer files, in part, the Superior Court for the State of California for the County of Los Angeles ordered the Defendant "to immediately cease and desist from: (1) offering to perform or

---

[33]     Motion for Partial Summary Judgment, Ex. 3, p. 1.

[34]     Motion for Partial Summary Judgment, Ex. 3, p. 4.

[35]     Motion for Partial Summary Judgment, Ex. 4.

[36]     The Court assumes that the *past* tense of "operate" is appropriate here.  However, the Court is not fully advised as to whether Defendant continues his practice(s) in California.

[37]     Motion for Partial Summary Judgment, Exhibit 8.

[38]     Motion for Partial Summary Judgment, Ex. 3, p. 3.

[39]     Motion for Partial Summary Judgment, Ex. 3, p. 3.

[40]     Motion for Partial Summary Judgment, p. 9, ¶ 12, 13, 14 , Ex. 8.

[41]     Motion for Partial Summary Judgment, Ex. 3, p. 3.

actually performing any act that constitutes the unauthorized practice of law; (2) entering into any order or written contractual agreement with any individual or business to provide any service the performance of which would constitute the unauthorized practice of law; and (3) receiving any money or fees from any individual or business for any service the performance of which would constitute the unauthorized practice of law."[42]

On July 22, 2009, the People of the State of California and the Defendant entered into a plea agreement before the Superior Court of the Los Angeles Judicial District, County of Los Angeles, State of California.[43]  Pursuant to the terms of the agreement, the Defendant entered a plea of no contest to six counts under various provisions of the California Penal Code and Business and Professions Code, was placed on a 36 month summary probation on five of the six counts, and was to serve 180 days in a penal institution along with paying $9,014.00.[44]

### 3.    The Marco Antonio Briones-Coroy Bankruptcy Case

On December 10, 2010,  Marco Antonio Briones-Coroy filed for relief under Chapter 7 case.  On the same day, Mr. Assaf, on behalf of Mr. Briones-Coroy, applied for a waiver of the Chapter 7 filing fee, which this Court granted.  In the order granting the waiver, this Court included language that the "order is subject to being vacated at a later time if developments in the administration of the Bankruptcy case demonstrate that the waiver was unwarranted."  The Chapter 7 trustee, Dennis W. King, moved for reconsideration of the order.[45]

In the motion for reconsideration, the trustee asserted, among other things, that the debtor was not eligible for such waiver because the debtor: (1) had monthly gross income between $3,513.21 and $3,632.33 for the 2009 tax year and that the same is true for the 2010 tax year; (2) disclosed monthly income of $3,250.00 in the waiver application; and (3) incorrectly calculated several tax deductions and inappropriately included garnishments.  The trustee also moved for the Defendant to surrender any fees paid to him by Mr. Briones-Coroy, to Mr. Briones-Coroy.

After holding an evidentiary hearing, on June 1, 2011, this Court granted the trustee's motion for reconsideration and entered judgment against Mr. Assaf for $1.00 in actual damages pursuant to section 110(i)(1)(A), $2,000.00 pursuant to section 110(i)(1)(B), and $1,000.00 pursuant to section 110(i)(2).[46]  The Court further ordered Mr. Assaf, going forward, to (a) provide his customers a written receipt of all transactions or payments made, and (b) specify the

---

[42]     Motion for Partial Summary Judgment, Ex. 3, p. 3.

[43]     Motion for Partial Summary Judgment, pp. 8-9, ¶ 11, Ex. 5; Joint Pretrial Statement, p. 9, ¶ 45.

[44]     Motion for Partial Summary Judgment, Ex. 4, p. 2.

[45]     Docket # 19 in Case No. 10-40900-SBB.

[46]     Docket #35 in Case No. 10-40900-SBB.

date of service, and (c) describe the service provided, and (d) provide complete billing information, which must be initialed and signed by the customer and Mr. Assaf, copies of which shall be retained by Mr. Assaf for three years.[47]  In the order, the Court advised Mr. Assaf that "[f]ailure to comply will result in a finding of contempt of this Court's Order."[48]

### 4.    Recent Matters Before this Court Involving Defendant

The Bankruptcy Court for the District of Colorado has issued recent rulings with respect to Defendant.  In *In re Soberanis,* Case No. 11-33991-MER, the Honorable Michael E. Romero ordered the Mr. Assaf to pay statutory finds to the United States Trustee in the amount of $37,500.00 under 11 U.S.C. § 110(l) and statutory damages in the amount of $4,000.00 payable to debtors under 11 U.S.C. § 110(I).  Judge Romero also ordered Mr. Assaf to forfeit and turnover $700.00 to the Chapter 7 trustee in the case under 11 U.S.C. § 110(h)(3).

Chief Judge Howard R. Tallman also encountered this Defendant in *In re Moreno-Marquez,* Case No. 11-37594-HRT.  In that matter, Mr. Assaf settled a case brought under 11 U.S.C. § 110 by paying the Chapter 7 trustee, Jeffrey Weinman, the sum of $500.00 in damages to the debtor and $3,000.00 in legal fees to the Chapter 7 trustee.

### C.    Facts Established During the Course of this Case and at Trial

### 1.    Defendant's Business

From March 1, 2006 to May 12, 2011, Defendant was responsible for the filing of *at least* 241 bankruptcy cases on behalf of debtors most of which were filed in 2010 and 2011.[49] Unabated, since May 13, 2011 to the present, Defendant has continued to assist debtors in filing bankruptcy cases.[50]  Currently, Defendant is a bankruptcy petition preparer in Colorado. Defendant has offices in two locations: (1) 1450 South Havana Street, Suite 710, Aurora, Colorado 80012 and (2) 8120 Sheridan Blvd., Suite #B-311, Arvada, Colorado 80013.[51]

---

[47]    *Id.*

[48]    *Id.*

[49]    A list of the cases was attached to the Complaint as Exhibit A.  That same list is attached to this Opinion as Exhibit A.  *See* Complaint, p. 6, ¶ 19; Motion for Partial Summary Judgment, pp. 6 at ¶ 4 at 10 at ¶ 15; Joint Pretrial Statement, pp. 4-5, ¶¶ 2, 20.

[50]    *See* Joint Pretrial Statement, p. 5, ¶ 23.

[51]    *See* Complaint, p. 2, ¶ 1; Motion for Partial Summary Judgment, p. 5 ¶ 2; Joint Pretrial Statement, p. 4, ¶ 4.

14

Defendant presently operates his bankruptcy petition preparer services under Emmanuel M. Assaf Debt Relief Agency and Assaf Services, LLC.[52]  Defendant has also operated his bankruptcy petition preparer services under the name Independent Paralegals.[53]

### 2.   Defendant's Customers/Debtors

A lack of English language skills by the majority of Mr. Assaf's customers/debtors is a major problem in this case.  Interpreters were frequently needed to interpret questions and answers at section 341 meetings of creditors held in the 241 cases.[54]  At Trial, the Plaintiff established that approximately 85% to 90% of Defendant's customers speak Spanish as their primary language.[55]  Simply stated, many of Defendant's customers simply do not speak or read or understand English.[56]

Defendant does not provide documents in Spanish to his Spanish-speaking customers who do not read or speak English.[57]  Defendant does not provide a line-by-line translation of documents to his Spanish-speaking customers who do not read or speak English.[58]

### 3.   Defendant's Advertising

Defendant's business card is two-sided and advertises Defendant's services in English and Spanish.  Defendant's business card states:  "We are a debt relief agency.  We help people file for bankruptcy under the Bankruptcy Code."[59]

---

[52]     *See* Joint Pretrial Statement, p. 4, ¶ 5.

[53]     *See* Joint Pretrial Statement, p. 4, ¶ 6.

[54]     *See* Complaint, p. 7, ¶ 19; Motion for Partial Summary Judgment, p. 6, ¶ 4; Joint Pretrial Statement ¶ 21.

[55]      *See* Trial Transcript 6/5/12, p. 31, lines 8-10.

[56]     *See* Trial Transcript 6/5/12, p. 106, lines 13-18; p. 119, lines 5-10; p. 123, lines 8-14.

[57]     *See* Trial Transcript 6/5/12, p. 31, lines 21-25; p. 32, line 1; p. 106, 19-21; p. 119, lines 11-13; p. 123, lines 15-17.

[58]     *See* Trial Transcript 6/5/12, p. 32, lines 2-16; p. 106, lines 22-24; p. 119, lines 14-16; p. 123, lines 18-19.

[59]     *See* Complaint, p. 6, ¶ 17; Joint Pretrial Statement,  p. 5, ¶ 16.  *See also* Trial Exhibit 62.

Defendant advertises his bankruptcy petition preparer services in the *Denver Daily News*, *Westword*, *Aurora Sentinel*, *El Comercio*, *El Reportero*, *La Presna* and *El Hispano*.[60]  Defendant advertises his bankruptcy petition preparer services in Spanish on local radio stations.[61]  Defendant advertises his bankruptcy petition preparer services in Spanish on Telemundo television.[62]

Defendant has expanded his advertising to the internet and now has access to national and international markets.  By way of example, Defendant advertises his bankruptcy petition preparer services on the internet[63] and specifically on You Tube.[64]

       4.     <u>Defendant's Employees</u>

Defendant's employees have included Joseph M. Assaf, Rocio Reza-Ortega, Francisca Ruz, Martha Herrera and Maria Mejia.[65]  At the time of trial, Defendant's current employees included Joseph M. Assaf and Martha Herrera.[66]

---

[60]      *See* Complaint, p. 7, ¶ 16; Joint Pretrial Statement, p. 4, ¶ 10.  *See also* Trial Exhibits 56, 57 and 58.

[61]      *See* Complaint, p. 6, ¶ 16; Joint Pretrial Statement p. 4, ¶ 11.

[62]      *See* Complaint, p. 6, ¶ 16; Joint Pretrial Statement, p. 5, ¶ 12.

[63]      *See* Joint Pretrial Statement, p. 5,  ¶ 13.  *See also* Trial Exhibits 60 and 61.

[64]      *See* Complaint, p. 6, ¶ 16; Joint Pretrial Statement , p. 5, ¶ 14.  *See also* Trial Exhibit 59.  The Court was also a bit surprised to be informed that at least one Debtor learned of Mr. Assaf's services on an advertisement on the wall of a bathroom.

[65]      *See* Joint Pretrial Statement, p. 5, ¶ 15.

[66]      *See* Joint Pretrial Statement, p. 5, ¶ 17.  The Joint Pretrial Statement indicated the following:

> Joseph M. Assaf's job title:  Agent.  Type of work performed:  typing bankruptcy agreements, assisting customers with online registration for 1st and 2nd class courses.  Providing customers transportation to court to file bankruptcy documents.  Dates of employment - Jan. 2011 to present.  Salary:  Started at $9.00 per hour.

*See* Joint Pretrial Statement, p. 5, ¶ 18.

> Martha Herrera's job title:  Agent/Administrator.  Type of work performed: typing bankruptcy agreements, assisting customers with online registration for 1st and 2nd class certificates.  Providing customers with transportation to court to file bankruptcy documents.  Dates of employment - Jan. 2011 to present.  Salary: Started at $9.00 per hour.

*See* Joint Pretrial Statement, p. 5, ¶ 19.

 5.   Defendant's Books, Records and Accounting

Defendant does not have any ledgers, journal entries, check registers or any other documents evidencing the receipt of money from Debtors identified in Exhibit A to the Plaintiff's Complaint.[67]  Defendant operates his business via cash transactions.[68]

 6.   Defendant's Fees and Services

Defendant charges $200.00 for the typing service involved in typing his customers' bankruptcy paperwork.[69]  Defendant also charges an additional $100.00 for a workbook which includes a credit report and for Defendant's assistance in providing transportation to file paperwork with the Court.[70] Defendant also charges another $200.00 to customers who elect to take their prepetition credit counseling course and the postpetition financial management course online in Defendant's office at $100.00 for each class.[71]

Defendant stated in his Answer to the Complaint that "many customers opt for the convenience of taking the course online at defendant's office."  Defendant indicated that a customer normally pays Defendant $100.00 for each of two certificates which includes the $25.00 fee that the approved agency charges.[72]  Defendant charges his customers at least $500.00 per case for his services.[73]

In his response to the Plaintiff's Interrogatory No. 1(c) regarding his fees, Defendant's sworn answer was as follows:[74]

 $200 applied to bankruptcy petition typing service. $100 applied to
 workbook, credit report and transportation to bankruptcy court for

---

[67]   *See* Joint Pretrial Statement, p. 6, ¶ 26; Motion for Judgment on the Pleadings, p. 13, ¶ 53.

[68]   *See* Joint Pretrial Statement, p. 6, ¶ 27; Motion for Judgment on the Pleadings, p. 14, ¶ 54.

[69]   *See* Joint Pretrial Statement, p. 6, ¶ 28; Motion for Judgment on the Pleadings, p. 6, ¶ 14.

[70]   *See* Joint Pretrial Statement, p. 6, ¶ 29; Motion for Judgment on the Pleadings, p. 6, ¶ 15.

[71]   *See* Joint Pretrial Statement, p. 6, ¶ 30; Motion for Judgment on the Pleadings, p. 6 at ¶ 16 and p. 16 at ¶ 66.

[72]   *See* Joint Pretrial Statement, p. 6, ¶ 31; Motion for Judgment on the Pleadings, p. 6 at ¶ 17, and p. 16, at ¶ 67.

[73]   *See* Joint Pretrial Statement, p. 6, ¶ 32; Motion for Judgment on the Pleading, p. 7 at ¶ 20 and p. 13 at ¶ 52.

[74]   The evidence demonstrates that an unknown number of Defendant's customers paid more than $500.00.  *See supra* Section VII.C.4.  If the eleven debtors who actually testified in Court are any representation, many Debtors paid more than $500.00.  *See supra* Section VII.C.4.; D.4.C.; D.9.

17

filing of bankruptcy petition and $200 applied for customer using Emmanuel M. Assaf's facilities and equipment for the processing of 1st class certificate and 2nd class certificate including payment to Abacus Credit Counseling fee of $25 for 1st class and payment of $25 to Sage Personal Finance for 2nd Class.[75]

Defendant stated the following in his Answer to the Complaint regarding the procedure he follows with his customers in his office:

> [I]n the first meeting, customer pays defendant $200 for the service of typing all the bankruptcy forms that customer requires. Defendant prepares an agreement for the typing service to be provided, customer receives all documentation that is required to be given to customer, including a workbook that customer fills out and after completing the workbook defendant types all bankruptcy forms as requested by customer. When completed, customer comes to office and verifies the accuracy of all the information and then customer signs the paperwork and we take customer to court to have him file their paperwork.[76]

Defendant also assists his customers with filling out information sheets which are requested by case trustees and questionnaires from the United States Trustee.[77]

---

[75] *See* Motion for Partial Summary Judgment, 14 ¶ 27. *See also* Trial Exhibits 44, 45, Interrogatory No. 1.

[76] *See* Motion for Partial Summary Judgment, pp. 10-11, ¶ 17; Joint Pretrial Statement, p. 6, ¶ 33.

[77] *See* Joint Pretrial Statement, p. 6, ¶ 22.

18

7.      Defendant's Fee Receipt[78]

Debtor Marco Briones-Coroy filed a voluntary petition for relief under Chapter 7 on December 10, 2010.  Defendant served as the Debtor's petition preparer.[79]  In Mr. Briones-Coroy's case, the Chapter 7 trustee filed a Motion for Order Reconsidering the Order Waiving Court Filing Fees and Consideration of Disgorgement of Fees Paid to the Petition Preparer and Assessment of Sanctions Against the Petition Preparer ("Motion for Reconsideration").[80]

A final evidentiary hearing was held May 24, 2011 on the Trustee's Motion for Reconsideration ("final evidentiary hearing" herein).  Pursuant to this Court's oral ruling on May 26, 2011 and accompanying Order entered on June 2, 2011, the Court entered the following findings of fact and conclusions of law:

> The Court also had before it Exhibit 2, which is a Fee Statement which the court finds susceptible to misunderstanding or misuse.

> The Court concludes that under Section 110(i)(1), there has been proven by the Trustee by a preponderance of the evidence, that while Mr. Assaf has not specifically been shown to have violated Sections 110(b), (c), (d), (e), (f)or (g), he has engaged in an unfair or deceptive practice by two matters.

> The first is, by not providing a written receipt for the cash transactions he undertakes with his customers, including the debtor, and thereby being candid, transparent, accountable in conducting business in the spirit of the Bankruptcy Code.  The Court finds it is not fair for debtors having to engage with Mr. Assaf in cash transactions without accountable, strict and clear accounting.

---

[78]      The United States Trustee refers to the term "Deceptive Receipt" to describe the Fee Receipt tendered to Debtors.  The Defendant's Fee Receipts were contained in Trial Exhibit 84.  The Court ultimately held after trial on the merits that the so-called receipt was, indeed, a deceptive and misleading pricing statement or receipt.  The Defendant's Fee Receipts are distinct and separate from the Disclosure of Compensation of Bankruptcy Petition Preparer Form filed with the Court.  *See*, e.g., Trial Exhibit 83.

[79]      Complaint, p. 3, ¶ 5; Motion for Partial Summary Judgment, p. 6 ¶ 5; Joint Pretrial Statement, p. 6, ¶ 37; Motion for Judgment on the Pleadings, p. 14, ¶ 55.

[80]      Complaint, p. 12,  ¶ 35; Motion for Partial Summary Judgment, p. 6, ¶ 6.

19

Secondly, the Court further finds a violation of Section 110(i) as being an unfair practice, to use Exhibit 2, which is the Fee Disclosure Statement, which the Court finds to not be clear.[81]

The verbiage, format, and context of the Fee Receipt the Defendant submitted to his customers was confusing and misleading to the undersigned Judge whose primary language is English; to a customer whose primary language is Spanish, the Court concludes it was incomprehensible and/or deceptive.  Before the Court's Order in the Briones-Coroy case, the only "receipts" Defendant used were the Typing Agreement (Exhibit 1) and the Fee Receipt (Exhibit 2).

> Q: So Exhibit 1 is the receipt to a debtor that they've paid you your fee?
>
> A: Exhibit 1 is the receipt. The agreement is the receipt that indicates how much money they pay my office in conjunction with the typing of the bankruptcy forms.
>
> So, to my belief, Exhibit 1 and Exhibit 2 will qualify how much a customer is paying for a bankruptcy, which is $200.[82]

The bottom line is that Mr. Assaf's billing and documentation of his fees in the Fee Receipts are incomplete, confusing and ambiguous.  Consequently, the Fee Receipts deceive the customers as to the amount they are being charged and for what services and materials are provided for the fee which is charged.  It was not until after this Court's oral ruling and order that Defendant created additional receipts so he could stay in business.[83] There are 106 cases with Fee Receipts which are incomplete, confusing and ambiguous and, thus, deceptive.[84]

---

[81]     *See* Motion for Partial Summary Judgment, p. 7, ¶ 7; Joint Pretrial Statement, p. 7, ¶ 38; Motion for Judgment on the Pleadings, p. 14, ¶ 57.  *See also* Trial Exhibits 9, 10, 13 and 15.

[82]     *See* Motion for Partial Summary Judgment, p. 11, ¶ 18; Joint Pretrial Statement, p. 8, ¶ 41; Motion for Judgment on the Pleadings, p. 14, ¶ 56.  *See also* Trial Exhibit 12, p. 27, lines 22-24.

[83]     *See* Motion for Partial Summary Judgment, p. 11, ¶ 19; Joint Pretrial Statement, p. 8, ¶ 42; Motion for Judgment on the Pleadings, p. 15, ¶ 59.  *See also* Trial Exhibit 9 ¶¶ 4-5.

[84]     *See* Motion for Partial Summary Judgment, p. 11, ¶ 19; Joint Pretrial Statement, p. 8, ¶ 43; Motion for Judgment on the Pleadings, p. 15, ¶ 60.  *See also* Trial Exhibit 84 and Trial Exhibit 64 "Deceptive Receipt" column.  *See also*, *supra* n.78.  Curiously, the "Deceptive Receipt" appears in almost every file immediately after Mr. Briones-Coroy's file.  None of these "Deceptive Receipts" are in any files *before* Mr. Briones-Coroy's case which was filed on December 10, 2010.  Ten other files have a variation of the "Deceptive Receipt."  *See* Motion for Partial Summary Judgment ¶ 19.  *See also* Trial Exhibit 85 and Trial Exhibit 64 "Deceptive Receipt" and "Deceptive Receipt Variation" columns.

8.      Statement of Financial Affairs Question No. 9

Defendant lists the $200.00 fee on the Statement of Financial Affairs ("SOFA" herein) Question 9 "Payments related to debt counseling or bankruptcy."[85] The Defendant's customers' answers to SOFA Question 9, "Payments related to debt counseling or bankruptcy," *consistently* list Defendant as payee and consistently show that only $200.00 was paid.[86]

9.      Disclosure of Compensation Forms

When Defendant's customers file for bankruptcy relief, Defendant files a "Disclosure of Compensation of Bankruptcy Petition Preparer" ("Compensation Disclosure" herein) and states that he has accepted a fee in the amount of $200.00.[87]  Defendant's Disclosures of Compensation filed with the Court for all of the Defendant's customers state that Defendant received $200.00 for "document preparation services."[88]

10.      Credit Counseling Course

Debtors are required to take a pre-filing credit counseling course, as well as a post-filing financial management course, in order to receive a discharge.[89] Defendant is not approved by the United States Trustee Program to conduct credit counseling or financial management courses.[90]

A pre-bankruptcy counseling session with an approved credit counseling organization usually includes an evaluation of a debtor's personal financial situation, a discussion of

---

[85]      *See* Complaint, p. 10, ¶ 29; Motion for Partial Summary Judgment, p. 10, ¶ 16.  *See also* Trial Exhibits 81 and 81a.

[86]      *See* Joint Pretrial Statement, p. 7, ¶ 34; Motion for Judgment on the Pleadings, p. 7, ¶ 23.  *See also* Trial Exhibits 81 and 81a.

[87]      *See* Complaint, p. 10, ¶ 29; Motion for Partial Summary Judgment, p. 10, ¶ 16; Joint Pretrial Statement, p. 7, ¶ 35; Motion for Judgment on the Pleadings, p. 7, ¶ 21.  As noted in footnote 78, *supra,* the Compensation Disclosure is separate and distinct from the Defendant's Fee Receipts evidenced at Trial Exhibit 84.

[88]      Joint Pretrial Statement, p. 7, ¶ 36; Motion for Judgment on the Pleadings, p. 7, ¶ 22.  *See also* Trial Exhibits 81 and 83.

[89]      11 U.S.C. § 109(h); 11 U.S.C. § 521(b), 11 U.S.C. § 727(a)(11), 11 U.S.C. § 1328(g); Fed.R.Bankr.P. 1007(b)(2); and Fed,.R.Bankr.P. 4004(c)(4).  *See* Complaint, p. 8, ¶ 22; Motion for Partial Summary Judgment, p. 12, ¶ 22; Joint Pretrial Statement, p. 9, ¶ 50; Motion for Judgment on the Pleadings, p. 17, ¶ 68.

[90]      *See* Complaint, p. 8, ¶ 22; Motion for Partial Summary Judgment, p. 12, ¶ 22; Joint Pretrial Statement, p. 10, ¶ 56; Motion for Judgment on the Pleadings, p. 18, ¶ 72.

alternatives to bankruptcy, and a personal budget plan.[91]  A typical counseling session should last about 60 to 90 minutes, and can take place in person, on the phone, or online.[92]

> 11.  Exhibit D – Individual Debtor's Statement of Compliance with Credit Counseling Requirement Forms

Defendant, personally or through an employee, prepares Exhibit D –  Individual Debtor's Statement of Compliance with Credit Counseling Requirement ("Statement of Compliance" herein) for his customers.[93]  Defendant prepared the Statement of Compliance form in 225 cases.[94]  The Defendant would type the customer's name and check off box number one certifying that the Debtor had obtained credit counseling.  The Defendant would also type the date on the second page.  All of the Statement of Compliance forms prepared by Defendant and filed in the Debtors' bankruptcy cases are signed by the Debtors.[95]  The Debtor/customer's only role in preparing the document was to sign the document.[96]  Defendant does not sign the Statement of Compliance that he prepares for his customers.[97]

Furthermore, none of the Statement of Compliance forms prepared by Defendant have Defendant's name (or his employee's or agent's name either) and address on the document.[98]  Defendant does not put a social security number or other identifying number on the Statement of Compliance forms that he prepares for his customers.[99]

---

[91]  *See* Complaint, p. 8, ¶ 23; Motion for Partial Summary Judgment, p. 13, ¶ 23; Joint Pretrial Statement , p. 9, ¶ 51; Motion for Judgment on the Pleadings, p. 17, ¶ 69.

[92]  *See* Complaint, p. 8, ¶ 23; Motion for Partial Summary Judgment, p. 13, ¶ 23; Joint Pretrial Statement, p. 9, ¶ 52; Motion for Judgment on the Pleadings, p. 18, ¶ 70.

[93]  *See* Joint Pretrial Statement, p. 10, ¶ 57; Motion for Judgment on the Pleadings, p. 9 at ¶ 31, p. 10, at ¶ 42.

[94]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 55.

[95]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 55.  *See also* Trial Exhibit 79.

[96]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 54.  *See also* Trial Exhibit 117 ¶ 8.

[97]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 55; Joint Pretrial Statement, p. 10, ¶ 58; Motion for Judgment on the Pleadings, p. 9, ¶ 32.  *See also* Trial Exhibit 79.

[98]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 55.  *See also* Trial Exhibit 79.

[99]  *See* Motion for Partial Summary Judgment, p. 22, ¶ 55; Joint Pretrial Statement, p. 10, ¶ 59; Motion for Judgment on the Pleadings, p. 11, ¶ 43.  *See also* Trial Exhibit 79.

12.   Abacus Credit Counseling

Most of the pre-filing credit counseling certificates show that the Debtors listed in Exhibit A of the Complaint received pre-bankruptcy counseling from Abacus Credit Counseling with Credit Counselor, Laura M. Ahart.[100]  Most of the pre-filing credit counseling certificates show that many of the Debtors that used Defendant's services after May 13, 2011, received pre-bankruptcy counseling from Abacus Credit Counseling with Credit Counselor, Laura M. Ahart.[101]

Abacus is approved by the United States Trustee to provide pre-bankruptcy credit counseling.[102]  Defendant uses Abacus Credit Counseling for the first certificate, the credit counseling certificate.[103]  At the final evidentiary hearing conducted on May 24 and 26, 2011 (Docket #34 and #36) in the underlying Briones-Coroy case, Case No. 10-40900-SBB, Defendant testified that he transacted with Abacus as follows:

> Q:  And just to confirm your knowledge, what -- what credit
> counseling service or entity do you usually use so you would know
> that the customer did it in your office?
> A:  I believe it's called Abacus.[104]

At the hearing held February 2, 2012 in the within adversary proceeding[105] regarding the United States Trustee's Motion to Compel and Sanctions, Defendant told this Court the following about credit counseling courses:

> In this request sometimes she asked for information about the
> financial institution that I use in order to pay for the courses taken
> by my customers.  I really cannot state with exactitude which
> companies were used.  Nonetheless, I can agree to that if any
> person from this list took a class in my office, I will agree that, you

---

[100]      See Complaint, p. 9, ¶ 25; Motion for Partial Summary Judgment, p. 13, ¶ 24; Joint Pretrial Statement, p. 10, ¶ 65.  See also Trial Exhibit 79.

[101]      Joint Pretrial Statement, p. 11, ¶ 66; Motion for Judgment on the Pleadings, p. 27, ¶ 118.  See also Trial Exhibit 79.

[102]      Complaint, p. 8, ¶ 21; Motion for Partial Summary Judgment, p. 13, ¶ 24; Joint Pretrial Statement, p. 10, ¶ 64; Motion for Judgment on the Pleadings, p. 19, ¶ 75.  See, 11 U.S.C. § 111 with respect to credit counseling agencies.

[103]      Joint Pretrial Statement, p. 10, ¶ 63; Motion for Judgment on the Pleadings, p. 18, ¶ 74.

[104]      See Motion for Partial Summary Judgment, p. 13, ¶ 25.  See also Trial Exhibit 12, p. 44, lines 11-14.

[105]      Docket #42.

> know, I -- I did receive a payment for those classes, and that a
> payment to the counseling agency was paid in the amount of $25,
> for the first class, and $35 for the second class.[106]

Regarding Defendant's accounting records for Abacus, Defendant stated in his response to the
Plaintiff's Document Request No. 16 as follows:

> I do not have accounting records, evidencing the amount and date
> of money I paid to any credit counseling and debtor education
> providers in connection with all debtors listed on Exhibit "A". It is
> my belief that the U.S. trustee office has records from each of the
> credit counseling and debtor education providers evidencing the
> amounts paid on behalf of debtors and the dates this amounts were
> paid. I will not dispute this information and hereby agree that such
> information is correct.[107]

Documents from Abacus show that Defendant paid $25.00 for the credit counseling course for
238 debtors.[108]

On January 31, 2012, the Plaintiff deposed Laura Ahart, Chief Executive Officer of
Abacus. Despite written notice and a telephone call by counsel for the Plaintiff to Defendant,
Defendant stated that he was not attending the deposition.[109]

Since 2009, Abacus has had an online credit counseling course available through the
internet so people can take it via computer. An individual or couple registers for the course and
they provide numbers as to their monthly income and monthly spending across about 100 to 120
categories. The course is the same for all debtors.[110]

Abacus' credit counseling course is at least 29 pages when it is printed. All the screen
shots except for pages 16 through 19 of the sample course are identical for all persons taking the

---

[106]        *See* Motion for Partial Summary Judgment, p. 14, ¶ 26. *See also* Trial Exhibit 43, p. 9, lines 13-22; Trial Exhibit 45, Interrogatory Nos. 1 and 2.

[107]        *See* Motion for Partial Summary Judgment, p. 15, ¶ 28; Joint Pretrial Statement, p. 10, ¶ 55; Motion for Judgment on the Pleadings, p. 18, ¶ 71. *See also* Trial Exhibit 47 at Document Request No. 16.

[108]        *See* Motion for Partial Summary Judgment, p. 19, ¶ 46; Joint Pretrial Statement, p. 11, ¶ 67; Motion for Judgment on the Pleadings, p. 6 at ¶ 18, p. 19 at ¶ 76.

[109]        *See* Motion for Partial Summary Judgment, p. 15, ¶ 30. *See also* Trial Exhibit 78, p. 5, Lines 17-25; p. 8, Lines 19-25; p. 9, Lines 1-5.

[110]        *See* Motion for Partial Summary Judgment, p. 16, ¶ 31. *See also* Trial Exhibit 78 p. 15, Lines 13-17; p. 18, Lines 5-16; p. 20, Lines 19-25.

course.  Pages 16 through 19 of the course have variations depending on whether the debtor is married or single or whether the credit counseling course fee was waived.[111]

Pursuant to a subpoena issued on September 22, 2011, Abacus was given a copy of Exhibit A to the Plaintiff's Complaint and asked to produce business records for all cases listed on Exhibit A.  Pursuant to a second subpoena issued on December 19, 2011, Abacus was asked to produce business records for cases filed by Defendant after the Plaintiff's Complaint was filed, cases filed from May 13, 2011 through November 18, 2011.[112]

One of Ms. Ahart's responsibilities is to maintain the records of Abacus.  In response to the Plaintiff's subpoenas, Ms. Ahart produced Abacus' documents numbered 1 through 3,582 and two signed Declarations for Records of Regularly Conducted Business Activity.[113] Categories of documents that Abacus produced for the Defendant's customers included their contact information also known as the Client Record Page, Certificate Page, Course Information Page and Payment System Page ("Payment Pages").[114]

The Abacus Client Record Page lists the name of the debtor and their spouse if it is a joint case.[115]  The Client Record Page has a data field that lists the last eight digits of the credit counseling certificate for the individual and their spouse if it is a joint case.[116] The last eight digits of the certificates that appear on the Client Record Page match the certificate numbers for all of the debtors' certificates of credit counseling.[117] Abacus' business records show credit counseling certificates were sent to the Defendant at email addresses associated with Defendant.[118]

---

[111]     *See* Motion for Partial Summary Judgment, p 16, ¶ 32.  *See also* Trial Exhibit 78c and Trial Exhibit 78 p. 22, Lines 1-17; p. 30, Lines 12-25; p. 31, Line 1-25; p. 32, Line 1; p. 36, Lines 22-25.

[112]     *See* Motion for Partial Summary Judgment, p. 16, ¶ 33.  *See also* Trial Exhibit 78d.

[113]     *See* Motion for Partial Summary Judgment, p. 16, ¶ 34.  *See also* Trial Exhibit 78e and Trial Exhibit 78, p. 13, Lines 7-9; p. 39, Lines 1-8.

[114]     *See* Motion for Partial Summary Judgment , p. 17, ¶ 35.  *See also* Trial Exhibit 78 p. 41, Lines 5-12, 22-25; p. 42, Lines 1-6.

[115]     *See* Motion for Partial Summary Judgment, p. 17, ¶ 35.  *See also* Trial Exhibit 78 p. 42, Lines 1-13; p. 48, Lines 11-15.

[116]     *See* Motion for Partial Summary Judgment, p. 17, ¶ 35.  *See also* Trial Exhibit 78 p. 42, Lines 1-13; p. 48, Lines 11-15.

[117]     *See* Motion for Partial Summary Judgment, p. 17, ¶¶ 36, 37.  *See also* Trial Exhibit 78 p. 49, Lines 3-22; Trial Exhibit 74 "Certificate No." column.

[118]     *See* Joint Pretrial Statement, p 11, ¶ 69; Motion for Judgment on the Pleadings, p. 19, ¶ 78.

Another field on the Abacus Client Record Page is the language field and the only choices are English or Spanish. Abacus records show that all of Defendant's customers took the course in English.[119] The Client Record Page shows a "Reg Date" field, the date and time the debtor started the credit counseling course. There is also a Completion Date field. The difference between the "Reg Date" field and the "Completion Date" field is the amount of time that the consumer spent taking the course.[120]

Abacus' credit counseling course is a 60-90 minute course regarding budget and credit counseling. Abacus designed the course with the anticipation that it would take a consumer 60-90 minutes to complete the course. Nicole Zollars, Paralegal Specialist for the United States Trustee, took Abacus' online credit counseling course. It took Ms. Zollars approximately an hour to complete the course.[121]

Out of 241 cases on Exhibit A of the Plaintiff's Complaint, 197 cases show that the debtors opted to take credit counseling courses at Defendant's office with Abacus. According to Abacus' records, the vast majority of Defendant's customers that used Defendant's facilities and equipment for the processing of the credit counseling certificate are not taking the full 60-90 minutes to take the online credit counseling course.[122] The average time per case for all Defendant's customers who used Abacus to complete the Abacus credit counseling course is three minutes and seventeen seconds (00:03:17). The average time per case for a debtor listed in Exhibit A to the Plaintiff's Complaint to complete the Abacus credit counseling course is two minutes and one second (00:02:01).[123]

Abacus' online course is always $25.00, regardless of whether it is an individual or a couple taking the course.[124] Abacus' business records for Payment Pages show that Defendant paid $25.00 for 238 debtors to take the credit counseling course. Eleven of those cases show that Rocio-Reza Ortega paid the fee. Even though Abacus only charges $25.00 per couple to take the

---

[119]    *See* Motion for Partial Summary Judgment, p. 17, ¶ 39; Joint Pretrial Statement, p. 11, ¶ 70; Motion for Judgment on the Pleadings, p. 19, ¶ 79. *See also* Trial Exhibit 78 p. 51, Lines 7-10; Trial Exhibit 74 "Language Course Taken In" column.

[120]    *See* Motion for Partial Summary Judgment, p. 18, ¶ 40. *See also* Trial Exhibit 78 p. 47, Lines 15-25; p. 68, Lines 12-18.

[121]    *See* Motion for Partial Summary Judgment, p. 18, ¶ 41. *See also* Trial Exhibit 78 p. 58, Lines 23-25; p. 59, Lines 1-6.

[122]    *See* Complaint, p. 9, ¶ 25; Motion for Partial Summary Judgment, p. 18, ¶ 42; Joint Pretrial Statement, p. 11, ¶ 71; Motion for Judgment on the Pleadings, p. 19, ¶ 80. *See also* Trial Exhibit 75.

[123]    *See* Motion for Partial Summary Judgment, p. 19, ¶ 43; Joint Pretrial Statement, p. 11, ¶ 71.

[124]    *See* Motion for Partial Summary Judgment, p. 19, ¶ 45; Joint Pretrial Statement, p. 11, ¶ 68; Motion for Judgment on the Pleadings, p. 19, ¶ 77. *See also* Trial Exhibit 78 p. 63, Lines 1-9.

credit counseling course, Defendant charges each of his customers, regardless of individual or joint filing status, $100.00 for each customer.[125]

Defendant stated in his Answer to the Complaint "many customers opt for the convenience of taking the course online at defendant's office. Customer normally pays defendant $100.00 for each certificate which includes the fee that the approved agency charges."[126] "$200" is listed by Defendant under "1st and 2nd Certif." on the Fee Receipt. There are 106 of Defendant's customer files that have a Deceptive Receipt. All the Fee Receipts in Defendant's customers files match the Fee Receipt that this Court found unclear and deceptive after the final evidentiary hearing in the underlying Briones-Coroy case, Case No. 10-40900-SBB (Docket #34, #36, 340, #41 and transcript docketed at #44).[127]

"Depending on whether the Debtor is an individual or a couple, Defendant is profiting from between $75 and $125 [sic] [$175] dollars for his customers to use his facility."[128] This charge, or profit, is neither disclosed on Defendant's Compensation Disclosure nor on the Debtor's SOFA Question No. 9, "Payments related to debt counseling or bankruptcy."[129] All of Defendant's Compensation Disclosures for Defendant's customers indicate only that Defendant received $200.00 for "document preparation services."[130]

Further, the SOFA Question No. 9 states: "List All Payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case." The Debtors' answers to SOFA Question 9, "Payments related to debt counseling or bankruptcy," consistently list Defendant as payee and uniformly show that only $200.00 was paid.[131]

---

[125]    See Motion for Partial Summary Judgment, p. 19, ¶ 46; Joint Pretrial Statement, p. 11, ¶ 67. See also Trial Exhibit 77.

[126]    See Motion for Partial Summary Judgment, p. 20, ¶ 47. See also Trial Exhibit 3, Affirmative Defenses ¶ 10.

[127]    See Motion for Partial Summary Judgment, p. 20, ¶ 48. See also Trial Exhibit 84 and Trial Exhibit 64 "Deceptive Receipt (Exhibit 2)" column.

[128]    Id.

[129]    See Motion for Partial Summary Judgment, p. 20, ¶ 49. See also Trial Exhibit 81a and Trial Exhibit 83.

[130]    See Motion for Partial Summary Judgment, p. 20, ¶ 50.

[131]    See Motion for Partial Summary Judgment, pp. 20-21, ¶ 51; Joint Pretrial Statement, p. 6, ¶ 34; Motion for Judgment on the Pleadings, p. 7, ¶ 23 See also Trial Exhibit 81a.

The Abacus Payment Page shows credit card transactions for everyone who takes the course and pays by credit card.  Abacus verifies the address of the cardholder against the card and the last four digits of the credit card are displayed on the Payment Page.[132]   The customer billing information on the Abacus Payment Page shows the name that appears on the credit card, the cardholder's name.  The address on the Abacus Payment Page is the address of the cardholder.  *Abacus records show that the majority of the credit cards are under Defendant's name and address.*[133]

### 13.    Debtor Education Financial Management Course

A typical post-filing financial management course usually includes information on developing a budget, managing money, using credit wisely, and other resources.[134]  A typical financial management session might last longer than the pre-filing counseling and can take approximately two hours to complete.[135]

Defendant uses Sage Personal Finance for this second certificate, the financial management course certificate.[136]  Sage Personal Finance is approved by the United States Trustee Program to provide post-filing financial management courses.[137]  Several of the post-filing financial management certificates issued by Sage Personal Finance show that many Debtors listed on Exhibit A of the Complaint received financial management counseling from Sage.[138]  Several of the post-filing financial management certificates issued by Sage Personal Finance show that many Debtors that used Defendant's services after May 13, 2011 received financial management counseling from Sage Personal Finance.[139]  Defendant pays Sage Personal Finance $35.00 on behalf of a customer for the financial management course.[140]  Business records from Sage Personal Finance show that the financial management course certificates were

---

[132]    *See* Motion for Partial Summary Judgment, p. 21 ¶ 52.  *See also* Trial Exhibit 78 p. 64, Lines 12-17; p. 66, Lines 3-17; Trial Exhibit 77 "Card Type" and "Card No." columns.

[133]    *See* Motion for Partial Summary Judgment, p. 21, ¶ 53.  *See also* Trial Exhibit 78 p. 66, Lines 23-25; p. 67, Lines 1-5; Trial Exhibit 77 "Name on Credit Card" and "Address Associated with Credit Card" columns.

[134]    Complaint, pp. 8-9, ¶ 24; Joint Pretrial Statement, p. 9,  ¶ 53.

[135]    Complaint, pp. 8-9,  ¶ 24; Joint Pretrial Statement, p. 9, ¶ 54.

[136]    Joint Pretrial Statement, p. 11, ¶ 72.

[137]    Joint Pretrial Statement, p. 11, ¶ 73.

[138]    Joint Pretrial Statement, p. 11, ¶ 74.

[139]    Joint Pretrial Statement, p. 11, ¶ 75; Motion for Judgment on the Pleadings, p. 27, ¶ 118.

[140]    Joint Pretrial Statement, p. 11, ¶ 76; Motion for Judgment on the Pleadings, p. 7, ¶ 19.

sent to the Defendant at email addresses associated with Defendant.[141]   Sage's business records show that Defendant paid for the courses.[142]

Prior to using Abacus Credit Counseling and Sage Personal Finance, Defendant used Money Management International, Inc.[143]   Money Management International Inc. is approved by the United States Trustee Program to provide credit counseling and post-filing financial management courses.[144]   There are pre-filing credit counseling certificates that show that the Debtors listed in Exhibit A of the Complaint received pre-bankruptcy counseling from Money Management International, Inc.[145]   There are certificates that show that the Debtors listed in Exhibit A of the Complaint received financial management course counseling from Money Management International, Inc.[146]

Business records from Money Management International, Inc. show that Defendant was the "customer" and that the financial management course certificates and credit counseling certificates were faxed to Defendant for several of Defendant's customers.   There are pre-filing credit counseling certificates that show that the Debtors listed in Exhibit A of the Complaint received pre-bankruptcy counseling from Money Management International, Inc.[147]

14.   "Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management" Forms

Debtor prepares the Form 23 "Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management."[148]   Defendant does not sign and does not put a social security number or other identifying number on the Form 23 "Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management" that he prepares for his customers.[149]

---

[141]      Joint Pretrial Statement, p. 11, ¶ 77.

[142]      Joint Pretrial Statement, p. 11, ¶ 78.

[143]      Joint Pretrial Statement, p. 12, ¶ 83.

[144]      Joint Pretrial Statement, p. 12,  ¶ 84.

[145]      Joint Pretrial Statement, p. 12, ¶ 85.

[146]      Joint Pretrial Statement, p. 12, ¶ 86.

[147]      Joint Pretrial Statement, p. 12 ¶ 87.

[148]      Joint Pretrial Statement, p. 10, ¶ 60; Motion for Judgment on the Pleadings, p. 9 at ¶ 33, and p. 10 at ¶ 44.

[149]      Joint Pretrial Statement, p. 10, ¶ 61; Motion for Judgment on the Pleadings, p. 9, ¶ 34.

## VII.    Discussion

At commencement of the Trial of Plaintiff's Complaint, this Court granted Plaintiff's Motion for Partial Summary Judgment on Plaintiff's First, Second, Fifth and Sixth Claims for Relief. *The Court, however, reserved judgment on the amount of damages. Moreover, the Court retained for trial the Third and Fourth Claims for Relief.* This discussion encompasses, where identified, both the ruling on summary judgment and this Court's ruling on the merits after Trial.

### A.    Plaintiff's First Claim for Relief

#### 1.    Violation of 11 U.S.C. § 110(h)(2)

The Plaintiff asserts that Defendant violated 11 U.S.C. § 110(h)(2) for failing to disclose his entire fee on the Compensation Disclosure. 11 U.S.C. § 110(h)(2) provides:

> A declaration under penalty of perjury by the bankruptcy petition preparer shall be filed together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case ...

For the reasons stated on the record in open Court, which are incorporated herein, the Court granted the Plaintiff's First Claim for Relief and found that the Defendant did not disclose the fees he received from his customers/Debtors for the prepetition credit counseling course and postpetition financial management course.[150]

Section 110(h)(2) is unambiguous and provides that "*any*" fee received by the preparer in the 12 months preceding the bankruptcy is to be disclosed. Even if services provided were not bankruptcy petition preparer services, a preparer *must* disclose all fees received.[151]

Defendant lists the $200.00 fee on the SOFA Question 9 "Payments related to debt counseling or bankruptcy." When Defendant's customers file for bankruptcy relief, Defendant files a Compensation Disclosure and states that he has accepted a fee in the amount of $200.00. This, however, is misleading because Defendant also collects other related fees identified herein.

---

[150]    Docket #120 and #122.

[151]    *See, e.g., In re Evans*, 413 B.R. 315, 324 (Bankr.E.D. Va. 2009) (Section § 110(h)(2) "requires the disclosure of '*any fee*' received from the debtors in the year before their bankruptcy filing, not just those fees connected to the typing (or computer entry and printing) of the schedules and petition") (emphasis in original); *In re Moran,* 256 B.R. 842, 852 (Bankr.D.N.H. 2000) ("fees collected for *other* services must be disclosed pursuant to 11 U.S.C. § 110(h)(1) if they are collected within one year preceding a debtor's bankruptcy and such fees are subject to review and disgorgement pursuant to 11 U.S.C. § 110(h)(2) if found to be excessive") (emphasis added); *Kaitangian,* 218 B.R. at 114 ("The plain language of the statute does not limit the fee received to only fees incurred in connection with typing the petition and schedules").

Defendant only discloses that he charges $200.00. Defendant admits, however, that in reality he charges each of his customers at least a total of $500.00 for his bankruptcy petition preparer services. Fees above $200.00 (*i.e.*, workbook/credit report and transportation to the Court to file the case - $100.00; credit counseling certificate - $100.00 and financial management certificate - $100.00) are not reported on the Compensation Disclosure required to be filed with the Court.

Moreover, the *profits* Defendant makes on the credit counseling and financial management classes are not disclosed: a clear violation of section 110. Defendant states that customers who opt to do credit counseling with Defendant via Abacus (and there are many), each pay Defendant $100.00 so they can use Defendant's "facilities" and supposedly take the $25.00 course on Defendant's computer. A $100.00 fee to take a $25.00 credit counseling course is excessive and since it appears that the Debtors are not actually taking the course, Defendant is taking money from his customers under false or misleading circumstances and is using the bankruptcy process for his own benefit and profit.

The $100.00 fee for customers to use Defendant's facilities is never disclosed on the Compensation Disclosure. Moreover, Defendant never discloses the profit he makes. He does not identify his profit when he prepares the customer's SOFA No. 9, "Payments related to debt counseling or bankruptcy" (SOFA No. 9). None of the SOFA No. 9 responses show this additional payment to Defendant. SOFA No. 9 merely shows $200.00.

Section 110(h)(2) requires Defendant to file a declaration under penalty of perjury about any fee received from a customer. Although Defendant signed 239 Compensation Disclosure forms which were filed with Debtors' petitions, Defendant failed to disclose all the fees he received. In all 239 cases, Defendant only disclosed $200.00 on his Compensation Disclosure. Based on these violations, the Debtors in the 239 cases are entitled to damages pursuant to the Plaintiff's Sixth Claim for Relief.[152]

For purposes of considering refunding fees to Defendant's Debtors/customers, the Court looks to 11 U.S.C. § 110(h)(3) for guidance. Specifically, 11 U.S.C. § 110(h)(3)(A) provides:

> The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in paragraph (2) found to be in excess of the value of any services
> (i)     rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition ; or
> (ii)     found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1).

---

[152]     The evidence produced at Trial through Debtors' testimony actually suggests, or allows the inference, that fees charged to Debtors by Mr. Assaf not infrequently actually exceeded $500.00 and sometimes significantly so. *See supra,* Sections VII.C.4.; D.4.C.; D.9.

31

Moreover, 11 U.S.C. § 110(h)(3)(B) states:

> All fees charged by a bankruptcy petition preparer may be
> forfeited in any case in which the bankruptcy petition preparer fails
> to comply with this subsection or subsection (b), (c), (d), (e), (f), or
> (g).

As structured by Congress, this Court must ascertain whether the Defendant's conduct was
merely the charging of an excessive fee warranting a return of that excess to Defendant's
Debtors/customers under 11 U.S.C. § 110(h)(3)(A),[153] or whether he has failed to comply with
11 U.S.C. § 110(b), (c), (d), (e), (f), or (g), thus warranting the return of all fees to his
Debtors/customers.[154] Consequently, this Court examines whether the United States Trustee has
demonstrated violations of 11 U.S.C. § 110(b), (c), (d), (e), (f), or (g) by this Defendant.

    2.     <u>Violation Under 11 U.S.C. § 110(b)</u>

The Plaintiff asserts that Defendant has violated 11 U.S.C. § 110(b) for failing to identify
himself and sign the forms that he prepared for his customers/Debtors, including the credit
counseling and financial management course forms.

11 U.S.C. § 110(b)(1) states:

> A bankruptcy petition preparer who prepares a document for filing
> shall sign the document and print the document preparer's name
> and address. If a bankruptcy petition preparer is not an individual,
> then an officer, principal, responsible person, or partner of the
> bankruptcy petition preparer shall be required to –
> (A)     sign the document for filing; and
> (B)     print on the document the name and address of that officer,
> principal, responsible person, or partner.

Defendant has violated 11 U.S.C. § 110(b)(1)(A) and (B) because he prepared the
Statement of Compliance for his customers and he failed to sign and print his name on the forms.
Although signed by the Debtors, none of the Statement of Compliance forms prepared by
Defendant, are signed by Defendant.

Defendant has also violated 11 U.S.C. § 110(b)(1)(A) and (B) because he prepared
"Form B23 Debtor's Certification of Completion of Postpetition Instructional Course

---

[153]     11 U.S.C. § 110(h)(3)(A) provides for a mandatory return of the fees in excess of the value of
services.

[154]     11 U.S.C. § 110(h)(3)(B) is a discretionary provision authorizing the Court to return all fees to the
Debtors.

Concerning Personal Financial Management" ("financial management course certificate" herein) for his customers and he failed to sign and print his name on the form.  Although signed by the Debtors, none of the financial management course certificates prepared by Defendant, are signed by Defendant.

Defendant prepared the Statement of Compliance forms in 226 cases and failed to sign the document or identify himself on the document.  Of these 226 cases, 38 cases were joint debtor cases; therefore, Defendant prepared a total of 264 Statement of Compliance forms.  Accordingly, Defendant violated § 110(b)(1)(A)(B) at least 264 times.  Based on these violations, the Debtors are entitled to damages pursuant to the United States Trustee's Sixth Claim for Relief.

3.  <u>Violation Under 11 U.S.C. § 110(c)</u>

The Plaintiff asserts that Defendant violated 11 U.S.C. § 110(c) by failing to place his social security number or other identifying number on the credit counseling and financial management course forms.  11 U.S.C. § 110(c)(1) states:

> A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

11 U.S.C. § 110(c)(2)(A) provides:

> Subject to subparagraph (B), for purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

11 U.S.C. § 110(c)(2)(B) states:

> If a bankruptcy petition preparer is not an individual, the identifying number of the bankruptcy petition preparer shall be the Social Security account number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.

Defendant has violated 11 U.S.C. § 110(c)(1) and (2)(A) or (B), because none of the Statement of Compliance forms prepared by Defendant show a social security number or other identifying number that identified individuals who prepared the document.

Defendant has also violated 11 U.S.C. § 110(c)(1) and (2)(A) or (B), because none of the forms prepared by Defendant about certification of completion of the post-petition

33

financial management course have a social security number or other identifying number that identified individuals who prepared the document.

Defendant prepared Statement of Compliance forms in 226 cases and failed to provide identifying numbers. Of these 226 cases, 38 cases were joint debtor cases; therefore, Defendant prepared a total of 264 Statement of Compliance forms. Accordingly, Defendant violated 11 U.S.C. § 110(c)(1) and (2)(A) or (B) at least 264 times. Based on these violations, the Debtors are entitled to damages pursuant to the United States Trustee's Sixth Claim for Relief.

### 4.  Forfeiture of All Fees

The United States Trustee has demonstrated that the Defendant has violated 11 U.S.C. § 110(b) and (c) and, consequently, consistent with 11 U.S.C. § 110(h)(3)(B), all fees received shall be forfeited by the Defendant and returned to the Debtors.[155] The Court shall direct that the fees paid to Mr. Assaf be turned over to the United States Trustee for the United States Trustee to reimburse to the Debtors. The Court shall further order the United States Trustee to submit a statement regarding Defendant's compliance with this Order to the Court within forty-five (45) days after entry of this Memorandum Opinion and Order and separate Judgment.

### B.  Plaintiff's Second Claim for Relief - Fine for Failure to Disclose Compensation

### 1.  Applicable Fines Under 11 U.S.C. § 110(l)

The Plaintiff, through its Second Claim for Relief, sought fines, pursuant to 11 U.S.C. § 110(l), for failure to disclose compensation. The fines requested are discretionary under the statute. Plaintiff alleges that Defendant, under penalty of perjury, failed to file an accurate declaration disclosing all fees received from a bankruptcy debtor within 12 months immediately prior to the filing of the respective bankruptcy case, and disclosing any unpaid fee charged to the respective bankruptcy Debtor(s). At the first day of the Trial of Plaintiff's Complaint, the Court granted this claim for relief and reserved for ruling the discretionary fine and mandatory trebling.

Under 11 U.S.C. § 110(l):

(1)      A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500.00 for each such failure.

---

[155]      On June 1, 2011, this Court, in the *In re Briones-Coroy* case, Case No. 10-40900-SBB,  granted the trustee's motion for reconsideration and entered judgment against Mr. Assaf for $1.00 in actual damages pursuant to section 110(i)(1)(A), $2,000.00 pursuant to section 110(i)(1)(B), and $1,000.00 pursuant to section 110(i)(2). See Docket #35 in Case No. 10-40900-SBB.  Consequently, this Court is not including in this Order that fees charged to the Debtor Briones-Coroy be forfeited, inasmuch as it has already been ordered.

(2)     The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer—

> (A)     advised the debtor to exclude assets or income that should have been included on applicable schedules;
> (B)     advised the debtor to use a false Social Security account number;
> (C)     failed to inform the debtor that the debtor was filing for relief under this title; or
> (D)     prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.

(3)     A debtor, trustee, creditor, or United States trustee (or the bankruptcy administrator, if nay) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.

(4)(A)  Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustee, who shall deposit an amount equal to such fines in the United States Trustee Fund.

This Court has held that Defendant violated 11 U.S.C. § 110(h)(2) and specifically 11 U.S.C. § 110(a) and (b).  Consequently, this Court has the discretion to fine the Defendant not more than $500.00 for each failure to comply.

Following the Trial of Plaintiff's Complaint, the Plaintiff withdrew this claim for relief on September 14, 2012.[156]  Nevertheless, as this Court has ruled on Defendant's violation under 11 U.S.C. § 110(h)(2), the Court believes it must at least explain the rationale of its original concerns stated on the record in open Court during the trial in *In re Antonio Valle-Rodriguez*, Case No. 11-33249-SBB.[157] But for the United States Trustee's withdrawal of the request for relief pursuant to subsection (l) of section 110, the Court would likely have awarded a fine (plus mandatory trebling) but the amount would have been considerably less than the maximum requested which would have resulted in millions of dollars of fines.

It appears that this Court must take into account certain factors when addressing a statutory discretionary fine.  The discussion that follows addresses those factors.

---

[156]     Docket #138.

[157]     The hearing was conducted on September 6, 2012 (Docket #39 in the *Antonio Valle-Rodriguez* case).

2.    The Discretion of this Court

The Plaintiff sought this Court's determination to find *each* violation warranting a fine. The Court under the unique facts and circumstance of this case (and cases), would have declined this request to fine each individual violation, as they are many and would result, after trebling, in millions of dollars of fines.  The Court concludes that such "racking up" or "stacking" of fines as against this Defendant is most likely not appropriate or a wise exercise of discretion on the part of this Court.

The Court, with respect to discretionary fines,  is guided but not necessarily controlled, by the Tenth Circuit's decision in *White v. General Motors Corporation*.[158]  In this case the Tenth Circuit examined the award of sanctions under FED. R. CIV. P. 11 and whether a court has properly considered whether the sanction amount is the least amount necessary to deter future misconduct.[159]  The Court indicated that in the context of sanctions the Court must examine the following:

(1)    *Reasonableness (Lodestar) Calculation*.  That is, whether, the fee is reasonable.  "In evaluating the reasonableness of the fee request, the ... court should consider that the very frivolousness of the claim is what justifies the sanctions."[160]

(2)    *Minimum to Deter*.  The Court of Appeals noted that "the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit. It is particularly inappropriate to use sanctions as a means of driving certain attorneys out of practice.  Such decisions are properly made by those charged with handling attorney disbarment and are generally accompanied by specific due process provisions to protect the rights of the attorney in question."  Moreover, the Court held that "the amount of sanctions is appropriate only when it is the "*minimum* that will serve to *adequately* deter the undesirable behavior.  Thus, the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer."[161]

(3)    *Ability to Pay*.  The Court of Appeals stated that this factor must "be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct ... and [an]

---

[158]    908 F.2d 675 (10th Cir. 1990).

[159]    Admittedly, the Tenth Circuit in *White* was examining Rule 11, while, here, the Court is examining 11 U.S.C. § 110 and a provision for "discretionary" fines.  Although not directly on point, this Court finds the guidance in *White* to be helpful if not compelling.

[160]    908 F.2d at 684.

[161]    *Id.*

[i]nability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."**162**

(4) *Other Factors.* The court may consider "factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate."**163**

This Court, with respect to the first factor, heard no direct testimony regarding the reasonableness of the maximum sanction requested by the United States Trustee. Regarding the second factor, it would appear that, as a deterrent, a significant fine could likely enter against Defendant, *but that can be achieved under 11 U.S.C. § 110(i)(l) under the mandatory provisions of the statute.* Moreover, with respect to the third factor, the Court heard absolutely no evidence of the Defendant's ability to pay. Finally, on the fourth factor, this Court did consider the history, evidence, and testimony before this Court. However, again, the fine(s) to the Defendant can be entered according to other mandatory provisions of the Bankruptcy Code and need not be assessed as sought by the Plaintiff's Second Claim for Relief.

## C.    Plaintiff's Third Claim For Relief - Collecting Court Filing Fees

1.    11 U.S.C. § 110(g)

Plaintiff seeks, under its Third Claim for Relief, this Court's ruling that the Defendant and/or Defendant's agents, assigns or employees paid the full filing fee for a case filed with the Bankruptcy Court where there was no fee waiver application filed when they delivered the petition to the Bankruptcy Court. The United States Trustee asserted that in the majority of these bankruptcy cases, Defendant collected an additional fee and told the Debtors that the additional fee was for "court fees." The United States Trustee asserts that this violates 11 U.S.C. § 110(g) because bankruptcy petition preparers are prohibited from collecting or receiving any payment from a debtor for or on behalf of the court in connection with the filing of a bankruptcy petition.**164**

---

**162**    *Id.,* at 685.

**163**    *Id.*

**164**    11 U.S.C. § 110(g) provides that:

A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

For the reasons stated here, this Court concludes that Defendant violated section 110(g) when his employees collected filing fees or received payments from Debtors for court fees in connection with filing the petition and this was done in at least ten cases.

In seven of these ten cases, the Defendant's employees, Joseph Assaf and Rocio Reza-Ortega, made installment payments to the Court for the Chapter 7 filing fee, as well as payments to have amendments to schedules filed.[165]  The remaining three cases were supported by Debtors' testimony at trial as detailed, below.

### 2.    Testimony of Nicole Zollars

Nicole Zollars, Paralegal Specialist for the Office of the United States Trustee, was assigned to the Defendant's case for over a year and a half.[166]  Ms. Zollars testified about a spreadsheet she prepared called the "U.S. Trustee's Summary of Payments Made to the Court by Defendant or Defendant's Employees" that showed payments made to the Bankruptcy Court by Defendant's employees.[167]

According to Ms. Zollars' spreadsheet, applications for waiver of filing fees were filed by Defendant in five of the ten cases:[168]

A.    *Flores-Villasenor, Baltazar and Flores, Soledad Irma*, Case No. 10-40234-MER;[169]

B.    *Vargas, Gerardo and Sanchez-Castillo, Lorena G*, Case No. 10-32155-EEB;[170]

C.    *Bustamante, Arnaldo Uber and Hinostroza, Rebecca Romula*, Case No. 11-11932-HRT;[171]

D.    *Campos-Molina, Armando*, Case No. 11-11984-ABC;[172] and

---

[165]    *See* Trial Exhibit 112.

[166]    *See* Trial Transcript, 6/4/12. p. 23, lines 14-18; p. 24, lines 7-10.

[167]    *See* Trial Transcript, 6/4/12. p. 33, lines 1-13; *See also* Trial Exhibit 112.

[168]    *See* Trial Transcript, 6/4/12. p. 33, lines 20-25; p. 34, lines 1-2.  *See also* Trial Exhibit 112 "Application for Waiver of Filing Fees" column.

[169]    United States Trustee Assigned Debtors #107 on Exhibit A attached hereto.

[170]    United States Trustee Assigned Debtors #119 on Exhibit A attached hereto .

[171]    United States Trustee Assigned Debtors #131 on Exhibit A attached hereto.

[172]    United States Trustee Assigned Debtor #133 on Exhibit A attached hereto.

E.      *Rubio-Perez, Yessica A*, Case No. 11-12367-MER.[173]

Ms. Zollars testified that the applications for fee waivers in all five of the above-listed cases were denied and, thus, the Debtors were required to pay the filing fee.[174]  Ms. Zollars' spreadsheet showed that Defendant's employees made installment payments for the filing fee to the Bankruptcy Court on behalf of these Debtors.[175]  Ms. Zollars testified about her review of docket sheets where Defendant's employees, Rocio Reza-Ortega and Joseph Assaf also known as "Joey," collected Court filing fees and/or made payments to the Court in seven cases.[176]

Ms. Zollars testified that her spreadsheet was based on the docket sheets for all cases filed by Defendant on behalf of his Debtors/customers, and the notations made by the Bankruptcy Court Clerk showing the installment fees paid and the dates they were paid by Defendant's employees.[177]  For the *Flores-Villasenor, Baltazar and Flores, Soledad Irma* case, Defendant's employee, Joseph Assaf, paid the Court the third installment fee in the amount of $75.00 on February 24, 2011.[178]  For the *Vargas, Gerardo and Sanchez-Castillo, Lorena G.* case, Defendant's employee, Joseph Assaf, paid the Court the second installment fee in the amount of $100.00 on March 1, 2011.[179]  For the *Bustamante, Arnaldo Uber and Hinostroza, Rebecca Romula* case, Defendant's employee, Joseph Assaf, paid the Court the first installment fee in the amount of $75.00 on February 24, 2011.[180]  For the *Campos-Molina, Armando* case, Defendant's employee, Joseph Assaf, paid the Court the first installment fee in the amount of $100.00 on March 3, 2011.[181]  For the *Rubio-Perez, Yessica A.* case, Defendant's employee,

---

[173]    United States Trustee Assigned Debtor #138 on Exhibit A attached hereto.

[174]    *See* Trial Transcript, 6/4/12, p. 34, lines 7-15.  *See also* Trial Exhibit 112 "Order Granting/Denying Application for Waiver of Filing Fees" column.

[175]    *See* Trial Transcript, 6/4/12, p. 34, lines 16-20.  *See also* Trial Exhibit 112 "Assaf Employee Who Paid Installment Fee with the Bankruptcy Court" column.

[176]    *Id.*  These cases were in Ms. Zollars' spreadsheet at Trial Exhibit 112 and the back up documentation was in Trial Exhibit 112a.

[177]    *See* Trial Transcript, 6/4/12, p. 34, lines 18-23; p. 35, lines 16-20; p. 36, lines 1-7.  *See also* Trial Exhibit 112a.

[178]    *See* Trial Exhibit 112.

[179]    *Id.*

[180]    *Id.*

[181]    *Id.*

Rocio-Reza Ortega, paid the Court the first installment fee in the amount of $75.00 on March 11, 2011.[182]

In addition to Defendant's employees paying installment payments to the Court, Ms. Zollars testified about Defendant's employee, Rocio Reza-Ortega, and Ms. Reza-Ortega's payment of fees for Debtors in two cases in connection with the amendment of schedules.[183] For the *Gonzalez, Antonio and Sanjuana* case,[184] Defendant's employee, Rocio Reza-Ortega, paid the Court the fee to amend Schedules B and C in the amount of $26.00 on March 28, 2011.[185] For the *Herrera, Mayra Maria* case,[186] Defendant's employee, Rocio Reza-Ortega, paid the Court the fee to amend Schedules B and D in the amount of $26.00 on April 21, 2011.[187]

### 3. Testimony of Rocio Reza-Ortega

Ms. Rocio Reza-Ortega was a former employee of Defendant and she provided testimony regarding Defendant's business practices. The Court observed her testimony at the trial of Plaintiff's Complaint and at prior evidentiary hearings held before the Court. Her testimony was consistent with the documents admitted into evidence and the other testimony provided by various debtor witnesses. The Court accepts Ms. Reza-Ortega's testimony as truthful and accurate in all material respects regarding the Plaintiff's Third and Fourth Claims for Relief.

Based on her testimony, Ms. Reza-Ortega was employed by Defendant as a secretary from April 2011 through the middle of October 2011.[188] In June 2011, Ms. Reza-Ortega was promoted to Office Administrator, and her responsibilities included review of the entire typed and completed bankruptcy forms.[189] Ms. Reza-Ortega decided to stop working for Defendant in October 2011 because it was affecting her personal life.[190]

---

[182]  *Id.*

[183]  *See* Trial Transcript, 6/4/12, p. 37, lines 19-25; p. 38, lines 1-8. *See also* Trial Exhibit 112 and 112a.

[184]  United States Trustee Assigned Debtors #149 on Exhibit A attached hereto.

[185]  *See* Trial Exhibit 112 and Exhibit 112a at page 25 of 32.

[186]  United States Trustee Assigned Debtor #179 on Exhibit A attached hereto.

[187]  *See* Trial Exhibit 112 and Exhibit 112a at page 30 of 32.

[188]  *See* Trial Transcript, 6/5/12, p. 3, lines 15-20, p. 4, lines 12-14.

[189]  *See* Trial Transcript, 6/5/12, p. 5, lines 14-20, 23-24.

[190]  *See* Trial Transcript, 6/5/12, p. 4, lines 6-7.

Ms. Reza-Ortega testified that she remembered paying the installment fee for the *Rubio-Perez, Yessica A.* case.[191]  Ms. Reza-Ortega testified that she made payments to the Court for Debtor/customers probably two or three times until she was told not to do so by Defendant.[192]  Per Defendant's advice, Ms. Reza-Ortega took the money to the Court to pay fees and then per Defendant's advice, she wasn't able to do it anymore.[193]  Ms. Reza-Ortega confirmed that she made three out of the seven payments.[194]

## 4.    Testimony from Debtors

Debtor Yvonne Mota testified that she paid Defendant $200.00 and then $500.00 for a total of $700.00.[195]  Ms. Mota testified that of the $500.00 payment, $200.00 was for "the court."[196]  Ms. Mota testified that she believed that the $200.00 was to pay the Court and that it was for the filing fee and not something else.[197]

Debtor Jesus Manuel Diaz-Hernandez testified that he paid Defendant a total of $700.00.[198]  Mr. Diaz-Hernandez testified that he paid Defendant $200.00 to fill out the forms and then Defendant asked for another $300.00.[199]  Then Defendant told Mr. Diaz-Hernandez that he needed another $200.00 to file the papers with the Court.[200]  Mr. Diaz-Hernandez testified that he believed that the additional $200.00 was to be paid to the Court to file the papers with the Court.[201]

---

[191]     *See* Trial Transcript, 6/5/12, p. 26, lines 11-23.

[192]     *See* Trial Transcript, 6/5/12, p. 26, lines 23-25.

[193]     *See* Trial Transcript, 6/5/12, p. 27, lines 14-16.

[194]     *See* Trial Transcript, 6/5/12, p. 26, lines 23-25.

[195]     *See* Trial Transcript, 6/5/12, p. 133, lines 6-16.

[196]     *See* Trial Transcript, 6/5/12, p. 134, lines 4-7.

[197]     *See* Trial Transcript, 6/5/12, p. 134, lines 8-15.

[198]     *See* Trial Transcript, 6/5/12, p. 125, lines 13-23.

[199]     *See* Trial Transcript, 6/5/12, p. 125, lines 14-18.

[200]     *See* Trial Transcript, 6/5/12, p. 125, lines 20-23.

[201]     *See* Trial Transcript, 6/5/12, p. 125, lines 22-25; p. 126, lines 1-8.

41

Debtor Poncho Frank Correa testified that he paid Defendant $200.00 and then an additional $400.00.[202]  Mr. Correa testified that he didn't quite understand what the additional $400.00 was for at the time, but that he thought it was for the Court filing fees.[203]

The evidence presented to the Court demonstrates that the Defendant has violated 11 U.S.C. § 110(g).  Under 11 U.S.C. § 110(h)(3)(B), this Court finds that Defendant paid the filing fees for the filing of a case on ten occasions.[204]  The Defendant shall be ordered to turn over to the respective Debtor(s), the filing fee in each of these cases.  However, because Plaintiff has withdrawn its claims under 11 U.S.C. § 110(1), Defendant will not be fined.

### D.    Plaintiff's Fourth Claim for Relief - Legal Advice

1.      <u>11 U.S.C. § 110(e)(2)</u>

Pursuant to 11 U.S.C. § 110(e)(2):

(A)      A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).

(B)      The legal advice referred to in subparagraph (A) includes advising the debtor—

(i)      whether—

(I)      to file a petition under this title; or

(II)      commencing a case under chapter 7, 11, 12, or 13 is appropriate;

---

[202]      *See* Trial Transcript, 6/4/12, p. 156, lines 5-10.

[203]      *See* Trial Transcript, 6/4/12, p. 156, lines 10-13.

[204]      Specifically, filing fees were paid in these cases:

A.      *Flores-Villasenor, Baltazar and Flores, Soledad Irma*, Case No. 10-40234-MER;
B.      *Vargas, Gerardo and Sanchez-Castillo, Lorena G*, Case No. 10-32155-EEB;
C.      *Bustamante, Arnaldo Uber and Hinostroza, Rebecca Romula*, Case No. 11-11932-HRT;
D.      *Campos-Molina, Armando*, Case No. 11-11984-ABC;
E.      *Rubio-Perez, Yessica A*, Case No. 11-12367-MER*;*
F.      *Gonzales, Antonio and Sanjuana*, Case No. 11-13351-SBB;
G.      *Herrera, Mayra Maria*, Case No. 11-15550-EEB;
H.      *Mota, Yvonne*, Case No. 11-12806-EEB;
I.      *Diaz-Hernandez, Jesus Manuel*, Case No. 10-29967-SBB; and
J.      *Correa, Pancho F.*, Case No. 10-24470-EEB.

> (ii)     whether the debtor's debts will be
> discharged in a case under this title;
> (iii)    whether the debtor will be able to retain the
> debtor's home, care, or other property after
> commencing a case under this title:
> (iv)     concerning—
> > (I)     the tax consequences of a
> > case brought under this title; or
> > (II)    the dischargeability of tax
> > claims;
> (v)      whether the debtor may or should promise to
> repay debts to a creditor or enter into a
> reaffirmation agreement with a creditor to reaffirm
> a debt;
> (vi)     concerning how to characterize the nature of
> the debtor's interest in property or the debtor's
> debts; or
> (vii)    concerning bankruptcy procedures and
> rights.

At trial, the United States Trustee demonstrated that Defendant violated 11 U.S.C. § 110(e)(2) in each and every case.  Again, however, because the Plaintiff has withdrawn the claim under 11 U.S.C. § 110(l), no fine will issue.  The Court will nevertheless set forth below Defendant's course of conduct in giving legal advice to establish a record of this Court's findings.

### 2.     Defendant's History of Providing Legal Advice

Since 2006, Defendant has provided legal advice and assisted debtors in Colorado.[205]  His activity in Colorado however, was relatively minimal until after the 2008 injunction issued by the California Bankruptcy Court.[206]  Since then, Defendant has been the bankruptcy petition preparer in over 300 cases in Colorado and he continues to file cases.[207]

In 2009, the Colorado Supreme Court responded to a complaint filed against this Defendant and ordered Defendant to stop engaging in the unauthorized practice of law in

---

[205]    *See* Complaint, p. 3, ¶ 19; Motion for Partial Summary Judgment, p. 5 at ¶ 4 and p. 9 at ¶ 15; Joint Pretrial Statement, p. 4 at ¶ 2 and p. 5 at ¶ 20.

[206]    *See* Complaint, p. 3 at ¶ 8 and p. 4 at ¶ 10; Motion for Partial Summary Judgment, p. 9,  ¶¶ 12, 13, 14; Joint Pretrial Statement, p. 9, ¶¶ 47, 49; Motion for Judgment on the Pleadings, p. 27,  ¶ 118.  *See also* Trial Exhibits 21, 22, 24, 25 and 64 "Petition Date" column.

[207]    *See* Joint Pretrial Statement, p. 5, ¶ 23.

connection with his bankruptcy petition preparer services.[208]  Despite a 2009 Order and Report of Hearing, Defendant has continued to provide prohibited legal advice to hundreds of unsuspecting victims.[209]

> 3.      An Overview of Defendant's Conduct with Respect to his Preparation of
>         Cases at Issue, as Demonstrated at Trial

Customers would call to make an appointment and would come in and see the Defendant first.  Individual customers were generally charged $200.00 for typing services and $100.00 for a workbook.  If the customer took credit counseling through Defendant's office, he/she was charged $100.00 per class.  Combined, an individual would be charged $500.00 for services to file bankruptcy.[210]  Based on evidence produced, Defendant's office appears to have been chaotic and customers were quickly shown where to sign documents without any explanation or opportunity to review them thoroughly.[211]

Many of the Defendant's customers were told to not worry about anything and that everything would be handled for them.[212]  According to Ms. Zollars' testimony, her review of all of Defendant's original customer files and her spreadsheet at Exhibit 64, reflects that not one customer file had a workbook in it.  This is despite Defendant's insistence that all customers received a workbook.[213]  Although the Plaintiff did not have workbooks from Defendant's original customer files, the United States Trustee did have the workbook that was produced by Defendant in the *Alba Avitia* case, Case No. 11-19504-HRT.[214]

---

[208]      *See* Complaint, p. 5 at ¶ 13 and p. 6 at ¶ 14; MSJ ¶ 10; Joint Pretrial Statement, p. 8, ¶ 44; Motion for Judgment on the Pleadings, p. 27, ¶ 118.  *See also* Trial Exhibits 33 and 34.

[209]      *See* Trial Exhibits 33 and 34.

[210]      *See* Joint Pretrial Statement, p. 6, ¶¶ 28, 29, 30; Motion for Judgment on the Pleadings, p. 6 at ¶¶ 14, 15, 16, and p. 17 at ¶ 66.

[211]      *See* Trial Transcript 6/4/12, p. 150, lines 1-5; 6/5/12, p. 80, lines 5-8.

[212]      *See* Trial Transcript 6/4/12, p. 168, lines 16-21; 6/5/12, p. 144, lines 1-4.

[213]      *See* Trial Exhibit 64.

[214]      United States Trustee Assigned Debtor #220 on Exhibit A attached hereto.  *See* Trial Exhibit 71.

No documents are provided in Spanish to Defendant's Spanish-speaking customers.[215] Defendant does not translate documents for his Spanish-speaking customers, line by line.[216] Defendant tells his customers that he is not an attorney and that he can't give legal advice.[217] He has his customers sign a form to this effect. These statements do not negate the fact that he is actually providing, directly and indirectly, legal advice to his customers.[218]

There are at least five main categories where Defendant shows a pattern that he gave some type of legal advice and violated 11 U.S.C. § 110(e).

(1)     Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers with the consistent use of pre-filled and pre-checked forms for his customers' bankruptcies.

(2)     Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers when he consistently decided what debtors should claim in the way of exemptions and provided a legal explanation of Schedule C exemptions in his workbook.

(3)     Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers when he prepared applications for waiver of the Chapter 7 filing fees either without consent from his customers or without their knowledge and understanding of the document.

(4)     Defendant violated section 110(e) after the United States Trustee analyzed how Defendant's customers answered questions about legal advice in the United States Trustee's Bankruptcy Petition Preparer Questionnaires.

(5)     Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers when he or his employees filled out Chapter 7 Trustee information sheets that are signed by debtors under penalty of perjury.

---

[215]    *See* Trial Transcript 6/5/12, p. 31, lines 21-25; p. 32, line 1; p. 106, 19-21; p. 119, lines 11-13; p. 123, lines 15-17.

[216]    *See* Trial Transcript 6/5/12, p. 32, lines 2-16; p. 106, lines 22-24; p. 119, lines 14-16; p. 123, lines 18-19.

[217]    *See* Trial Transcript 6/4/12, p. 180, lines 13-16; 6/5/12, p. 37, lines 12-17. *See also* Trial Exhibit 70 at p. 1.

[218]    *See* Trial Exhibit 64, "Debtor's Acknowledgment that Emmanuel Assaf is Not an Attorney" column.

4.     Category One:  Specific Instances of Legal Advice - Pre-Filled Forms

Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers with the consistent use of pre-filled and pre-checked forms for his customers' bankruptcies.  The evidence and testimony before this Court reflects that this violation occurred in all 241 cases.

a.     *Testimony of Rocio Reza-Ortega*

As Defendant's employee, Rocio Reza-Ortega was trained by Defendant on how to prepare a substantial portion of a typical debtor's bankruptcy documents, and was personally familiar with Defendant's business model and procedures.[219]  According, to Ms. Reza-Ortega, Defendant's general business model for completing the official bankruptcy forms was as follows:

(1)     The official bankruptcy forms were prepared based on information provided by customers in the workbook, and if portions of the workbook were not completed, Defendant's staff would obtain the information verbally.[220]

(2)     The official bankruptcy Voluntary Petition form used for customers' cases usually had several items pre-checked, including:  i) the box stating that "Debts are primarily consumer debts" located in the Nature of Debts section of the Petition; and ii) the  box stating "Chapter 7" located in the "Chapter of Bankruptcy Code Under Which The Petition is Filed" section of the Petition.[221]

(3)     Ms. Reza-Ortega testified that practically all of the answers to 25 questions on the SOFA are pre-checked and that changes are rarely made to the majority of the answers.[222]

(4)     The SOFA forms used for customers' cases all had these items pre-checked "NONE":

•     Question 2. Income other than from employment of operation of business.
•     Question 3. Payments to creditors.
•     Question 5.  Repossessions, foreclosures and returns.
•     Question 6. Assignments and receiverships.

---

[219]     *See e.g.,* Trial Transcript 6/5/12, p. 5, lines 19-23, p. 6, lines 5-7.

[220]     *See* Trial Transcript 6/5/12, p. 7, lines 8-25, p. 8, lines 1-8.

[221]     *See* Trial Transcript 6/5/12, p. 12, lines  11-20, p. 13, lines 8-11.

[222]     *See* Trial Transcript 6/5/12, p. 13, lines 12-25, p. 14, lines 1-25, p. 15, lines 1-17.

- Question 7. Gifts.
- Question 8. Losses.
- Question 9. Payments related to debt counseling or bankruptcy (filled in except for the date). The information was the same for all debtors, except the date.
- Question 10. Other Transfers.
- Question 11. Closed Financial Accounts.
- Question 12. Safe Deposit Boxes.
- Question 13. Setoffs.
- Question 14. Property held for another person.
- Question 16. Spouses and Former Spouses.
- Question 17. Environmental Information.
- Question 18. Nature, location and name of business.
- Question 19. Books, records and financial statements.
- Question 20. Inventories.
- Question 21. Current Partners, Officers, Directors and Shareholders.
- Question 22. Former partners, officers, directors and shareholders.
- Question 23. Withdrawals from a partnership or distributions by a corporation.
- Question 24. Tax Consolidation Group.
- Question 25. Pension Funds.[223]

(5)    While Ms. Reza-Ortega indicated that information related to these questions in the SOFA would be filled in if provided by a customer, she does not recollect that all of these questions were asked as part of the workbook. In fact, they are not in the workbook.[224]

(6)    Even if answers to a workbook question might be relevant to any bankruptcy matters, the workbook does not pose questions as they are asked in the official SOFA.[225]

(7)    Ms. Reza-Ortega testified that the primary language of 85% to 90% of Defendant's customers was Spanish. Yet, the workbook was not in Spanish and Defendant's staff never translated the official bankruptcy forms they prepared line-by-line for the customers.[226]

---

[223]    *See* Trial Transcript 6/5/12, p. 13, lines 12-25, p. 14, lines 1-25, p. 15, lines 1-17.

[224]    *See* Trial Transcript 6/5/12, p. 44, lines 15-24, p. 45, lines 1-25, p. 15.

[225]    *See* Trial Exhibit 71.

[226]    *See* Trial Transcript 6/5/12, p. 31, lines 7-10, p. 32, lines 14-16.

(8)     As for preparing Schedules A and B, these schedules were generally typed out according to the information provided by the customer in the workbook or through verbally answering the workbook questions.  If a customer had a home, that would be typed on Schedule A.  Any other property would be typed on Schedule B.[227]

(9)     Generally, Schedule C was already pre-formatted with common property descriptions and Colorado exemption statutes.  Based on the customer's property listed in the workbook, Defendant's staff was trained to add things or to modify the pre-formatted Schedule C, based on information provided by the customers.[228]

(10)    To the extent there was a type of property that Defendant's staff was unsure of the proper exemption, the office maintained a sample file from which to refer, to type an exemption.[229]

(11)    As for Schedules D, E, and F, Defendant trained his staff to put certain debts in certain schedules, i.e., they were trained to type mortgage and automobile related debts on Schedule D; tax debts on Schedule E; and all other debts were typed on Schedule F (which was generally typed out according to the information in the customer's credit report and any additional information provided by a customer).[230]

(12)    For Schedule G, Defendant's staff was trained to check off the box that said "Check this box if debtor has no executory contracts or unexpired leases."  For Schedule H, Defendant's staff was trained to check off the box that said "Check this box if debtor has no codebtors."[231]

(13)    Schedule I was typed with information provided by the customer.  Because the customer was often confused by how to calculate monthly income, Defendant's staff did the calculation most of the time from the information provided by the customer.  Schedule J was typed based on the information provided by the customer.[232]

---

[227]    *See* Trial Transcript 6/5/12, p. 15, lines 18-25, p. 16, lines 1-11.

[228]    *See* Trial Transcript 6/5/12, p. 16, lines 12-22.

[229]    *See* Trial Transcript 6/5/12, p. 16, lines 24-25, p. 17, lines 1-3, 20-25, p. 18, lines 1-7.

[230]    *See* Trial Transcript 6/5/12, p. 18, lines 23-25, p. 19, lines 1-25, p. 20, lines 1-5.

[231]    *See* Trial Transcript 6/5/12, p. 20, lines 13-25.

[232]    *See* Trial Transcript 6/5/12, p. 20, lines 6-10, p. 21, lines 1-21.

(14)    The Means Test Form was usually prepared by Defendant's staff by estimating the customer's current monthly income based on whatever paystubs were provided. Defendant's staff would do the calculation most of the time.[233]

### b.    Debtors' Testimony - A Summary

Ms. Reza-Ortega's testimony was corroborated by various Debtors' testimony throughout the trial. Debtors with cases that were filed from 2007 to 2011 testified at the trial conducted on June 4-6, 2012, and their cases either pre-dated or overlapped Ms. Rocio Reza-Ortega's employment. The practice of pre-filling out forms was confirmed by the various Debtors/witnesses. Eleven Debtors/witnesses testified regarding their experience with Defendant.[234] While there was some variation in their experience, they testified consistently that Defendant's staff directed the preparation of the official bankruptcy forms. They testified consistently that they provided little information to Defendant (most testifying that they brought only a form of identification and answered questions posed by Defendant or his staff). With respect to the workbook, some indicated that they filled in portions of the workbook, others testified that they did not.

Not one witness testified that they brought Defendant a draft of the official forms for Defendant to type. There was *no* evidence, either, that this occurred in *any* of the 241 bankruptcy cases prepared by Defendant. Rather, the uncontroverted evidence reveals that Defendant completed the official forms by procuring information from (1) the customer's answers to information sought by the workbook, (2) the customer's answers to questions posed by Defendant and his staff, (3) documents provided by the customer, and (4) information procured by Defendant independently (such as a credit report). Then, either Defendant or a member of his trained staff determined how the official bankruptcy forms should be completed, on what particular schedule to type the customer's property, and on what particular schedule to type the customer's debts and, in so doing, characterized the nature of the customer's property interests and debts.

---

[233]    *See* Trial Transcript 6/5/12, p. 23, lines 1-25, p. 24, lines 1-19.

[234]    In order, Roberta Moland (who had power of attorney in her mother Mary Jan Swanson's bankruptcy) regarding Case No. 11-20293 (United States Trustee Assigned Debtor #224 on Exhibit A attached hereto); Pancho Frank Correa, debtor in Case No. 10-24470 (United States Trustee Assigned Debtor #27 on Exhibit A attached hereto); Guy Maestas, debtor in Case No. 10-37041 (United States Trustee Assigned Debtor #88 on Exhibit A attached hereto); Claudia Aponte, debtor in Case No. 11-20993 (United States Trustee Assigned Debtor #234 on Exhibit A attached hereto); Robert Frankel, debtor in Case No. 10-29559 (United States Trustee Assigned Debtor #41 on Exhibit A attached hereto); Alvaro Mendoza-Rojo; debtor in Case No. 10-41209 (United States Trustee Assigned Debtor #115 on Exhibit A attached hereto); Gloria Chavez, debtor in Case No. 07-11746 (United States Trustee Assigned Debtor #3 on Exhibit A attached hereto); Jesus Diaz; debtor in Case No. 10-29967 (United States Trustee Assigned Debtor #44 on Exhibit A attached hereto); Yvonne Mota, debtor in Case No. 11-12806 (United States Trustee Assigned United States Trustee Assigned Debtor #144 on Exhibit A attached hereto); Deana Sotelo, debtor in Case No. 11-12053 (United States Trustee Assigned Debtor #135 on Exhibit A attached hereto); and Francisco Sanchez, debtor in Case No. 11-19541 (United States Trustee Assigned Debtor #222 on Exhibit A attached hereto).

Further, with the exception of Deana Sotelo, *all* of the Debtors/witnesses testified consistently that before they came to Defendant, they were unaware of the differences between the different Chapters in bankruptcy. They filed bankruptcy under Chapter 7 because Defendant either directed, advised or informed the Debtors that Chapter 7 bankruptcy was appropriate to their circumstance, or he simply prepared the bankruptcy as a Chapter 7 bankruptcy without any discussion.

Regarding the use of pre-filled forms, there are two highlights where customer testimony was consistently the same:

(1)     Despite paying Defendant more than $200.00, *not one Debtor* stated that they directed Defendant to put $200.00 in response SOFA Question No. 9.

(2)     *Not one Debtor* understood the Schedule C exemptions or knew where the statutory sections came from or what they meant. The evidence showed that many Debtors merely signed the paperwork prepared by the Defendant and the Defendant gave absolutely no explanation why the exemptions were chosen.

c.     *A Survey of the Specific Testimony of Eleven Debtors*

As noted above, the Court heard the testimony of eleven debtors with respect to the pre-filled in forms. The Court finds that each Debtor's testimony was credible and corroborated with other testimony and evidence. The Defendant, on the other hand, offered very little to counter the evidence presented and he, himself, did not appear credible nor did he appear to directly contradict the testimony of the eleven Debtors/witnesses. The testimony considered by the Court includes the following:

(1)     Gloria Chavez-Robles testified that she does not speak or read English. She testified that no documents were provided to her in Spanish or translated for her. Ms. Chavez testified that she paid Defendant $1,720 and that she did not fill out anything for her bankruptcy including SOFA Question No. 9 which had an "X" in the "None" box. In fact, Ms. Chavez testified that she never saw any of the forms.[235]

(2)     Alvaro Mendoza-Rojo testified that although he understands spoken English, his proficiency in reading English is not as good. He testified that he paid Defendant $1,200.00 and that Defendant asked questions and filled out the paperwork in about thirty minutes.[236]

---

[235]     *See* Trial Transcript 6/5/12, p. 119, lines 7-17, p. 120, lines 1-3, 20-25, p. 121, lines 1-16.

[236]     *See* Trial Transcript 6/5/12, p. 106, lines 15-18, p. 109, lines 6-17.

(3)      Jesus Manuel Diaz-Hernandez testified that he does not speak or read English and that none of the forms were provided to him in Spanish or translated for him.  Mr. Diaz testified that he paid Defendant a total of $700.00.  Mr. Diaz testified that he did not direct Defendant to put $200.00 in response to SOFA Question No. 9.[237]

(4)      Robert Frankel testified that he did not fill out the workbook because it was too complicated.  He paid Defendant at least $500.00 and he did not direct Defendant to put $200.00 in response to SOFA Question No. 9.  He also testified that he did not put any of the Xs on the rest of the questions on the SOFA. [238]

(5)      Roberta Moland, who had power of attorney for her mother, Mary Jane Swanson, testified that she and her mother were merely shown where to sign the Petition, Schedules and SOFA and that she did not understand them.  Ms. Moland paid Defendant $500.00 for the bankruptcy and she did not direct Defendant to put $200.00 in response to SOFA Question No. 9.[239]

(6)      Poncho Frank Correa testified that he paid Defendant $600.00 and he never received or filled out a workbook.  He testified that he did not direct Defendant to fill in $200.00 in response to SOFA Question No. 9.[240]

(7)      Guy Maestas testified that he paid Defendant $700.00 and that he did not direct Defendant to put only $200.00 in response to SOFA Question No. 9.  He also did not provide the calculations for his monthly income.[241]

(8)      Claudia Aponte testified that Ms. Reza-Ortega assisted her with the preparation of her bankruptcy.  Ms. Aponte testified that she did not receive a workbook like the one that was shown to her during the trial.  She testified that she did not calculate her income for the Means Test form.  Ms. Aponte testified that she paid Defendant $200.00 and that she did not direct Defendant to put $200.00 in response to SOFA Question No. 9.[242]

---

[237]    *See* Trial Transcript 6/5/12, p. 123, lines 9-23, p. 125, lines 13-23.

[238]    *See* Trial Transcript 6/5/12, p. 74, lines 6-21, p. 75, lines 2-6, p. 78, lines 1-12.

[239]    *See* Trial Transcript 6/4/12, p. 129, lines 5-20; p. 128, lines 13-25; p. 130, lines 1-5; p. 131, lines 10-15.

[240]    *See* Trial Transcript 6/4/12, p. 156, lines 7-13, 22-25, p. 157, lines 1-2, p. 158, lines 1-9.

[241]    *See* Trial Transcript 6/4/12, p. 169, lines 1-14; p. 170, lines 1-20, 16-21; p. 173, lines 6-16.

[242]    *See* Trial Transcript 6/5/12, p. 53, lines 19-25; p. 57, lines 6-25; p. 58, lines 14-25; p. 59, lines 1-4, p. 66, lines 21-25.

(9)     Yvonne Mota testified that she paid Defendant a total of $700.00. Ms. Mota did not direct Defendant to fill in $200.00 in response to SOFA Question No. 9. She testified that she did not receive a workbook and that she only received a few sheets from Defendant.[243]

(10)    Deana Sotelo testified that she never received or filled out a workbook or filled out any paperwork. She paid Defendant $600.00 and she did not direct Defendant to put $200.00 in response to SOFA Question No. 9.[244]

(11)    Francisco Sanchez testified that he paid Defendant $900.00 for him and his wife to file bankruptcy. He never filled out a workbook. Mr. Sanchez did not provide income calculations for the Means Test. Neither Mr. Sanchez nor his wife directed Defendant to put $200.00 in response to SOFA Question No. 9.[245]

> d.     *Defendant's Failure to Refute the Evidence of Pre-Filled Forms*

With respect to the eleven Debtors/witnesses and their corroborating evidence, Defendant did not assert or present any substantive challenge. He offered no rebuttal witnesses or evidence. In fact, during closing argument, Defendant conceded that he routinely managed or performed the specified problematic general practices. He claimed that his business practice did entail giving all customers the workbook, stating specifically that, "[f]ollowing explaining each customer the fees that were involved, they will receive a workbook."[246]

This was similar to his acknowledgment during the closing argument in the *In re Avitia* hearing (in a separate section 110 action brought by the United States Trustee), that: "[m]y workbook that I designed, yes, I did. I designed and I sell this workbook to my customers so they can provide the information that I need in order to complete a bankruptcy. Without the information given by them I couldn't complete the bankruptcy paperwork."[247]

> 5.     Category 2: Specific Instances of Legal Advice - Schedule C - Exemptions

Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers by consistently deciding what his customers should claim in the way of exemptions, and he provided legal advice by explaining Schedule C exemptions in his

---

[243]     *See* Trial Transcript 6/5/12, p. 133, lines 16-17, p. 135, lines 4-21, p. 137, lines 14-20.

[244]     *See* Trial Transcript 6/6/12, p. 5, lines 15-21; p. 7, lines 1-5; p. 9, lines 16-27.

[245]     *See* Trial Transcript 6/6/12, p. 34, lines 1-6; p. 35, lines 10-14, p. 39, lines 1-12, p. 40, lines 6-24.

[246]     *See* Trial Transcript 6/6/12, p. 76, lines 18-23.

[247]     *See* Trial Exhibit 114b, p. 52.

workbook.  Since the workbook provided his customers with legal advice about Schedule C exemptions and there are 241 cases that are the subject of the United States Trustee's Complaint, there are 241 additional violations of Defendant providing legal advice to his customers in violation of section 110(e).

The evidence shows that the workbook contains a legal explanation of the Schedule C – exemptions and lists the statutory sections that many customers did not understand.  *Not one Debtor* testified that they understood the Schedule C exemptions listed in the workbook or knew where the statutory sections for exemptions came from.  All the Debtors/witnesses testified that they did not know the meaning of the specific statutory exemptions typed in Schedule C for their particular bankruptcy.

        *a.*      *Testimony of Rocio Reza-Ortega with respect to Schedule C - Exemptions*

The workbook, in addition to seeking to procure various items of financial information from potential debtors, contained a summary of possible available Colorado property exemptions, with directions on how the Colorado exemption would purportedly apply to property interests.[248]

Ms. Reza-Ortega testified that Schedule C would be prepared from the exemption chosen by the customer from the workbook; further, that if the customer did not understand what exemptions were, Defendant's staff would inform the customer what statutes would permit the customer to retain specific property through the bankruptcy process.[249]

        *b.*      *Debtors' Testimony with respect to Schedule C - Exemptions*

Robert Frankel testified that he did not direct Defendant to fill out the numbers and he testified that he did not understand the numbers or the exemptions.  He did not know what the numbers meant and he did not know where the citations came from.[250]

Roberta Moland, who had power of attorney for her mother, Mary Jane Swanson, testified that she did not fill out the Schedule C exemptions and she did not understand them.[251]

---

[248]    *See* Trial Transcript 6/5/12, p. 9, lines 5-25; p. 10, lines 1-22.

[249]    *See* Trial Transcript 6/5/12, p. 9, lines 5-25; p. 10, lines 1-22.

[250]    *See* Trial Transcript 6/5/12, p. 83, lines 10-24.

[251]    *See* Trial Transcript 6/4/12, p. 130, lines 1-12.

Poncho Frank Correa testified that he did not know where the numbers for Schedule C came from and he did know who filled in the citations and numbers.[252]

Guy Maestas testified that he did not understand the numbers on Schedule C and he did not know what the numbers meant.[253]

Claudia Aponte testified that she did not know what the Schedule C exemptions were and that she did not check off the box on this schedule.[254]

Yvonne Mota testified that she had no knowledge of the Schedule C exemptions and that she did not fill it out on her Schedule C.  She also did not know where the legal citations came from.[255]

Deana Sotelo testified that she did not provide the information for Schedule C exemptions and she did not understand them.  She also did not know who filled in the citations and numbers.[256]

Francisco Sanchez testified that he did not know what the numbers meant and that he did not provide the information for Schedule C or check off the box on Schedule C.[257]

c.      *Defendant's Admissions Regarding Schedule C*

Defendant admits that his workbook provides legal advice.  Defendant stated during closing arguments that with respect to the exemption list and advice provided in the workbook, "[t]he Colorado exemption list that appears in the workbook is only a tool that customers or debtors have to make the determination of what exemptions they're going to be using to be listed in the bankruptcy.  It has the list of every asset that they have, an amount of the maximum that they can claim, and it has the Colorado code."[258]

---

[252]      *See* Trial Transcript 6/4/12, p. 158, lines 14-25, p. 159, lines 1-2.

[253]      *See* Trial Transcript 6/4/12, p. 171, lines 19-25; p. 172, lines 1-15.

[254]      *See* Trial Transcript 6/5/12, p. 55, lines 23-25; p. 56, lines 1-24.

[255]      *See* Trial Transcript 6/5/12, p. 137, lines 21-25, p. 138, lines 1-8.

[256]      *See* Trial Transcript 6/6/12, p. 10, lines 11-25; p. 11 line 1.

[257]      *See* Trial Transcript 6/6/12, p. 37, lines 4-25; p. 38, lines 1-7.

[258]      *See* Trial Transcript 6/6/12, p. 79, lines 5-22.

6.    Category 3:  Specific Instances of Legal Advice - Applications for Waiver of Chapter 7 Filing Fees

Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers when he prepared applications for waiver of the Chapter 7 filing fees either without consent from his customers or without their knowledge and understanding of the document.  Defendant prepared at least 218 applications for waiver of the Chapter 7 filing fee either without consent from his customers or without their knowledge and understanding of the document.

a.    *Testimony of Nicole Zollars About Applications for Waiver of Filing Fees*

Paralegal Specialist for the U.S. Trustee, Nicole Zollars, read into the record a portion of the transcript from the Marco Briones-Coroy trial about how Mr. Briones-Coroy did not have knowledge or an understanding about the application for the waiver of the Chapter 7 filing fee.[259] Ms. Zollars testified that she reviewed all of the applications for fee waivers and tallied her results on a spreadsheet at Exhibit 82.[260]  Defendant filed 218 applications for fee waivers on behalf of his customers.[261]

Ms. Zollars' testified about how she analyzed all of Defendant's original customer files and she discovered that only nine cases had a form created by Defendant called a "debtor's declaration to file bankruptcy with a fee waiver."  Thus, practically all of the Defendant's customers did not consent to the application for fee waiver being filed in their case.[262]  Even though nine cases contained Defendant's document called "debtor's declaration to file bankruptcy with a fee waiver," Debtors' testimony, as well as testimony from Ms. Zollars and Ms. Reza-Ortega, established a pattern and practice that Defendant regularly prepared the applications for fee waivers for his customers either without their knowledge or consent.

---

[259]    *See* Trial Transcript 6/4/12, p. 30, lines 21-25, p. 31, lines 1-15, p. 32, lines 1-16.  *See also* Trial Exhibit 11, p. 10, 17.

[260]    *See* Trial Transcript 6/4/12, p. 25, lines 1-16, p. 26, lines 16-25, p. 27, lines 1-9.  *See also* Trial Exhibit 82.

[261]    *See* Trial Transcript 6/4/12, p. 63, lines 11-18.  *See also* Trial Exhibit 82 and Trial Exhibit 121 p. 21 of 32.

[262]    *See* Trial Transcript 6/4/12, p. 28, lines 16-25, p. 29, lines 1-5, 11-21.  *See also* Trial Exhibit 64g, p. 7-12.

b.    *Testimony of Rocio Reza-Ortega About Applications for Waiver of Filing Fees*

Rocio Reza-Ortega testified that Defendant's employees and agents would explain the application for waiver of filing fee and they would fill it out for customers.[263] Ms. Reza-Ortega testified that it was the practice of Defendant to advise customers that, "if they did not have the money for the filing fee, we could fill out the waiver for them."[264]

c.    *Debtors' Testimony About Applications for Waiver of Filing Fees*

No witness testified and there was no other evidence in any instance that a customer brought a draft of Official Form B3B (Application for Waiver of the Chapter 7 Filing Fee) for Defendant to type.  Rather, the official form was typed by Defendant and/or his staff purportedly based on information provided by the customer.[265]  Consistent with Ms. Reza-Ortega's testimony, various Debtors/witnesses testified that they were generally unfamiliar with the application for waiver filed in their case.

Jesus Manuel Diaz-Hernandez testified that he had no knowledge that the application for waiver of Chapter 7 filing fee was filed in his case.[266]

Robert Frankel testified that he had no knowledge of the application for waiver of Chapter 7 filing fee and he did not know that it was filed in his case.[267]

Roberta Moland, who had power of attorney for her mother, Mary Jane Swanson, testified that she did not understand the application for waiver of Chapter 7 filing fee and she did not know that it was filed in her mother's case.[268]

Poncho Frank Correa testified that although he was aware of the application for waiver of filing fee, he didn't know that Defendant had really done it for him and filed it.[269]

---

[263]    *See* Trial Transcript 6/5/12, p. 25, lines 16-19.

[264]    *See* Trial Transcript 6/5/12, p. 25, lines 18-19.

[265]    Trial Transcript, 6/5/12, p. 25.

[266]    *See* Trial Transcript 6/5/12, p. 127, lines 3-6.  *See also* Trial Witness Exhibit 7, p. 62-64.

[267]    *See* Trial Transcript 6/5/12, p. 84, lines 12-16.

[268]    *See* Trial Transcript 6/4/12, p. 132, lines 4-17.  *See also* Trial Witness Exhibit 24 p. 67-69.

[269]    *See* Trial Transcript 6/4/12, p. 159, lines 4-25, p. 160 lines 1-7.  See also Witness Exhibit 30, p. 67-70.

Yvonne Mota testified that she had no knowledge that the application for waiver of filing fee was filed in her case and she did not even know what it was.[270]

Deana Sotelo testified that Defendant advised her about the waiver.  Ms. Sotelo did not provide the figures to Defendant and he filled it out for her.  The fee that she paid Defendant did not accurately correspond to the receipt given to her by Defendant.[271]

7.    Category 4: Specific Instances of Legal Advice - Defendant's Legal Advice Regarding United States Trustee Questionnaires

Defendant violated section 110(e) after the United States Trustee analyzed how Defendant's customers answered questions about legal advice in the United States Trustee's Bankruptcy Petition Preparer Questionnaires.  Defendant committed this violation 134 times.

a.    *Testimony of Nicole Zollars About United States Trustee Questionnaires*

United States Trustee Paralegal Specialist, Nicole Zollars, testified that she assisted in sending a questionnaire to all Debtors without an attorney who used a bankruptcy petition preparer.  The questionnaire and a cover letter were provided in English and in Spanish to Debtors identified in the United States Trustee's Complaint.[272]  The questionnaires were signed under penalty of perjury by the Debtors.[273]  Ms. Zollars testified about the spreadsheet she created that summarized the answers to questions in the questionnaires.[274]

Ms. Zollars testified that Question 7 of the United States Trustee's questionnaire listed questions about whether the Debtor received legal advice.  The questions were based on section 110(e)(2)(B) about legal advice.[275]  Ms. Zollars testified that she reviewed all of the Debtors' answers to Question 7 about legal advice.  Ms. Zollars transferred the Debtors' answers to Question 7 about legal advice to a spreadsheet listing all 241 cases that are the subject of the United States Trustee's Complaint.  The spreadsheet tracked answers to all questions about legal advice and the answers are tabulated under columns marked 7A-K.[276]

---

[270]    *See* Trial Transcript 6/5/12, p. 138, lines 15-21.  *See also* Trial Witness Exhibit 13, p. 68-70.

[271]    *See* Trial Transcript 6/6/12, p. 11, line 25; p. 12, lines 1-11.

[272]    *See* Trial Transcript 6/4/12, p. 38, lines 12-25.  *See also* Trial Exhibit 68.

[273]    *See* Trial Exhibit 68b (questionnaires received from Debtors).

[274]    *See* Trial Transcript 6/4/12, p. 39, lines 5-10.  *See also* Trial Exhibit 68a.

[275]    *See* Trial Transcript 6/4/12, p. 39, lines 19-25.  *See also* Trial Exhibit 68.

[276]    *See* Trial Transcript 6/4/12, p. 40, lines 1-19, p. 41, lines 9-25.  *See also* Trial Exhibit 68a.

Based on the questions about legal advice in the United States Trustee's questionnaire, Ms. Zollars testified that her spreadsheet shows instances where Debtors received legal advice.[277] According to the evidence, Defendant's customers answered questions about legal advice under penalty of perjury in the affirmative in at least 27 cases.[278] The legal advice given these particular Debtors in these cases included one or more of the following:[279]

      a.      whether or not to file a bankruptcy petition;[280]

      b.      the difference between bankruptcy cases under chapter 7, 11, 12 or 13;[281]

      c.      whether your debts will be discharged or eliminated;[282]

      d.      whether you should select state or federal property exemptions;[283]

      e.      whether you will be able to retain your home, car, or other property after filing bankruptcy;[284]

      f.      any tax consequences from filing bankruptcy;[285]

      g.      whether you should repay any of your debts to a creditor before after filing bankruptcy;[286]

      h.      whether you should enter into an agreement with a creditor to reaffirm a debt;[287]

      i.      how to report property as either real or personal property;[288]

      j.      how to report debts as either priority, secured, or unsecured debts;[289] and

---

[277]    *See* Trial Transcript 6/4/12, p. 42, lines 18-24. *See also* Trial Exhibit 68a.

[278]    *See* Trial Transcript 6/4/12, p. 45, lines 13-15. *See also* Trial Exhibit 68a.

[279]    The listing below at items a-k constituted the questions asked by the United States Trustee in his survey questionnaire to Debtors who used the Defendant's services. Where applicable, the Court will note the bankruptcy provision relevant to the question. *See* Trial Exhibit 68a, p. 25-33.

[280]    11 U.S.C. § 110(e)(2)(B)(i)(I).

[281]    11 U.S.C. § 110(e)(2)(B)(i)(II).

[282]    11 U.S.C. § 110(e)(2)(B)(ii).

[283]    11 U.S.C. § 110(e)(2)(vii).

[284]    11 U.S.C. § 110(e)(2)(B)(iii).

[285]    11 U.S.C. § 110(e)(2)(B)(iv)(I).

[286]    11 U.S.C. § 110(e)(2)(B)(iv)(II).

[287]    11 U.S.C. § 110(e)(2)(B)(v).

[288]    11 U.S.C. § 110(e)(2)(B)(vi).

[289]    11 U.S.C. § 110(e)(2)(vi).

k.        any bankruptcy procedures and rights you have as a debtor in bankruptcy.[290]

Since there were multiple questions about legal advice, according to Ms. Zollars' spreadsheet the total affirmative answers about receipt of legal advice totaled 134 instances in these 27 cases.[291]  Ms. Zollars' spreadsheet for questions 7A through 7K shows that if one adds the number of "yes" responses to questions 7A through 7K for legal advice, that there were a total of 134 "yes" responses in these 27 cases.[292]  Each "yes" response constitutes a separate violation under section 110(e).  Debtors' testimony, summarized below, corroborated Ms. Zollars' results.

> b.        *Testimony of Debtors About United States Trustee Questionnaires*

Roberta Moland testified how Defendant advised her mother to file Chapter 7 bankruptcy.[293]

Guy Maestas testified that he just went along with Defendant's choice of filing bankruptcy under Chapter 7.[294]

Claudia Aponte testified that she did not know the differences between the bankruptcy chapters.[295]

Yvonne Mota testified that Defendant advised her about the difference between the bankruptcy chapters and Defendant explained that her debts could be discharged.[296]

Deana Sotelo testified that Defendant advised her about the difference between the bankruptcy chapters.[297]

---

[290]        11 U.S.C. § 110(e)(2)(vii).

[291]        *See* Trial Exhibit 68a, p. 25-33.

[292]        *See* Trial Exhibit 68a, p. 25-33.

[293]        *See* Trial Transcript 6/4/12, p. 33, lines 13-15.

[294]        *See* Trial Transcript 6/4/12, p. 174, lines 9-15.

[295]        *See* Trial Transcript 6/5/12, p. 54, lines 16-25, p. 55, lines 1-12.

[296]        *See* Trial Transcript 6/5/12, p. 140, lines 4-9.

[297]        *See* Trial Transcript 6/6/12, p. 13, lines 13-24.

Francisco Sanchez testified that he did not know the difference between chapters and that Defendant directed him to file Chapter 7.[298]

        8.      <u>Category 5: Specific Instances of Legal Advice - Defendant's Legal Advice Regarding Chapter 7 Trustee Information Sheets and Declaration Under Penalty of Perjury for Debtors Without an Attorney Forms</u>

Defendant violated section 110(e) by providing legal advice and making legal decisions for his customers when he or his employees filled out Chapter 7 Trustee information sheets and forms for debtors without an attorney that are signed by debtors under penalty of perjury. These forms are used routinely by trustees to gather financial information from debtors to assist and expedite the trustee's examination of debtors' finances, assets, debts, transactions, and the completeness and accuracy of debtors' filed documents. According to the evidence, this was done in at least six cases. Chapter 7 Trustee information sheets are documents that the debtors sign under penalty of perjury. According to the evidence at trial, Defendant filled out the Chapter 7 Trustee information sheets in at least six cases.

        a.    *Testimony of Rocio Reza-Ortega About Trustee Information Sheets and Declarations Under Penalty of Perjury Forms for Debtors Without an Attorney*

Rocio Reza-Ortega testified that she and Defendant's employees would sometimes fill out the Trustee Information Sheets and declarations under penalty of perjury forms for debtors without an attorney.[299] Ms. Reza-Ortega's testimony revealed that in Exhibit 70 she filled out at least one Trustee Information Sheet.[300] Ms. Reza-Ortega also testified that at least three Trustee Information Sheets or forms for debtors without an attorney were filled out with Marta Herrera's handwriting.[301] Marta Herrera is an employee of Defendant.[302]

---

[298]    *See* Trial Transcript 6/6/12, p. 36, lines 6-9.

[299]    *See* Trial Transcript 6/5/12, p. 27, lines 23-25, p. 28, lines 12-15.  *See also* Trial Exhibit 70, p. 34.

[300]    *See* Trial Transcript 6/5/12, p. 30, lines 3-7.  *See also* Trial Exhibit 70, p. 44.

[301]    *See* Trial Transcript 6/5/12, p. 28, lines 12-23, p. 29, lines 2-25.  *See also* Trial Exhibit 70, p. 34, 38, 41.

[302]    *See* Joint Pretrial Statement ¶¶ 17, 19.

>    b.    *Debtors' Testimony About Trustee Information Sheets and*
>          *Declaration Under Penalty of Perjury Form for Debtors without*
>          *an Attorney*

Ms. Mota testified that Defendant told her to sign a blank Trustee Information Sheet and that he would fill it out for her. Indeed, her testimony was that the sheet was signed by her, but the handwriting in the form wasn't hers.[303]

Finally, Mr. Sanchez testified that there were two questionnaires, one that he had Defendant's employee assist him in filling out, which had incorrect fees about what was paid, and then another one that was filled out later and sent to the United States Trustee's office.[304]

>    9.    <u>Debtors' Testimony About Additional Legal Advice They Received From
>          Defendant Showing Defendant's Pattern and Practice of Providing Legal
>          Advice</u>

Ten Debtors testified at trial about additional legal advice they received from Defendant. Additional evidence shows that Defendant regularly provides his customers with legal advice.

Gloria Chavez-Robles testified that she paid Defendant $1,720 and of that $1,720, she paid a $520 fee for advice from Defendant on how he could help her save her home. Ms. Chavez-Robles testified that she wanted to keep her house but that Defendant told them that she could not keep it because the trustee would want to sell the house to pay their accounts.[305]

Alvaro Mendoza-Rojo testified that he paid Defendant a total of $1,200.00 and of that $1,200.00 Mr. Mendoza-Rojo paid $500.00 for advice from Defendant on how Mr. Mendoza-Rojo could stay in his house for another three months. Mr. Mendoza-Rojo followed Defendant's advice, but lost his house two days later and lamented on how he would never see that $500.00 back.[306]

Robert Frankel testified that he thought Defendant was an attorney because of the nice suit he wore. Mr. Frankel testified that he paid Defendant approximately $700.00 to do the bankruptcy and that his house was in jeopardy. He testified that Defendant gave him advice about not including his house on Schedule A. Later an amendment to Schedule A had to be filed

---

[303]        *See* Trial Transcript 6/5/12, p. 138, lines 22-25, p. 139, lines 1-17. *See also* Trial Witness Exhibit 13, p. 72-75.

[304]        *See* Trial Transcript 6/5/12, p. 44, lines 10-25, p. 45, lines 1-25; p. 46, lines 1-25, p. 47, lines 1-11. *See also* Trial Witness Exhibit 23, p. 85-92.

[305]        *See* Trial Transcript 6/5/12, p. 120, lines 1-19.

[306]        *See* Trial Transcript 6/5/12, p. 110, lines 13-20; p. 111, lines 12-25; p. 112, lines1-2.

by Mr. Frankel including his house.  Mr. Frankel also testified that his handwriting was not the handwriting on the bankruptcy typing agreement.[307]

Roberta Moland, who had power of attorney for her mother, Mary Jane Swanson, testified that she did not want her mother to lose her home.  She testified about how she felt overwhelmed in Defendant's office because it was chaotic and everyone spoke Spanish.  She also testified how Defendant advised her mother to file Chapter 7 bankruptcy and advised her to change her workbook answers and make changes to certain numbers because he didn't like her answers.[308]

Poncho Frank Correa testified that Defendant advised him how to put his new truck on the schedules.  Mr. Correa also testified that he knew something was not right regarding his experience with Defendant in 2010 and that this caused Mr. Correa to have a heart attack a week after the bankruptcy filing because he felt like he had committed a crime.[309]

Guy Maestas testified that he went to Defendant because he wanted to stop a garnishment and that Defendant advised him on how he could stop the garnishment.  Mr. Maestas testified that he just went along with Defendant's choice of filing bankruptcy under Chapter 7 and Defendant figured out the numbers for him.  Mr. Maestas told Defendant that he was afraid that things would be missing in the bankruptcy.  In response, he testified that Defendant told him "don't worry I can get it through your credit report."[310]

Claudia Aponte testified that she did not know the differences between the bankruptcy chapters and that Defendant told her that she would be filing Chapter 7.  Defendant also advised her about how bankruptcy could take care of a lawsuit that a creditor brought against her.  She testified that she did what he told her to do and that she did none of the calculations on her wages.[311]

---

[307]    *See* Trial Transcript 6/5/12, p. 73, lines 4-7; p. 79, lines 14-23; p. 80, lines 22-25; p. 81, lines 18-25.

[308]    *See* Trial Transcript 6/4/12, p. 123, lines 23-24; p. 128, lines 13-25; p. 133, lines 13-21; p. 150, lines 1-7, 15-21.

[309]    *See* Trial Transcript 6/4/12, p. 160, lines 9-18, 23-25; p. 161, lines 1-24.

[310]    *See* Trial Transcript 6/4/12, p. 167, lines 17-24; p. 168, lines 1-3, 16-21; p. 174, lines 3-16; p. 174, lines 9-15.

[311]    *See* Trial Transcript 6/5/12, p. 54, lines 12-19; p. 55, lines 13-22; p. 57, lines 6-25; p. 58, lines 1-5.

Yvonne Mota testified that Defendant advised her about the difference between the bankruptcy chapters and he explained that her debts could be discharged.  She also testified that Joey said that they would fill out the declaration for filers without an attorney for her.[312]

Deana Sotelo testified that Defendant advised her about her garnishment and explained the difference between the bankruptcy chapters.  Defendant filled out the bankruptcy petition for her and came up with the income calculation.[313]

Francisco Sanchez testified that he did not know the difference between chapters and that Defendant directed him to file Chapter 7.  Defendant also came up with the income calculations.[314]

        10.    <u>Conclusions of Law With Respect to Defendant's Conduct and Violations Under 11 U.S.C. § 110(e)</u>

        a.    *Legal Advice*

Defendant provided prohibited legal advice to unsophisticated customers all in violation of section 110(e).  Defendant is a clever and smooth businessman—albeit not necessarily a sophisticated and skilled businessman—and he has figured out a way to make the bankruptcy system work for him, at the expense of the Debtors he purports to help and at the expense of the bankruptcy system itself.

Section 110(e)(2)(A) prohibits bankruptcy petition preparers from providing any legal advice.  More specifically:

> (2)(A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).

"Congress' clear intent was that § 110 authorize bankruptcy petition preparers to provide only scrivener services, limited to clerical services such as copying and typing."[315]  "A petition preparer may not assist a debtor in determining what information should be included on such documents or offer any information or advice as to what the law is or how it applies to the

---

[312]    *See* Trial Transcript 6/5/12, p. 139, lines 4-17; p. 140, lines 4-17.

[313]    *See* Trial Transcript 6/6/12, p. 5, lines 15-21; p. 7, lines 1-5; p. 10, lines 5-10; p. 14 lines 6-11.

[314]    *See* Trial Transcript 6/6/12, p. 38, lines 17-25; p. 36, lines 6-9.

[315]    *In re Gomez*, 259 B.R. 379, 385 (Bankr.D.Colo.2001).

debtor's circumstances."[316] "[A] petition preparer is *limited* by § 110 to copying and typing bankruptcy documents."[317]

The list of "legal advice" set forth in 11 U.S.C. § 110(e)(2)(B) is neither exclusive nor exhaustive, *i.e.,* it is a non-exclusive list of examples describing what may constitute legal advice.[318] As developed by case law before and after 2005, inherent in the bar against providing legal advice, a bankruptcy petition preparer is prohibited from many acts, including, but not necessarily limited to:

(1)     Soliciting information from debtors (via interviews, questionnaires, internet queries, etc.) to prepare bankruptcy documents. Such conduct constitutes an unauthorized practice of law because "transferring information from the questionnaire to the official bankruptcy forms invariably will require some legal judgment."[319]

(2)     Choosing exemptions for debtors.[320]

(3)     Providing debtors with a comprehensive list of available exemptions from which to choose.[321]

---

[316]     *Gomez,* 259 B.R. at 386.

[317]     *Id.* (emphasis added).

[318]     *In re Bernales,* 345 B.R. 206, 214–15 (Bankr.C.D.Cal. 2006).

[319]     *In re Moffett,* 263 B.R. 805, 815 (Bankr. W.D. Ky. 2001). *See, also, Gomez,* 259 B.R. 379, 385 (Bankr. D. Colo. 2001) (in providing and using a questionnaire filled out by debtor to prepare documents, the bankruptcy petition preparer, "greatly exceeded the authority of § 110"); *In re Bagley,* 433 B.R. 325, 333 (Bankr. D. Mont. 2010) ("Advising debtors of available exemptions, and soliciting information which is then translated into completed bankruptcy forms is the unauthorized practice of law, whether by website or otherwise"); *In re Bernales,* 345 B.R. 206, 225 (Bankr. C.D. Cal. 2006) ("the creation and use of the Questionnaire requires interpretation and understanding of the meaning of the questions in the Schedules and Statement of Financial Affairs"); *In re Kaitangian,* 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998) (finding that a bankruptcy petition preparer violated section 110 by choosing exemptions, stating that "[p]lugging in solicited information from questionnaires and personal interviews to a prepackaged bankruptcy software program constitutes the unauthorized practice of law."); *In re Agyekum,* 225 B.R. 695, 702 (9th Cir. 1998) ("The 'InfoForm Questionnaire' functioned to solicit information to be used to complete bankruptcy schedules. Soliciting  information from a debtor which is then typed into schedules constitutes the unauthorized practice of law").

[320]     *See In re Evans*, 413 B.R. 315, 326 (Bankr.E.D. Va. 2009) (software program selects exemptions); *In re Moffett,* 263 B.R. 805, 814 (Bankr. W.D. Ky. 2001) ("[A]dvising clients about exemptions, or determining which exemptions apply to a client's property, is the unauthorized practice of law") (citing *Gomez,* 259 B.R. at 387 and *In re Lyvers,* 179 B.R. 837, 839–840 (Bankr. W.D. Ky. 1995)).

[321]     *See, e.g., In re Ellington*, 230 B.R. 426, 433 (Bankr. D. Mont. 1999) ("Monroe engaged in the unauthorized practice of law ... The record is clear that Monroe advised Ellingson and Erwins of available

(continued...)

64

(4)     Preparing and filling out the official bankruptcy forms to be filed by determining where property and debts are to be scheduled which is summarized and reformulated from information solicited from debtors.[322]

As previously stated by this Court in *In re Hennerman*, the scope of prohibited legal advice under section 110 (e)(2)(B)(vii), is *all inclusive* and prohibits bankruptcy petition preparers from:

> Advising debtors about forms, timelines, what may or may not occur in the case, whether debtors might be able to avoid liens under 11 U.S.C. § 522(f)(1), cramdown rights, redemption rights, structuring of Chapter 13 plans, or virtually *any other* substantive or procedural issue in a consumer bankruptcy.  Virtually any exercise of discretion about what to include or not include in the bankruptcy documents, will touch upon a bankruptcy 'procedure' or 'right'. . . ." This clause represents a catchall provision which leaves little room for a bankruptcy petition preparer to do anything beyond the typing and copying tasks discussed in *Gomez*, [259 B.R. 379, 81 (Bankr. D. Colo. 2001)] and a myriad of other published and unpublished opinions under pre-BAPCPA law.[323]

In *Hennerman* this Court stated that "[a]lthough a preparer could type these documents if the debtor herself had given the preparer drafts, the preparer cannot create de novo documents for filing.  If the preparer does so then the preparer is providing prohibited 'legal advice.'"[324]

---

[321](...continued)
exemptions, provided them with a comprehensive list of available exemptions ..."); *see also, McDow v. Mayton,* 379 B.R. 601, 607 (E.D. Va. 2007).

[322]     *See, e.g., In re Ellingson*, 230 B.R. 426, 433-34 (Bankr. D. Mont. 1999) ("Monroe engaged in the unauthorized practice of law . . . The record is clear that Monroe . . . summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms for Ellingson and Erwin on her computer. These tasks require the exercise of legal judgment"); *In re Herren,* 138 B.R. 989, 994–95 (Bankr. Wyo. 1992) (*citing In re Anderson,* 79 B.R. 482, 485 (Bankr.S.D.Cal. 1987); *O'Connell v. David,* 35 B.R. 141, 143 (Bankr. E.D. Pa. 1983) *aff'd* 740 F.2d 958 (3rd Cir.1984); *In re Bachmann,* 113 B.R. 769, 772–3 (Bankr. S.D. Fla. 1990)).

[323]     *In re Hennerman*, 351 B.R. 143, 151-52 (Bankr.D.Colo. 2006) (emphasis added).

[324]     *Id.  See also, In re Guttierez*, 248 B.R. 287 (Bankr. W.D. Tex. 2000) ("The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the 'transcription' of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service.  Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110"); *In re Dunkle,* 272 B.R. 450, 455 (Bankr. W.D. Pa. 2002) ("A petition preparer is only authorized to type information exactly as provided by potential debtors"); *In re Schneider,* 271 B.R. 761, 764–65 (Bankr.D.Vt. 2002) ("It is clear from § 110 that the "bankruptcy petition preparer" moves at his or her
(continued...)

Further, the giving of legal advice by a petition preparer operates as a particularly unfair and deceptive practice.  As stated by Judge Krieger in *In re Gomez*:

> [B]y using a patchwork of legal resources, reference to years of legal experience and a computer program, they [the bankruptcy petition preparers] embellish the illusion that prospective debtors receive the essential legal assistance necessary to obtain bankruptcy relief. This makes the disclosure .  .  . that [the bankruptcy petition preparer] is not an attorney and cannot provide legal advice particularly deceptive and misleading. The [bankruptcy petition preparers] simultaneously dispense advice which has potentially profound consequences while attempting to disclaim any responsibility for the advice given. .  . they provide fragmented and incomplete legal assistance, the inadequacies of which are not readily apparent to debtors such as Ms. Gomez. The practices of [the bankruptcy petition preparers] are not only unauthorized, they were, in this case, unfair and deceptive.[325]

Defendant violated section 110(e) in at least five categories, as follows:

(1)  Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers with the consistent use of pre-filled and pre-checked forms for his customers' bankruptcies.  Defendant committed this violation in all 241 cases.  Fed.R.Civ.P. 406 provides that evidence of a person's habit or an organizations routine practice may be admitted to prove that in a particular occasion the person or organization acted in accordance with the habit or routine practice.  In this case, the United States Trustee provided ample evidence, via Ms. Reza-Ortega, Ms. Zollers, the various testifying Debtors and Defendant's admissions, of his routine practices in preparing the official bankruptcy forms for Debtors.  The Court finds that sufficient evidence of Defendant's routine practice has been provided.  The evidence demonstrates that across the span of these cases, at a minimum, Defendant provided legal advice which ultimately led to preparing all Debtors' official bankruptcy forms from scratch.

(2)  Defendant violated section 110(e) when he provided legal advice and made legal decisions for his customers when he consistently decided what debtors should claim in the way of exemptions and provided a legal explanation of Schedule C

---

[324](...continued)

peril when performing any service beyond that of simply typing the information provided by a prospective debtor on approved bankruptcy forms").

[325]     *Gomez*, 259 B.R. at 88.

exemptions in his workbook.  Defendant committed this violation in all 241 cases.

(3)     Defendant violated section 110(e) when he provided legal advice and made legal
        decisions for his customers when he prepared applications for waiver of the
        Chapter 7 filing fees either without consent from his customers or without their
        knowledge and understanding of the document.  Defendant committed this
        violation in at least 218 cases.

(4)     Defendant violated section 110(e) after the United States Trustee analyzed how
        Defendant's customers answered questions about legal advice in the United States
        Trustee's Bankruptcy Petition Preparer Questionnaires.  Defendant committed
        this violation 134 times in at least 27 cases.

(5)     Defendant violated section 110(e) when he provided legal advice and made legal
        decisions for his customers when he or his employees filled out Chapter 7 Trustee
        information sheets that are signed by debtors under penalty of perjury.  Defendant
        committed this violation in at least seven cases.

The Court concludes that in each of the 241 cases, the Defendant has provided legal
advice to Debtors in violation of 11 U.S.C. § 110(e)(2)(A) and (B).  Violations of section 110(e)
may result in forfeiture and refunding of "all fees" Defendant charged and received from
customers.  11 U.S.C. § 110(h)(3), (5).[326]  The Court, as stated before however, will not fine him
as the claim under section 110(1) has been withdrawn.

_____

[326]        11 U.S.C. Section 110(h)(3) states, in part, as follows:

                (3)(A) The court shall disallow and order the immediate
                turnover to the bankruptcy trustee any fee referred to in
                paragraph (2)—
                        (i) found to be in excess of the value of any services
                        rendered by the bankruptcy petition preparer during
                        the 12-month period immediately preceding the date
                        of the filing of the petition; or
                        (ii) found to be in violation of any rule or guideline
                        promulgated or prescribed under paragraph (l).
                (B) All fees charged by a bankruptcy petition preparer may be
                forfeited in any case in which the bankruptcy petition preparer
                fails to comply with this subsection or subsection (b), (c), (d),
                (e), (f), or (g).
                                        . . .
                (5) A bankruptcy petition preparer shall be fined not more than
                $500 for each failure to comply with a court order to turn over
                funds within 30 days of service of such order.

E.    **Plaintiff's Fifth Claim for Relief - Injunctive Relief for a Willful Pattern of Conduct**

1.    Findings and Conclusions with Respect to Plaintiff's Requested Injunctive Relief

Plaintiff asserts that because Defendant has engaged in a clear and consistent pattern and practice of violating 11 U.S.C. § 110, this Court should permanently enjoin the Defendant from providing any bankruptcy petition preparer services as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant.[327]

Pursuant to section 110(j)(2)(A) and (B), a bankruptcy petition preparer may be enjoined from engaging in any conduct in violation of section 110 or from further acting as a bankruptcy petition preparer.

The Fifth Claim of the United States Trustee's Complaint (injunction for willful pattern of conduct) alleges that Defendant has engaged in a clear and consistent pattern and practice of violating 11 U.S.C. § 110.  Injunctive relief, as well as other damages and fines, is appropriate in this case and Defendant should be enjoined from practicing as a bankruptcy petition preparer because he "has engaged in conduct in violation of section 110" and he has "engaged in any other fraudulent, unfair, or deceptive conduct."[328]

In deciding whether permanent injunctive relief is appropriate, a court should consider: (1) whether there is a cognizable danger that the violation will be repeated: (2) prior conduct; (3) current conduct; and (4) whether reliable promises have been made to commit no further violations in the future.[329]

Pursuant to section 110(j), a bankruptcy petition preparer may be enjoined from engaging in any conduct in violation of section 110 or from further acting as a bankruptcy petition preparer.  Pursuant to section 110(j)(2)(A), the Court may enjoin the bankruptcy petition preparer, specifically, if the Court finds that:

i.    bankruptcy petition preparer has —

---

[327]    Importantly, it should be noted that Mr. Assaf advertises and offers other quasi legal or related services to the public.  Indeed, the evidence suggests Mr. Assaf has a flourishing quasi or extra-legal practice that includes providing assistance in divorce, debt collection, wills, restraining orders, and lawsuits.  *See* Trial Exhibits 61 and 62.

[328]    *See* 11 U.S.C. § 110(j).

[329]    *See Metzler v. IBP, Inc.,* 127 F.3d 959, 963–64 (10th Cir.1997).

(I)    engaged in conduct in violation of this
section or of any provision of this title;
(II)    misrepresented the preparer's experience or
education as a bankruptcy petition preparer; or
(III)    engaged in any other fraudulent, unfair, or
deceptive conduct; and
ii.    injunctive relief is appropriate to prevent the recurrence of
such conduct, the Court *may enjoin* the bankruptcy petition
preparer from engaging in such conduct.[330]

Pursuant to section 110(j)(2)(B), if specified statutory aggravating circumstances are
present, a court may also enjoin the preparer from being a bankruptcy petition preparer.
Relevant to the present dispute, if the Court finds that a bankruptcy petition preparer has
continually engaged in conduct proscribed by section 110(j)(2)(A), and "that an injunction
prohibiting such [specific] conduct would not be sufficient to prevent such person's interference
with the proper administration of [the Bankruptcy Code] . . .  the court may enjoin the person
from acting as a bankruptcy petition preparer." [331]

The Court finds that Defendant is such a person who should and must be  enjoined from
acting as a bankruptcy petition preparer.  Defendant's conduct violated  11 U.S.C. § 110, and he
engaged in numerous fraudulent, unfair and deceptive practices, satisfying 11 U.S.C. §§
110(j)(2)(A)(i)(I) and (i)(III).  With respect to 11 U.S.C. § 110(j)(2)(B), the facts reveal in
abundance that: (1) Defendant has continually engaged in this conduct; and (2) injunctive relief
prohibiting such conduct is necessary to prevent Defendant's interference with the proper
administration of the Bankruptcy Code. Defendant has and continues to disregard the mandates
and restrictions of section 110, notwithstanding the litany of fines, sanctions and injunction
orders which have previously issued against him.

Defendant's violations of 11 U.S.C. § 110 in multiple jurisdictions warrant a national
injunction.  The Court finds that Defendant should be enjoined from acting as a bankruptcy
petition preparer on a national basis.  For years, Defendant has engaged in repeated and
continuous violations of 11 U.S.C. § 110.  After previously being enjoined in the Central District
of California, he continued his violations, unabated, in this District.

Various judges of this Court have previously found that Defendant violated 11 U.S.C. §
110 and engaged in various fraudulent, unfair and deceptive conduct, satisfying 11 U.S.C. §
110(j).  Defendant has continually engaged in this conduct and injunctive relief prohibiting such
conduct is necessary to prevent Defendant's interference with the proper administration of the
Bankruptcy Code.  Defendant has and continues to disregard the mandates and restrictions of 11
U.S.C. § 110. Defendant was enjoined from being a bankruptcy petition preparer in California.

---

[330]    Emphasis added.

[331]    11 U.S.C. § 110(j)(2)(B).

The Supreme Court of Colorado also enjoined Defendant for unauthorized practice of law. None of this has had any apparent impact on Defendant in providing bankruptcy assistance to Debtors, nor has this been successful in regulating his conduct. In fact, as evidenced by Defendant's fraudulent procurement of certificates evidencing the completion of credit counseling courses, Defendant's fraud, deceit and willingness to violate the Bankruptcy Code in general and 11 U.S.C. § 110 in particular, has escalated notwithstanding the prior sanctions and injunctions.

Combined, Defendant's conduct demonstrates that there is a cognizable danger that violation of section 110 will be repeated: his prior conduct and current conduct reveals a disregard for the strictures imposed by section 110. This Court has no reasonable confidence or assurance that Defendant will commit no further violations in the future.

Without a national injunction, the Court would likely just foist anew this problem actor on other debtors, on other courts and on other United States Trustee offices in other, separate districts. Again, unsophisticated debtors are too vulnerable, enforcement resources are too scarce, and the integrity of the bankruptcy system is too vital to allow Defendant to repeatedly pack up and continue his miscreant conduct anywhere he is not yet enjoined.

The Court has discretion to issue a statewide, regionwide or nationwide injunction.[332] As noted in the above cases where a bankruptcy petition preparer's violations of 11 U.S.C. § 110 are repetitive and especially if the preparer has demonstrated an ability or willingness to cross jurisdictional borders, a national injunction is appropriate.[333]

---

[332] *See, e.g., In re Wagner,* 241 B.R. 112, 123 (Bankr.E.D.Pa. 1999) (nationwide injunction prohibiting all of preparer's petition preparer activities pursuant to 11 U.S.C. § 110(J)(2)(B)); *In re Bradshaw,* 233 B.R. 315, 329 (Bankr.D.N.J. 1999) (nationwide injunction prohibiting all of preparer's petition preparer activities pursuant to 11 U.S.C. § 110(J)(2)(B)); *In re Gabrielson,* 217 B.R. 819, 828 (Bankr.D.Ariz.1998) (enjoining preparer "in the District of Arizona or in any federal district in which he might now or subsequently locate"); *In re Stacy,* 1997 WL 178852 (Bankr. D.Or. April 3, 1997) (nationwide injunction from acting as a preparer); *In re Paskel,* 201 B.R. 511 (Bankr.E.D.Ark.1996) (Eastern and Western Districts of Arkansas.); *In re Brokenbrough,* 197 B.R. 839, 845 (Bankr.S.D.Ohio 1996) (in view of the court's conclusions with regard to violations of 11 U.S.C. § 110 in this case, the findings of fraudulent, unfair or deceptive conduct, as well as the existence of three other injunctions with respect to preparer, permanent injunction from acting as preparers and engaging in the unauthorized practice of law in this jurisdiction and other jurisdictions within the United States); *In re Stacy,* 193 B.R. 31, 39 (Bankr.D.Or. 1996) (nationwide injunction imposed as to 11 U.S.C. § 110 violations, but not as to unauthorized practice of law); *In re Gavin,* 181 B.R. 814, 825 (Bankr. E.D.Pa. 1995), *adopted* 184 B.R. 670 (E.D.Pa. 1995) (nationwide injunction warranted because of preparer's egregious unauthorized practice of law and 11 U.S.C. § 110 violations -- "A nationwide injunction appears clearly authorized by 11 U.S.C. §§ 110(j)(1) and (j)(2)(B), since they speak in terms of entry of an injunction preventing a person from acting as a preparer anywhere").

[333] *See, also, In re Duran,* 347 B.R. 760, 768-69 (Bankr.D.Colo. 2006) ("It is the intent of this Court that Mr. Brown and his related entities have nothing whatsoever to do with any bankruptcy matter pending before this Court or any other court exercising bankruptcy jurisdiction"); *In re Bagley,* 433 B.R. 325, 334 (Bankr.D.Mont. 2010) (nationwide injunction issued when repeated violations of section 110 were shown and preparer already enjoined in another jurisdiction).

Bankruptcy is a complex arena, filled with potential legal pitfalls for the *pro se* debtor. Many of Defendant's customers do not speak English and Spanish is their native language. The last thing any *pro se* debtor needs is a bankruptcy petition preparer like Defendant to navigate them through the bankruptcy system. Because Defendant has crossed jurisdictional borders in the past and has repeatedly violated section 110, this Court shall enjoin Defendant pursuant to the Plaintiff's Fifth Claim for Relief in the Complaint.

2.      Injunctive Relief Under Section 110(j) – Colorado

Defendant, as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant, shall be enjoined in the District of Colorado for a period of ten (10) years from the date this Order and corresponding Judgment become final and non-appealable:

(1)     From acting,  directly or indirectly, as a bankruptcy petition preparer as that term is defined by 11 U.S.C. §110 and any amendments thereto.

(2)     From providing any services, directly or indirectly, as a debt relief agency or from providing any bankruptcy assistance, as those terms are defined in 11 U.S.C. §101, *et al.,* and any amendments thereto.

(3)     From typing, assisting, advising, providing legal guidance, advice, assistance, or consultation of any kind, directly or indirectly to any person in connection with the filing or prosecution of any bankruptcy case or any document in any bankruptcy case.

(4)     From advertising, selling, marketing, displaying, or making any other offer or making any representation, directly or indirectly, that they may provide any of the services enjoined by this Order.

(5)     From giving any  legal advice, from preparing or assisting in the preparation of any petitions, schedules, statement of financial affairs or any other documents for filing in a bankruptcy case in the District of Colorado or from rendering any advice, instruction, direction or assistance with the preparation of any document for filing in any bankruptcy matter in Colorado; whether for a direct fee, indirect compensation or for free, pursuant to 11 U.S.C. §110 (j)(2)(B), until such time as Emmanuel Assaf is admitted to practice law in the state where the bankruptcy case is filed.

(6)     From contracting or agreeing, directly or indirectly, whether orally or in writing, with anyone to perform any service or engage in any act enjoined by this Order.

71

Immediately after this Order and the corresponding Judgment are entered on the Court docket, Defendant, as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant shall be required to cease all advertising for services offered in connection with any bankruptcy, including cancelling all print, radio, television or online ads; disable any websites, blogs or other electronic forums or media that advertises prohibited services; remove signs, notices, posters, billboards or other means of notifying the public of offered services that are prohibited; and destroy all advertising materials, business cards, letterhead, envelops or any other material advertising his services in connection with bankruptcy cases.  In addition, within thirty (30) days from the date of entry of this Order on the Court's docket, Defendant shall be required to file a declaration with this Court, under penalty of perjury, that he has fully complied with this Order.

> 3. <u>Injunctive Relief Under Section 110(j) - Nationally</u>

Emmanuel Assaf, Bankruptcy Petition Preparer, dba Emmanuel Assaf Debt Relief Agency, his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant shall be enjoined in the United States for a period of ten (10) years from the date this Order and Judgment become final and non-appealable:

(1) From acting, directly or indirectly, as a bankruptcy petition preparer as that term is defined by 11 U.S.C. §110 and any amendments thereto.

(2) From providing any services, directly or indirectly, as a debt relief agency or from providing any bankruptcy assistance, as those terms are defined in 11 U.S.C. §101, *et al.,* and any amendments thereto.

(3) From typing, assisting, advising, providing legal guidance, advice, assistance, or consultation of any kind, directly or indirectly,  to any person in connection with the filing or prosecution of any bankruptcy case or any document in any bankruptcy case.

(4) From advertising, selling, marketing, displaying, or making any other offer or making any representation, directly or indirectly, that they may provide any of the services enjoined by this Order.

(5) From giving any legal advice, from preparing or assisting in the preparation of any petitions, schedules, statement of financial affairs or any other documents for filing in a bankruptcy case in any District in the United States or from rendering any advice, instruction, direction or assistance with the preparation of any document for filing in any bankruptcy matter in any District in the United States; whether for a direct fee, indirect compensation or for free, pursuant to 11 U.S.C.

§110 (j)(2)(B), until such time as Defendant is admitted to practice law in the state where the bankruptcy case is filed.

(6)   From contracting or agreeing, directly or indirectly, whether orally or in writing, with anyone to perform any service or engage in any act enjoined by this Order.

Immediately after this Order and the corresponding Judgment are entered on the Court docket, Defendant, as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant, shall be required to cease all advertising on a national basis for services offered in connection with any bankruptcy, including cancelling all print, radio, television or on line ads; disable any websites, blogs or other electronic forums or media that advertises prohibited services; remove signs, notices, posters, billboards or other means of notifying the public of offered services that are prohibited; and destroy all advertising materials, business cards, letterhead, envelops or any other material advertising his services in connection with bankruptcy cases.  In addition, within thirty (30) days from the date of entry of this Order on the Court's docket, Defendant shall be required to file a declaration with this Court, under penalty of perjury, that he has fully complied with this Order.

Notwithstanding anything otherwise provided herein, this injunction shall prohibit the above described conduct, regardless of whether any service or product is provided for a fee, barter, trade or for free.

### F.   Plaintiff's Sixth Claim for Relief - Damages Pursuant to 11 U.S.C. § 110(i)(1)

The Plaintiff  alleges that Defendant engaged in fraudulent, unfair and deceptive acts in violation of section 110(i) when he (1) used and provided receipts for fees that were deceptive (Exhibit 84), (2) used a Compensation Disclosure which was inaccurate and false (Exhibit, e.g., 83) in 106 cases; (3) fraudulently obtained and charged excessive fees for credit counseling certificates from Abacus Credit Counseling on behalf of his customers in 197 cases, and (4) routinely and uniformly misstated and understated the fees charged in all 241 cases at hand in SOFA Question 9 and the Compensation Disclosure.

11 U.S.C. § 110(i)(1) provides:

> If a bankruptcy petition preparer violated this section or commits any act that the court finds to be fraudulent, unfair, or deceptive . . . the court shall order the bankruptcy petition preparer to pay to the debtor –
>> (A)   the debtor's actual damages;
>> (B)   the greater of –
>>> (i)    $2,000; or

73

(ii)     twice the amount paid by the
debtor to the bankruptcy petition
prepare for the preparer's services.

First, this Court has already found that the Defendant violated 11 U.S.C. § 110(i)(1) when he used a deceptive Compensation Disclosure in the Marco Antonio Briones-Coroy case.

Second, the Plaintiff alleged that Defendant engaged in fraudulent, unfair and deceptive acts in violation of section 110(i) when he fraudulently obtained credit counseling certificates from Abacus Credit Counseling on behalf of his customers.

Because of Defendant's conduct and the pattern of deceptive practices in all 241 cases under 11 U.S.C. § 110, the Court shall order the Defendant to pay the sum of $2,000.00 to Debtor(s) in each case.[334]  The Court shall order these fines to be paid to the United States Trustee for distribution to the Debtors in each case.

## VIII.  Order

Based on the above and foregoing, IT IS HEREBY ORDERED as follows:

1.     Plaintiff's First Claim for Relief (refund of all fees) in the Complaint is GRANTED.  For violation of 11 U.S.C. § 110(h)(2), within 30 (thirty) days after the entry of this Order on the Court's docket, the Defendant shall, pursuant to 11 U.S.C. § 110(h)(3), tender to the United States Trustee all fees paid to him by the Debtors listed on **Exhibit A** hereto.[335]  The United States Trustee shall disburse the refunds to the Debtors within thirty (30) days after all fees have been tendered by the Defendant.  In the event that the Defendant fails or refuses to tender such fees paid to him by the Debtors to the United States Trustee in the time required, the United States Trustee may take whatever legal action as is necessary to collect and enforce this judgment pursuant to 11 U.S.C. § 110(h)(5) and 11 U.S.C. § 105. The United States Trustee shall file with this Court a statement regarding Defendant's compliance with this Order within forty-five (45) days after entry of this Order on the Court's docket.

---

[334]     This Court, in the *In re Briones-Coroy* case, Case No. 10-40900-SBB, already granted the trustee's motion for reconsideration and entered judgment against the Defendant for $1.00 in actual damages pursuant to section 110(i)(1)(A), $2,000.00 pursuant to section 110(i)(1)(B), and $1,000.00 pursuant to section 110(i)(2).  See Docket #35 in Case No. 10-40900-SBB.  Consequently, this Court is not including in this Order the debtor, Briones-Coroy, as he has already been provided.

[335]     The total amount of Debtors' fees to be refunded is an amount not less than $120,000.00 (240 customers times $500.00 per case filed).  The evidence at Trial and at Exhibit 81 suggest that fees paid by many Debtors may be more than $500.00.  To the degree feasible, the United States Trustee should assemble, calculate, and account for all such fee information and refund fees to Debtors accordingly.

2.     Plaintiff's Second Claim for Relief (fine for failure to disclose compensation) in the Complaint is GRANTED to the extent a finding is requested that Defendant did indeed fail to disclose compensation.  However, Plaintiff withdrew his request for further relief under 11 U.S.C. § 110(l) and thus none will be granted.

3.     Plaintiff's Third Claim for Relief (collecting Court filing fees) in the Complaint is GRANTED.  The Defendant did indeed collect, receive or3 otherwise deal with Debtors' Court filing fees.  Within 30 (thirty) days after the entry of this Order on the Court's docket, the Defendant shall tender to the United States Trustee the sum of $3,060.00.[336]

4.     Plaintiff's  Fourth Claim for Relief (legal advice) in the Complaint is GRANTED.  The Court concludes that in each of the 241 cases, the Defendant has provided legal advice to Debtors in violation of 11 U.S.C. § 110(e)(2)(A) and (B).  However, Plaintiff withdrew his request for further relief under 11 U.S.C. § 110(l) and thus none will be granted.

5.     Plaintiff's Fifth Claim for Relief (injunction for willful pattern of conduct) in the Complaint is GRANTED.  In accord with the relief granted, Defendant, as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant are, commencing forthwith, hereby enjoined for a period of ten (10) years from the date of the entry of this Order on the Court's docket, in both Colorado and in the United States:

    (a)     From acting,  directly or indirectly, as a bankruptcy petition preparer as that term is defined by 11 U.S.C. §110 and any amendments thereto.

    (b)     From providing any services, directly or indirectly, as a debt relief agency or from providing any bankruptcy assistance, as those terms are defined in 11 U.S.C. §101, *et al.,* and any amendments thereto.

    (c)     From typing, assisting, advising, providing legal guidance, advice, assistance, or consultation of any kind, directly or indirectly,  to any person in connection with the filing or prosecution of any bankruptcy case or any document in any bankruptcy case.

---

[336]     The total amount of fees for the ten Debtors' cases, not more than $3,060.00 (ten cases times $306.00).

(d)     From advertising, selling, marketing, displaying, or making any other offer or making any representation, directly or indirectly, that they may provide any of the services enjoined by this Order.

(e)     From giving any  legal advice, from preparing or assisting in the preparation of any petitions, schedules, statement of financial affairs or any other documents for filing in a bankruptcy case in the District of Colorado or anywhere in the United States or from rendering any advice, instruction, direction or assistance with the preparation of any document for filing in any bankruptcy matter in Colorado or anywhere in the United States; whether for a direct fee, indirect compensation or for free, pursuant to 11 U.S.C. §110 (j)(2)(B), until such time as Defendant is admitted to practice law in the state where the bankruptcy case is filed.

(f)     From contracting or agreeing, directly or indirectly, whether orally or in writing, with anyone to perform any service or engage in any act enjoined by this Order.

IT IS FURTHER ORDERED with respect to the Fifth Claim for Relief, that immediately after entry of this Order on the Court's docket the Defendant, as an individual and a/k/a Emmanuel Assaf Debt Relief Agency, directly or indirectly, by and through any of his agents, partners, officers, directors, representatives, servants, employees, associates, assignees, successors or assigns and/or all persons and legal entities working in concert and participation with Defendant shall:

(a)     cease all advertising for services offered in connection with any bankruptcy, including cancelling all print, radio, television or on line ads;

(b)     disable any websites, blogs or other electronic forums or media that advertises prohibited services;

(c)     remove signs, notices, posters, billboards or other means of notifying the public of offered services that are prohibited; and

(d)     destroy all advertising materials, business cards, letterhead, envelops or any other material advertising his services in connection with bankruptcy cases.

IT IS FURTHER ORDERED that with respect to the Fifth Claim for Relief, notwithstanding anything otherwise provided herein, this injunction shall prohibit the above described conduct, regardless of whether any service or product is provided for a fee, barter, trade or for free.

6.     Pursuant to 11 U.S.C. § 110(i)(l)(B), the Plaintiff's Sixth Claim for Relief (damages for fraudulent, unfair or deceptive acts upon the Debtors) in the Complaint is GRANTED.  As set forth in paragraph one of this Court's Order, Defendant shall pay to the United States Trustee, for and on behalf of each of the 240 Debtor cases, the sum of $480,000.00.  As provided in paragraph one of this Order's Order, this sum shall be paid to the United States Trustee for accounting and distribution to each of the Debtors.[337]

IT IS FURTHER ORDERED that the United States Trustee may file with this Court and serve a copy on the Defendant, an application for an award of attorney fees pursuant to 11 U.S.C. § 110(i)(C) within thirty (30) days after entry of this Order on the Court's docket. The Defendant shall, within twenty (20) days after the date of service of any application for an award of attorney fees, file with this Court and serve a copy on the United States Trustee, any objection, in whole or in part, to such an award of fees.  Upon receipt of the response, if any, the matter shall stand submitted for consideration.

IT IS FURTHER ORDERED that within thirty (30) days from the date of the entry of this Order on the Court's docket, Defendant shall file a declaration with this Court, under penalty of perjury, that he has fully complied with this Order.

IT IS FURTHER ORDERED that, in addition to the parties in this adversary proceeding, and the individual Debtors listed in Exhibit A attached hereto, the Clerk of the Court shall serve a courtesy copy of this Order on the following:

United States District Court
    for the District of Colorado
Committee on Conduct
Alfred A. Arraj U.S. Courthouse
901 19th Street
Denver, CO 80294

United States Bankruptcy Court
    for the Central District of California
Edward R. Roybal Federal Building
    and Courthouse
255 E. Temple Street, Room 940
Los Angeles, CA 90012

Colorado Supreme Court
Office of Attorney Regulation Counsel
1560 Broadway, Suite 1800
Denver, CO 80202

Dated this 23rd day of October, 2012.

BY THE COURT:

_Sid Brooks_

Sidney B. Brooks,
United States Bankruptcy Judge

---

[337]     $480,000.00 = 240 cases x $2,000 apiece.  *See supra* n.155 and n.334, whereby this Court already ordered the payment of $2,000 in the within case, the *Briones-Coroy* case.

| | EXHIBIT A | |
|---|---|---|
| **No.** | **Case No.** | **Case Name** |
| 1 | 06-10921 SBB | Gausin, Fernando |
| 2 | 06-12038 SBB | Terrazas, Francisco I. |
| 3 | 07-11746 ABC | Chavez-Robles, Salvador & Gloria F. |
| 4 | 07-12367 MER | Rodriguez, Hugo |
| 5 | 07-14342 SBB | Regalado, Alfonso |
| 6 | 07-21217 HRT | Villa-Ruiz, Roberto |
| 7 | 07-24848 HRT | Villa-Ruiz, Roberto |
| 8 | 08-10680 MER | Avendano-Diaz, Alejandro |
| 9 | 08-11192 EEB | Martinez, Victor M. & Chavarin, Maritza |
| 10 | 08-12521 MER | Ugarte, Lida Aracelli |
| 11 | 08-13437 MER | Orrantia, Jesus C. & Teresa |
| 12 | 08-13974 HRT | Brown, Christopher R. |
| 13 | 08-19636 SBB | Garcia, Juan A. |
| 14 | 08-19655 ABC | Garcia, Rosa Ivania |
| 15 | 08-23034 HRT | Mira-De Peraza, Delmira |
| 16 | 08-28251 HRT | Chacon-Aleman, Victor O. |
| 17 | 09-16229 MER | Flores, Jesus & Guillermina |
| 18 | 09-16231 HRT | Amaya-Figueroa, Diana G. |
| 19 | 09-28667 MER | Carreon-Holguin, Ofelia |
| 20 | 10-16586 MER | Gamez, Carlos R. & Lilian R. |
| 21 | 10-19896 MER | Tellez-Rodriguez, Mario & Tellez, Rocio |
| 22 | 10-20275 ABC | Roque-Pena, Jose |
| 23 | 10-21250 ABC | Flores-Torres, Edgar Antonio |
| 24 | 10-21252 EEB | Flores, Aurora M. |
| 25 | 10-23864 EEB | Eudabe, Marcia Karina |
| 26 | 10-24260 EEB | Ortiz, Irma S. |
| 27 | 10-24470 EEB | Correa, Pancho F. |
| 28 | 10-25284 MER | Soto, Reyes & Maria De La Luz |
| 29 | 10-25633 MER | Velazquez, Maria D. |
| 30 | 10-26047 SBB | Corchado-Vasquez, Jesus |
| 31 | 10-26662 ABC | Carrasco, Liset |
| 32 | 10-26954 MER | Camino, Larry Steven |
| 33 | 10-27061 MER | Zuniga, Arjelia |
| 34 | 10-27083 HRT | Palacios-Palacios, Maria Isabel |
| 35 | 10-27329 EEB | Andrade, Aracely |
| 36 | 10-27423 MER | Villegas, Maria |
| 37 | 10-27426 ABC | Perez, Maria J. |

| No. | Case No. | Case Name |
|---|---|---|

**EXHIBIT A**

| No. | Case No. | Case Name |
|---|---|---|
| 38 | 10-27741 MER | Lopez-Marquez, Pedro Damian |
| 39 | 10-28226 HRT | Brown, Russell |
| 40 | 10-28773 SBB | Salazar-Plata, Miguel Angel |
| 41 | 10-29599 MER | Frankel, Robert L. |
| 42 | 10-29600 MER | Bunting, Shayla M. |
| 43 | 10-29661 ABC | Gurule, Garylee P. |
| 44 | 10-29967 SBB | Diaz-Hernandez, Jesus Manuel |
| 45 | 10-30097 SBB | Gonzalez, Ofelia |
| 46 | 10-30607 HRT | Neloms, Elain |
| 47 | 10-30956 MER | Stiglich, May V. |
| 48 | 10-30957 SBB | Lucero, Angela |
| 49 | 10-31243 EEB | Arreola-Lopez, Juan Manuel |
| 50 | 10-31244 SBB | Campos, Jose M. |
| 51 | 10-31392 MER | Sandoval, Elizabeth R. |
| 52 | 10-31507 MER | Bernal, Maria De Jesus |
| 53 | 10-31620 SBB | Jimenez, Maria Eugenia |
| 54 | 10-31930 HRT | Garcia-Barrera, Gerardo & Garcia, Maria E. |
| 55 | 10-32465 EEB | Gutierrez, Adriana E. |
| 56 | 10-32470 HRT | Araujo, Juan Antonio |
| 57 | 10-32624 MER | Kirbey, Ronda Lee |
| 58 | 10-32750 MER | Saenz, Lazaro Arturo |
| 59 | 10-32757 ABC | Tomatzin-Ramirez, Juan |
| 60 | 10-33208 MER | Brown, Laquitra M. |
| 61 | 10-33319 MER | Martinez, Barney T. |
| 62 | 10-33322 MER | Camblin, Kevin R. |
| 63 | 10-33323 ABC | Carmona, Martin |
| 64 | 10-33482 ABC | Brito-Perez, Constantino & Esperanza |
| 65 | 10-33483 HRT | Lobatos, Adalberto |
| 66 | 10-33485 MER | Garcia-Nino, Alfonso |
| 67 | 10-33699 SBB | Guzman-Cortes, Javier |
| 68 | 10-33822 HRT | Morales, Margarito |
| 69 | 10-33824 HRT | Vargas-Ordonez, Hector J. & Vargas, Graciela |
| 70 | 10-33897 SBB | Bohannon, Michael G. |
| 71 | 10-34490 SBB | Favela-Moreno, Ignacio & Delgadillo, Aracely |
| 72 | 10-34491 ABC | Vilchis-Arriaga, Gabriel & Vilchis, Maria J. |
| 73 | 10-35160 ABC | Thomas, Margaret H. |
| 74 | 10-35161 EEB | Sepulveda-Vargas, Alejandro |
| 75 | 10-35199 MER | Venzor-Najera, Erasmo |

| | EXHIBIT A | |
|---|---|---|
| **No.** | **Case No.** | **Case Name** |
| 76 | 10-35281 SBB | Rosa-Rivera, Wilfredo |
| 77 | 10-35457 EEB | Davies, Mark A. |
| 78 | 10-35660 SBB | Ruiz, Ana L. |
| 79 | 10-35904 SBB | Pedroza, Victor Angelo |
| 80 | 10-35906 HRT | Gutierrez-Millan, Urbano |
| 81 | 10-35998 HRT | Ortiz, Gonzalo |
| 82 | 10-36437 MER | Lopez, Carlos A. & Martinez-Sanabria, Luz B. |
| 83 | 10-36450 EEB | Vargas-Carrasco, Blas |
| 84 | 10-36531 MER | Martinez, Barney T. |
| 85 | 10-36931 MER | Ruiz, Guillermo & Rafaela |
| 86 | 10-36934 EEB | Dominguez-Munos, Rafael |
| 87 | 10-36938 SBB | Dunaway, Jane Cora |
| 88 | 10-37041 MER | Maestas, Guy Jesse |
| 89 | 10-37152 HRT | Rossi, Fatima |
| 90 | 10-37153 HRT | Drown, Terence Lee |
| 91 | 10-37154 EEB | Ramirez, Jose Ulises & Ana Gladis |
| 92 | 10-37582 HRT | Hernandez, Federico & Mendoza, Adriana |
| 93 | 10-37858 MER | Bernal, Maria De Jesus |
| 94 | 10-37914 HRT | Martinez-Villaruel, Jose M. |
| 95 | 10-38168 MER | Martinez, Victoria K. |
| 96 | 10-38170 MER | Potter, Charles R. & Carol L. |
| 97 | 10-38171 EEB | Carrero, Iris M. |
| 98 | 10-38404 SBB | Ramirez, Joseph Michael & Crystal Marie |
| 99 | 10-38413 MER | Venzor-Herrera, Senobio |
| 100 | 10-38775 ABC | Zapata-Maldonado, Salvador |
| 101 | 10-38781 HRT | Pena, Jose F. |
| 102 | 10-38875 MER | Farazandeh, Adriano Kamyar |
| 103 | 10-38876 SBB | Bernal-Flores, Jose Antonio |
| 104 | 10-39483 ABC | Mares-Aguilera, Maria Del Carmen |
| 105 | 10-40231 MER | Gutierrez, Jose & Eloisa |
| 106 | 10-40233 MER | Langle, Maria |
| 107 | 10-40234 MER | Flores-Villasenor, Baltazar & Flores, Soledad Irma |
| 108 | 10-40373 MER | Reyes, Tomasa |
| 109 | 10-40492 EEB | Gonzalez-Flores, Rosa Elena |
| 110 | 10-40900 SBB | Briones-Coroy, Marco Antonio |
| 111 | 10-40902 MER | Turner, Norman Vincent |
| 112 | 10-40906 HRT | Leal-Chavira, Armando |
| 113 | 10-40907 EEB | Teran, Claudia V. |

80

| | | EXHIBIT A |
|---|---|---|

| No. | Case No. | Case Name |
|---|---|---|
| 114 | 10-41134 HRT | Rossi, Fatima |
| 115 | 10-41209 MER | Mendoza-Rojo, Alvaro |
| 116 | 10-41623 HRT | Cortes, Rosangel |
| 117 | 10-41626 HRT | Espino, Lilian E. |
| 118 | 10-41756 MER | Davies-Archuleta, Jean Marie |
| 119 | 10-42155 EEB | Vargas, Gerardo & Sanchez-Castillo, Lorena G. |
| 120 | 10-42170 ABC | Abrego-Giron, Maria Yolanda |
| 121 | 11-10161 HRT | Villarreal, Petra Ramirez De |
| 122 | 11-10385 ABC | Bernhard, Spencer Thomas |
| 123 | 11-10459 ABC | Banuelos, Julian Mesa |
| 124 | 11-10463 HRT | Banuelos, Alicia |
| 125 | 11-10808 HRT | Torres, Guadalupe |
| 126 | 11-11006 MER | Herrera, Jose Alfredo |
| 127 | 11-11010 MER | Casillas-Garcia, Maria I. |
| 128 | 11-11229 ABC | Mendez-Romero, Javier |
| 129 | 11-11313 HRT | Salazar, Tomasa |
| 130 | 11-11496 HRT | Araujo, Juan Antonio |
| 131 | 11-11932 HRT | Bustamante, Arnaldo Uber & Hinostroza, Rebecca Romula |
| 132 | 11-11934 ABC | Herrera, Juan |
| 133 | 11-11984 ABC | Campos-Molina, Armando |
| 134 | 11-11993 ABC | Zelaya, Miguel Alfonso |
| 135 | 11-12053 HRT | Sotelo, Deanna Ilene |
| 136 | 11-12144 SBB | Ortega-Soto, Maria Del Socorro |
| 137 | 11-12299 ABC | Lopez-Valles, Amalia |
| 138 | 11-12367 MER | Rubio-Perez, Yessica A. |
| 139 | 11-12457 HRT | Hernandez, Irma Lidia |
| 140 | 11-12599 HRT | Urista-Alarcon, Guillermo |
| 141 | 11-12645 MER | Roman-Penaloza, Noe |
| 142 | 11-12678 SBB | Cueto-Ramirez, Enrique D. & Cueto, Tracy L. |
| 143 | 11-12788 EEB | Zepeda, Claudia A. |
| 144 | 11-12806 EEB | Mota, Yvonne |
| 145 | 11-13005 EEB | Onate, Esperanza L. |
| 146 | 11-13224 HRT | Quintana-Meneses, Raul |
| 147 | 11-13226 HRT | Lamas, Ramon |
| 148 | 11-13349 MER | Correa, Genaro & Silvia P. |
| 149 | 11-13351 SBB | Gonzalez, Antonio & Sanjuana |
| 150 | 11-13352 HRT | Walker, Detrice D. |

81

| | EXHIBIT A | |
|---|---|---|
| **No.** | **Case No.** | **Case Name** |
| 151 | 11-13358 MER | **Eddings, Roscoe** |
| 152 | 11-13484 EEB | **Torres, Jesus Manuel** |
| 153 | 11-13486 SBB | **Rivera, Yessenia** |
| 154 | 11-13487 MER | **Trujillo, Noel** |
| 155 | 11-13502 EEB | **Covarrubias-Escobedo, Cynthia** |
| 156 | 11-13603 EEB | **Serrant, Maria Antonieta** |
| 157 | 11-13605 EEB | **Villescas-Valdiviezo, Jesus A.** |
| 158 | 11-13968 HRT | **Arevalo, Manuel V.** |
| 159 | 11-13972 MER | **Solis-Zepeda, Luis M.** |
| 160 | 11-13988 SBB | **Castillo, Guadalupe M.** |
| 161 | 11-14081 ABC | **Diaz-Amador, Javier** |
| 162 | 11-14084 EEB | **Peyro, Vicky M.** |
| 163 | 11-14309 MER | **Lopez-Villagrana, Maria S.** |
| 164 | 11-14318 HRT | **Gutierrez-Moreno, Laura M.** |
| 165 | 11-14319 ABC | **Rutherford, Sean E. & Marcina D.** |
| 166 | 11-14390 SBB | **Shajiei, Mohammad Hassan** |
| 167 | 11-14422 MER | **Mingo, David Earl** |
| 168 | 11-14647 MER | **Santiago, Lacey Leandrea** |
| 169 | 11-14933 EEB | **Tweet, Claudia Elizabeth** |
| 170 | 11-14951 SBB | **Avila-Villegas, Alba Marisol** |
| 171 | 11-14957 ABC | **Lara, Martha De** |
| 172 | 11-15079 SBB | **Vargas-Sotelo, Jose Luis** |
| 173 | 11-15159 MER | **Langle, Maria** |
| 174 | 11-15201 MER | **Gamez-Elizalde, Maria** |
| 175 | 11-15211 ABC | **Lopez-Quintana, Matias** |
| 176 | 11-15312 ABC | **Rubio, Francisca** |
| 177 | 11-15313 ABC | **Zamarron-Pinela, Leonel** |
| 178 | 11-15450 MER | **Mingo, Larnette Lynn** |
| 179 | 11-15550 EEB | **Herrera, Mayra Maria** |
| 180 | 11-15759 SBB | **Aguilar, Jose Santos** |
| 181 | 11-15761 MER | **Gonzalez, Antonia** |
| 182 | 11-15762 MER | **Quezada, Pedro J. & Gonzalez-Melendez, Jena Liza** |
| 183 | 11-15865 ABC | **Jimenez, Esperanza** |
| 184 | 11-15996 SBB | **Marin-Martinez, Cynthia P.** |
| 185 | 11-15998 EEB | **Marin-Martinez, Juan Gilberto** |
| 186 | 11-16084 SBB | **Espinoza, Sylvia Guadalupe** |
| 187 | 11-16109 SBB | **Prada, Juveisa C.** |
| 188 | 11-16119 EEB | **Rubalcava, Jose Merced & Rubalcava-Zapata, Ofelia J.** |

| | EXHIBIT A | |
|---|---|---|
| **No.** | **Case No.** | **Case Name** |
| 189 | 11-16255 HRT | Cordoba, Daniel & Bermejo, Ysell D. |
| 190 | 11-16425 MER | Turner, Neal |
| 191 | 11-16430 MER | Guity, Claudia Carolina |
| 192 | 11-16525 SBB | Vazquez-Gutierrez, Alejandro |
| 193 | 11-16753 ABC | Jimenez, Esperanza |
| 194 | 11-16754 ABC | Lindsey, Jason Patrick |
| 195 | 11-16756 SBB | Palacios, Raul |
| 196 | 11-17025 HRT | Carrillos, Ronald Osmin |
| 197 | 11-17026 EEB | Diaz-Meza, Juan Carlos |
| 198 | 11-17205 HRT | Hernandez, Agustin |
| 199 | 11-17273 ABC | Cota-Rosales, Lorenzo |
| 200 | 11-17275 ABC | Bastidas-Bustamante, Apolonio |
| 201 | 11-17403 HRT | Martinez, Gregorio & Maria M. |
| 202 | 11-17497 MER | Sedillo-Sanchez, Manuel & Sedillo, Angie |
| 203 | 11-17498 MER | Banuelos-Hernandez, Juan & Calzada, Maria Guadalupe |
| 204 | 11-17736 SBB | Leyva, Jesus |
| 205 | 11-17737 SBB | Portillo-Hernandez, William A. |
| 206 | 11-17780 HRT | Routson, Kimberly D. |
| 207 | 11-17949 EEB | Lopez-Lopez, Carlos Alberto & Lopez, Rosa Maria |
| 208 | 11-18107 ABC | Renteria-Acosta, Ramiro |
| 209 | 11-18108 MER | Rodriguez-Garcia, Ventura |
| 210 | 11-18254 HRT | Castanon, Lucinda M. |
| 211 | 11-18255 SBB | Anderson, Justin W. & Raya, Crystal R. |
| 212 | 11-18501 MER | Trujillo-Villatoro, Roberto |
| 213 | 11-18507 SBB | Quine, Blanca Esther |
| 214 | 11-18509 SBB | Alvarado-Ramirez, Jose R. & Ortega-Torres, Maria C. |
| 215 | 11-18814 MER | Amador-Hernandez, Laura Rocio |
| 216 | 11-19099 EEB | Davila-Orjeda, Luis Enrique |
| 217 | 11-19231 ABC | Rojas, Elias |
| 218 | 11-19248 ABC | Moreno-Miramontes, Mario |
| 219 | 11-19398 SBB | Siravo, Richael H. |
| 220 | 11-19504 HRT | Avitia, Alba |
| 221 | 11-19505 MER | Santos-Gamez, Angel A. |
| 222 | 11-19541 SBB | Sanchez Jr., Francisco Javier & Virginia |
| 223 | 11-20032 HRT | Delgado-Hernandez, Cesar |
| 224 | 11-20293 EEB | Swanson, Mary Jane |
| 225 | 11-20376 ABC | Ramic, Sifet |

83

| | EXHIBIT A | |
|---|---|---|
| **No.** | **Case No.** | **Case Name** |
| 226 | 11-20655 ABC | Ramirez-Rios, Eduardo & Rodriguez-Manzanares, Maria P. |
| 227 | 11-20656 HRT | Garcia Jr., Benjamin |
| 228 | 11-20663 ABC | Morales-Orozco, Adela |
| 229 | 11-20757 EEB | Ibarra, Juan Gabriel & Luna-Mendiola, Yesenia De |
| 230 | 11-20758 EEB | Peralta-Reyes, Oscar A. |
| 231 | 11-20871 SBB | Martinez, Maria Del Carmen |
| 232 | 11-20872 SBB | Villalobos-Rosales, Paul |
| 233 | 11-20989 HRT | Godoy-Cabral, Paulin |
| 234 | 11-20993 HRT | Aponte, Claudia Ivette |
| 235 | 11-20994 MER | Flores, Margarita |
| 236 | 11-21001 HRT | Saenzpardo, Nabor A. |
| 237 | 11-21118 MER | Barraza-Esquivel, Tomas |
| 238 | 11-21120 HRT | Barraza, Jacquelin |
| 239 | 11-21237 MER | Molina, Francisco G. |
| 240 | 11-21241 HRT | Vasquez-Quinones, Valentin |
| 241 | 11-21242 EEB | Buris, Heather Marie |